UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID BENNETT,

        Plaintiff,

v.

SAINT-GOBAIN CORPORATION, JOHN R.
MESHER, AND TIMOTHY L. FEAGANS,

        Defendants.

CIVIL ACTION

NO. 04-CV-40014-NMG

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COUNTS I-XI AND XIII-XVII OF PLAINTIFF'S COMPLAINT

Defendants, Saint-Gobain Corporation ("Saint-Gobain" or "the Company"), John R. Mesher ("Mesher") and Timothy L. Feagans ("Feagans") (collectively "Defendants"), submit this memorandum of law in support of their Motion to Dismiss Counts I-XI and XIII-XVII of the Complaint.

### I.    FACTUAL BACKGROUND

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "the Court must accept all well-pleaded facts as true." Stein v. Royal Bank of Canada, 239 F.3d 389, 392 (1st Cir. 2001). As a result, for purposes of this Motion only, the facts set forth in Plaintiff's Complaint are accepted as true.[1]

Saint-Gobain maintains manufacturing facilities and administrative offices in Worcester, Massachusetts. Complaint at ¶ 2. At all times material to this matter, Saint-Gobain employed plaintiff David Bennett ("Plaintiff" or "Bennett") as a Senior Patent Attorney at Saint-

---

[1] Defendants reserve the right to challenge these facts as this matter proceeds.

Gobain's administrative office in Worcester. Complaint at ¶ 5. In his position as Senior Patent Attorney, Bennett reported directly to Feagans, Deputy General Counsel of Saint-Gobain, who also worked in Worcester. Complaint at ¶¶ 3, 7. Feagans reported to Mesher, Saint-Gobain's Vice President and General Counsel. Complaint at ¶¶ 3, 4. Mesher worked in Saint-Gobain's headquarters office in Pennsylvania. Complaint at ¶¶ 4, 10. On or about June 6, 2001, Bennett made an internal complaint of age discrimination against the Company. Complaint at ¶ 8.[2]

On September 23, 2002, by letter, Mesher informed all of the Worcester-based members of the Law Department, including Bennett and Feagans, that he had decided to close the Worcester office of Saint-Gobain's Law Department and to consolidate it with the rest of the Department in Pennsylvania. Complaint at ¶ 10. Mesher further advised the employees that they could relocate. Id. If they chose not to relocate, their employment would be terminated in February 2003, and they would be eligible to receive the normal severance package. Id. Or, if they signed a Separation Agreement and General Release, they would receive an enhanced severance package. Complaint at ¶ 10 and Exhibit 1. About a month after the announcement, Bennett told Mesher that he was considering accepting the enhanced severance package, but Bennett never actually did so. Complaint at ¶ 11.

On or about October 31, 2002, Saint-Gobain terminated Bennett's employment for gross misconduct, including a pattern of harassment of a female employee, a pattern of rude and unprofessional behavior and gross misconduct. Complaint at ¶ 20.

---

[2] Plaintiff does not allege and in fact did not file a charge or institute suit in connection with the matters which were the subject of the June 2001 internal complaint. The cornerstone of the case before this Court is Plaintiff's claim that his termination in October 2002 was discriminatory. Complaint ¶¶ 18, 21.

Plaintiff commenced this action on or about January 28, 2004. Plaintiff's Complaint alleges <u>seventeen</u> counts against defendants Saint-Gobain, Mesher and Feagans. The allegations include claims of age discrimination and retaliation against all Defendants under the Age Discrimination in Employment Act ("ADEA") and Massachusetts General Laws Chapter 151B ("Chapter 151B") (Counts I-IV, Counts VIII-XI and Counts XIII-XVI).[3] The following claims under Massachusetts state law also were raised: breach of express and implied contract against Saint-Gobain (Counts V and VI); promissory estoppel against Saint-Gobain (Count VII); and interference with contractual relations against Feagans and Mesher (Counts XII and XVII).

## II. ARGUMENT

For the reasons set forth below, Plaintiff has failed to state a claim as a matter of law under all Counts except Count XII. Those counts therefore should be dismissed.

### A. Standard of Review

A motion to dismiss may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), where any count in Plaintiff's Complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), conclusory allegations of law and unsupported conclusions contained in the Complaint need not be accepted by the court, but the court must assume that all well-pleaded facts alleged in the Complaint are true. <u>Stein</u>, 239 F.3d at 392.

---

[3] Count XIV of the Complaint is inexplicably titled "Retaliation under Title VII against Mesher." However, Count XIV further cites to the ADEA.

-3-

**B.    Counts I-II, VIII-IX, and XIII-XIV Alleging Age Discrimination and Retaliation Under the ADEA and Counts III-IV, X-XI and XV-XVI Alleging Violations of Chapter 151B Should Be Dismissed Because Plaintiff Has Not Pled that He Exhausted Administrative Remedies, as Required by those Statutes.**

The ADEA mandates that, as a prerequisite to filing suit in federal court, a plaintiff first must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). 29 U.S.C. § 626(d) (2004) (charge must be filed within 300 days of the alleged unlawful practice in jurisdictions, such as Massachusetts, with an applicable state law and agency). Similarly, Chapter 151B requires the exhaustion of administrative remedies with the Massachusetts Commission Against Discrimination ("MCAD") prior to filing suit in court. MASS. GEN. LAWS ch. 151B § 5 (charge must be filed within 180 days of the alleged discriminatory conduct). Massachusetts courts interpreting both the ADEA and Chapter 151B consistently have held that a plaintiff must exhaust administrative remedies before he may resort to a private cause of action under either state or federal law. See, e.g., Campbell v. BankBoston, 327 F.3d 1, 10-11 (1st Cir. 2003) (affirming the summary dismissal of plaintiff's ADEA claim because the plaintiff did not file a timely charge with the appropriate administrative agency before initiating his lawsuit); Chatman v. Gentle Dental Ctr. of Waltham, 973 F. Supp. 228, 233 (D. Mass. 1997) (dismissing plaintiff's discrimination claim pursuant to Rule 12(b)(6) because a plaintiff's "[f]ailure to file a proper charge with the MCAD is fatal to a later claim filed in court under Chapter 151B") (citations omitted).

Accordingly, a plaintiff's failure to plead the exhaustion of his administrative remedies in his federal court complaint requires the dismissal of that complaint. Treadwell v. John Hancock Mut. Life Ins. Co., 666 F. Supp. 278, 282 (D. Mass. 1987) (dismissing plaintiff's discrimination claim under Chapter 151B because the "failure to file a timely charge of discrimination bars a party from bringing a [Chapter] 151B [] discrimination action in court")

(citations omitted). See also Fullman v. Philadelphia Int'l Airport, 49 F. Supp. 2d 434, 443 (E.D. Pa. 1999) (summarily dismissing plaintiff's Title VII and ADA claims where plaintiff failed to plead administrative exhaustion in the filing of his complaint because "[f]rom the face of plaintiff's complaint" the court could not "establish whether plaintiff ha[d] exhausted his administrative remedies"); Searcy v. Southeastern Pa. Transp. Auth., Civ. A. No. 96-3854, 1997 U.S. Dist. LEXIS 3825, at * 13 (E.D. Pa. Mar. 27, 1997) (dismissing plaintiff's claim under the ADEA pursuant to Rule 12(b)(6) because "plaintiff has not alleged in his Complaint . . . that the decedent exhausted her administrative remedies with respect to the ADEA claim.").

In the present case, Plaintiff fails to allege that he filed a charge with the EEOC or MCAD or that he met the other administrative requirements of the ADEA and Chapter 151B. Because Plaintiff has not properly pled that he exhausted his administrative remedies, as required by the ADEA and Massachusetts state law, Counts I-IV, VIII-XI and XIII-XVI of the Complaint should be dismissed.

**C.  Counts II, IV, IX, XI, XIV and XVI Alleging Retaliation Under the Age Discrimination in Employment Act and Chapter 151B Should Be Dismissed For Failure To Plead Facts Necessary To Establish a Prima Facie Case.**

The Counts alleging retaliation based on age under federal and state law are defective for another reason. They fail to plead facts necessary to establish a prima facie case.

To establish a prima facie case of retaliation under either the ADEA or Chapter 151B, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action. Sullivan v. Raytheon Disability Trust, 262 F.3d 41, 48 (1st Cir.

2001).[4] Plaintiff alleges that he filed a complaint of age discrimination against Feagans on June 6, 2001. Complaint at ¶ 8. He states that he was terminated on October 31, 2002. Complaint at ¶¶ 12, 15. To meet the final prong of his prima facie case, Plaintiff relies only on the temporal proximity between his June 6, 2001 complaint of age discrimination and his discharge on October 31, 2002 – almost 17 months later. These allegations are insufficient.

Plaintiffs who rely solely on temporal proximity to satisfy their prima facie burden must demonstrate that the proximity between the protected activity and the adverse employment action is "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). A significant time gap "suggests, by itself, no causality at all," id. at 274, and will preclude a plaintiff from prevailing on his retaliation claim. See Bishop v. Bell Atlantic Corp., 299 F.3d 53, 60 (1st Cir. 2002) (suspension imposed twelve months after the filing of a charge did not provide "substantial amount of time" required to create a nexus); Mesnick v. General Elec. Co., 950 F.2d 816, 828-29 (1st Cir. 1991) (nine month gap too long to establish a causal connection); Musselman v. Vanguard Sav. Bank, Civ. A. No. 86-0268-F, 1988 U.S. Dist. LEXIS 13351, at * 22 (D. Mass. Nov. 29, 1988) (four month period long enough to demonstrate that there was no nexus between the filing of the claim and the alleged discharge).

Chandamuri v. Georgetown University, 274 F. Supp. 2d 71 (D.D.C. 2003), presented the identical issue and compels the conclusion that these Counts should be dismissed. In Chandamuri, the defendant filed a motion to dismiss under Rule 12(b)(6) arguing that the plaintiff failed to plead the causal connection required to support his retaliation claim. The court

---

[4] Courts apply the same test to evaluate retaliation claims asserted under either the ADEA or Chapter 151B. Compare Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991) (applying same test to ADEA retaliation claim), with Sullivan v. Raytheon Disability Trust, 262 F.3d 41, 48 (1st Cir. 2001) (applying same three-prong test to Chapter 151B retaliation claim).

granted the motion, relying on Breeden, and other authority, finding that a "lapse of well over a year" between protected activity and adverse employment action made it "impossible to establish any causal link." Id. at 85.

For the identical reason, a lapse of almost 17 months in this case is insufficient to establish a causal connection. Counts II, IV, IX, XI, XIV and XVI alleging retaliation under federal and state law therefore should be dismissed.

**D.     Counts VIII-IX and XIII-XIV Under the Age Discrimination in Employment Act Against Defendants Feagans and Mesher Should Be Dismissed Because There is No Individual Liability Under the ADEA.**

Even if the Counts were timely, and even if a prima facie case of retaliation had been properly pled, Counts VIII-IX and XIII-XIV against individual defendants Mesher and Feagans, alleging age discrimination and retaliation under federal law, should be dismissed because there is no individual liability under the ADEA.

This Court recently held in Orell v. UMass Memorial Medical Center, Inc., 203 F. Supp. 2d 52, 64 (D. Mass 2002) (Gorton, J.), that there is no individual liability under the ADEA. In Orell, the plaintiff's Complaint included a claim under the ADEA against the interim Director of her department who gave plaintiff a written explanation of the reasons for her termination. Id. at 57, 61, 63. On a motion brought pursuant to Rule 12(b)(6), this Court dismissed the ADEA claim against him, finding that individuals "cannot, as a matter of law, be held individually liable for discrimination under . . . the ADEA." Id. at 64. In so ruling, this Court followed the majority of the district courts in the First Circuit. Although the First Circuit Court of Appeals has not decided the issue, as this Court recognized, almost all Circuits that have ruled on this issue have also determined that there is no individual liability under federal anti-discrimination statutes. Id. Accord Healy v. Henderson, 275 F. Supp. 2d 40, 44-45 (D. Mass. 2003) (dismissing Title VII claims against individual manager because "Congress did not intend

to impose individual liability upon agents of an employer"); Martinez v. Coatings, Inc., 251 F. Supp. 2d 1058, 1065 (D.P.R. 2003) (dismissing claims brought against individual supervisor under Title VII and the ADEA because the "ADEA and Title VII do not contemplate the individual liability of supervisors").

Therefore, even if all of the allegations in Plaintiff's Complaint are true, pursuant to this Court's decision in Orell, Counts VIII, IX, XIII and XIV of the Complaint fail to state cognizable claims under the ADEA against either Mesher or Feagans individually and should be dismissed.

### E. Count V for Breach of Contract and Count VI for Breach of Implied Contract Against Defendant Saint-Gobain Should Be Dismissed Because Plaintiff Has Not Pled the Elements of a Claim for Breach of Express or Implied Contract.

To prove a claim for breach of either express or implied contract under Massachusetts law, a plaintiff "must prove the existence of a valid binding agreement, the defendant's breach thereof, and damages resulting from the breach." Mass Cash Register, Inc. v. Comtrex Sys. Corp., 901 F. Supp. 404, 416 (D. Mass. 1995) (citations omitted); Orell, 203 F. Supp. 2d at 67. Even accepting as true the allegations made in the Complaint, Plaintiff has failed to plead the elements essential to support a claim for breach of contract, either express or implied, against defendant Saint-Gobain.

Bennett's Complaint fails to allege any of the most basic elements necessary to a breach of contract claim. First, Bennett fails to allege the formation of a valid contract. Second, he fails to allege a breach of any such contract by Saint-Gobain. Indeed, Plaintiff does not contend that he was a party to an employment contract with Saint-Gobain – which he was not. Plaintiff also does not provide any basis for implying any such contract. As discussed in further

detail below, this Court has rejected breach of contract claims when faced with circumstances similar to those in the present case. The same result is warranted here.

In Orell, supra, plaintiff brought numerous claims against various defendants, including claims for breach of contract. Orell, 203 F. Supp. 2d at 59. This Court granted a Rule 12(b)(6) motion to dismiss plaintiff's breach of contract claim against two of the defendants because plaintiff failed "to identify any agreement, express or implied, between her and" the moving defendants. Id. at 67.

Similarly, in Pakizegi v. First National Bank of Boston, 831 F. Supp. 901, 904 (D. Mass. 1993) (Gorton, J.), aff'd without published opinion, 56 F.3d 59 (1st Cir. 1995), the plaintiff contended that the termination of her employment was discriminatory. The plaintiff further contended that, by terminating her employment, the defendant bank breached an implied contract for a term of two and one-half years. Id. at 911. However, this Court found that plaintiff was an employee at-will and summarily dismissed plaintiff's breach of contract claim because plaintiff did "not contend that she had any written employment contract with [the defendant] during the course of her employment" and she did not "identif[y] any writing or proffer[] any substantive explanation which provide[d] a basis for her claim that an implied contract existed." Id. See also Carroll v. Xerox Corp., 294 F.3d 231 (1st Cir. 2002) (affirming dismissal of contract claim where plaintiff failed to allege anything other than an at-will relationship).

In the present case, as in Orell and Pakizegi, Plaintiff is unable to maintain a claim for breach of either express or implied contract because Plaintiff does not allege that he was a party to an employment contract with Saint-Gobain. Furthermore, Plaintiff does not allege any basis for implying any such contract. Indeed, Plaintiff makes no allegation in the Complaint

to suggest that his employment relationship with Saint-Gobain was anything other than an at-will relationship. Counts V and VI of the Complaint therefore should be dismissed.[5]

### F. Count VII for Promissory Estoppel Against Defendant Saint-Gobain Should Be Dismissed Because Plaintiff Has Not Set Forth the Elements of a Claim for Promissory Estoppel.

Even accepting as true the allegations made in the Complaint, Plaintiff has failed to state a claim for promissory estoppel against defendant Saint-Gobain.

To state a claim for promissory estoppel under Massachusetts law, a plaintiff must allege that:

> (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promissee; (2) the promise does induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise.

Carroll, 294 F.3d at 242 (quoting Loranger Constr. Corp. v. E.F. Hauserman Co., 6 Mass. App. Ct. 152, 374 N.E.2d 306, 308 (1978)) (affirming dismissal of promissory estoppel claim); Mass Cash Register, 901 F. Supp. at 420; Treadwell, 666 F. Supp. at 287.

An essential element to a claim of promissory estoppel is that there be "an unambiguous promise." Rhode Island Hosp. Trust Nat'l Bank v. Varadian, 419 Mass. 841, 848, 647 N.E.2d 1174, 1178 (1995) (citation omitted) (reversing entry of judgment in favor of counterclaim plaintiff on promissory estoppel claim). "This promise must be definite and certain so that the promisor should reasonably foresee that it will induce reliance by the promisee or a

---

[5] To the extent that Plaintiff may seek to argue that his breach of contract claim is premised upon the severance agreement offered to the Worcester-based members of Saint-Gobain's Law Department, that claim also must fail because Plaintiff has not alleged any facts which would show that a valid contract existed. To the contrary, it is hornbook law that an offer and acceptance are required for a contract to be formed. See Gladstone v. Union Warren Sav. Bank, 2 Mass. App. Ct. 850, 312 N.E.2d 579, 580 (1974). Plaintiff's Complaint does not allege that he ever accepted the offered severance agreement.

third party." Santoni v. Fed. Deposit Ins. Corp., 677 F.2d 174, 179 (1st Cir. 1982) (citations omitted) (affirming summary dismissal of promissory estoppel claim) (applying analogous law).

In the present case, Plaintiff's Complaint fails to identify any promise made by Saint-Gobain to Plaintiff, and Plaintiff's promissory estoppel claim therefore fails. Even if Plaintiff attempts to argue that Saint-Gobain made a promise to him of continued employment, such an argument would not support a claim for promissory estoppel because, as discussed in further detail above, Plaintiff and Saint-Gobain maintained an at-will employment relationship. As the court stated in Treadwell, supra, "[t]he promise of secure and continued employment is simply too vague to be enforceable under the doctrine of promissory estoppel and thereby transform the nature of plaintiff's employment from at-will to employment for a definite period." Treadwell, 666 F. Supp. at 287 (granting in part defendants' Rule 12(b)(6) motion to dismiss plaintiff's promissory estoppel claim).

In addition to showing the existence of an unambiguous promise, a party claiming promissory estoppel must allege that "the party to whom the promise was made reasonably relied on the representation." Varadian, 419 Mass. at 848, 647 N.E.2d at 1178 (citation omitted). Where a plaintiff's reliance is unreasonable, his promissory estoppel claim must fail. For example, in Sands v. Ridefilm Corp., 212 F.3d 657, 664-65 (1st Cir. 2000), the First Circuit Court of Appeals affirmed the summary dismissal of plaintiff's promissory estoppel claim, holding that the plaintiff's reliance upon oral assurances regarding an employment offer was not reasonable. The Circuit Court found plaintiff's reliance to be unreasonable because vague oral promises that plaintiff would be hired by the defendant company were made before the parties agreed upon the terms of employment and because other oral assurances upon which the plaintiff allegedly relied directly conflicted with written representations made by the defendants. Id. See

also Michelson v. Digital Fin. Servs., 167 F.3d 715, 724 (1st Cir. 1999) (affirming the summary dismissal of plaintiff's promissory estoppel claim finding plaintiff's reliance unreasonable because the oral representations upon which the plaintiff allegedly had relied directly conflicted with numerous written statements).

In the present case, Plaintiff again has failed to plead the essential elements of his claim. His Complaint fails to identify any promise made by Saint-Gobain to him. His Complaint also fails to plead any reasonable detrimental reliance by Plaintiff on any such promise. Finally, there are no allegations that enforcement is required to avoid injustice. As a result, Plaintiff's promissory estoppel claim fails as a matter of law. Therefore, Saint-Gobain's motion to dismiss Count VII should be granted.

### G. Count XVII Alleging Interference with Contractual Relations Against Defendant Mesher Should Be Dismissed.

Plaintiff also fails to plead the essential elements of his claim against defendant Mesher for interference with contractual relations. To establish a claim for intentional interference with contractual relations, a plaintiff must establish that:

> (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by defendant's actions.

Wright v. Shriner's Hosp., 412 Mass. 469, 476, 589 N.E.2d 1241, 1245 (1992) (citations omitted). Accord, Orell, 203 F. Supp. 2d at 68 (citing Melo-Tone Vending, Inc. v. Sherry, Inc., 39 Mass. App. Ct. 315, 656 N.E.2d 312 (1995)). A corporation and its corporate officers have the right to discharge any employee unless the discharge is unrelated to a legitimate corporate interest. Wright, 412 Mass. at 476, 589 N.E.2d at 1246. Corporations and their officers thus have both a qualified privilege and a corresponding "duty" to shareholders to discharge

employees when they "d[o] not measure up to the job." Sereni v. Star Sportswear Mfg., 24 Mass. App. Ct. 428, 432, 509 N.E.2d 1203, 1206, review denied, 400 Mass. 1107, 513 N.E.2d 1289 (1987).

Defendants recognize that a claim for interference with contractual relations may be made in the employment context. Orell, 203 F. Supp. 2d at 68.[6] However, under the specific circumstances alleged in this case, this claim cannot be raised against defendant Mesher.

First, it is axiomatic that a party to a contract cannot be held liable for intentional interference with its own contract. Schinkel v. Maxi-Holding, Inc., 30 Mass. App. Ct. 41, 50, 565 N.E.2d 1219, 1225, review denied, 409 Mass. 1104, 569 N.E.2d 832 (1991). Furthermore, a corporate officer "might be so closely identified with the corporation itself, and with its policies, that he should not be treated as a third person in relation to corporate contracts, susceptible to charges of tortious interference when he causes the corporation to breach its contractual obligations." Id. Given his position as an officer (Vice President) and head legal counsel (General Counsel) for Saint-Gobain, Mesher cannot be considered a third party to any contract Bennett may have had with Saint-Gobain. Therefore, Plaintiff cannot establish an essential element of his claim for intentional interference with contractual relations against Mesher.

Second, there are no allegations to support an improper motive or purpose by Mesher in terminating Plaintiff. As explained above, when a supervisor with authority to terminate an at-will employee does so for a legitimate business reason, he is privileged to do so. The privilege is lost, however, if he does so because of personal feelings of malice. McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals, 880 F. Supp. 900, 910 (D. Mass. 1995).

---

[6] Indeed, defendant Feagans has not moved to dismiss the similar claim alleged against him in Count XII.

The McMillan case illustrates this distinction. There, the plaintiff raised claims under the Equal Pay Act and for sex discrimination/retaliation. In addition, the plaintiff named two managers as defendants in a tortious interference with contract claim. Plaintiff claimed that one of the defendants, the manager at the time of the discharge (Gambardella), engaged in "internal memo wars" with the plaintiff, as well as "heated verbal exchanges," and gave the plaintiff an "ultimatum that there was not enough room at the [company] for both of them . . . ." Based on those allegations, the court allowed the claim with respect to Gambardella to proceed. However, the court dismissed the claim against the co-defendant, Thornton. Although at the time of the discharge Thorton was Gambardella's supervisor, there were no specific allegations against him to support an inference of an improper purpose.

The distinction made in McMillan is equally applicable in this case. The allegations against Feagans allegedly point to an improper motive based on a prior complaint of age discrimination lodged against him by Plaintiff. Complaint at ¶ 8. There are no allegations to support such a claim against Mesher. Mesher clearly was acting within his duties as head of the Law Department when he terminated Plaintiff. There are no allegations in the Complaint that, prior to the termination, Mesher had been involved in any job action relating to Plaintiff, had engaged in any specific communication with him based on his age or had accused him of discrimination. Without allegations of any prior improper motive, Mesher was privileged to terminate Plaintiff without liability for interference with contractual relations. As was the case in McMillan with respect to defendant Thornton, Plaintiff's claim for tortious interference against Mesher should not proceed.

For both of these reasons, Count XVII of the Complaint should be dismissed.

GV: #280656 v1 (60K001!.DOC)

## III. CONCLUSION

Plaintiff has failed to set forth the necessary elements to establish a cause of action for breach of contract, promissory estoppel and interference with contractual relations against Mesher. Furthermore, Plaintiff's claims under the ADEA against defendants Mesher and Feagans fail because there is no individual liability under the ADEA. Additionally, Plaintiff's claims under the ADEA and Chapter 151B fail because Plaintiff has not pled that he administratively exhausted his administrative remedies, and Plaintiff's retaliation claims under those statutes fail because the Complaint does not plead facts necessary to establish a prima facie case. For these reasons and all of the reasons set forth above, Defendants respectfully request that this Court dismiss Counts I-XI and XIII-XVII of Plaintiff's Complaint with prejudice.

SAINT-GOBAIN CORPORATION, John R. MESHER, and TIMOTHY L. FEAGANS,
By their attorneys,

Of Counsel:

Hope A. Comisky
Amy G. McAndrew
PEPPER HAMILTON, LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103

  /s/     James B. Conroy
James B. Conroy (BBO# 096315)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street
33rd Floor Boston
Massachusetts 02108
617-720-2880

Dated: May 14, 2004