UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**WORCESTER, SS.**  CENTRAL SECTION
CIVIL ACTION NO. 04-40014-NMG

| | |
|---|---|
| **DAVID BENNETT** )<br>- Plaintiff )<br>)<br>vs. )<br>)<br>**SAINT-GOBAIN CORPORATION,** )<br>**JOHN R. MESHER, and** )<br>**TIMOTHY L. FEAGANS** )<br>- Defendants ) | **MEMORANDUM BY**<br>**PLAINTIFF BENNETT IN**<br>**SUPPORT OF HIS**<br>**OPPOSITION TO**<br>**DEFENDANTS' MOTION**<br>**TO DISMISS** |

## Statement of the Case

The Plaintiff David Bennett ("Bennett") brings this action against the Defendants for age discrimination and retaliation under 29 USC 623, and M.G.L. c. 151B; aiding and abetting discrimination in violation of M.G.L. c. 151B; breach of contract; breach of implied contract, promissory estoppel; and interference with contractual relations resulting from the Defendant corporation's employment termination of Bennett.

Bennett exhausted his administrative remedies by first filing a joint Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and EEOC, and receiving a private right of action to bring suit in this Court. However, he did not allege in his complaint that he had exhausted his administrative remedies, as Federal Courts follow notice pleadings.

The Defendants now move to dismiss certain counts of the complaint on the grounds that Bennett did not plead that he exhausted his administrative remedies,

1

despite the fact that Defendants' law firm, at all times, defended the administrative complaint filed jointly with the MCAD and EEOC.

On May 26, 2004, Bennett filed a motion to amend his complaint adding several paragraphs stating that he had exhausted his administrative remedies and had received a private right of action to bring suit in this Court.

This memorandum is in opposition to Defendants' motion to dismiss.

**Statement of Facts**

1.  Bennett was hired in 1989 as a senior patent attorney and remained in that position at Saint-Gobain's intellectual property law department until October 31, 2002, when he was terminated.

2.  At the time of his termination, Bennett was 64 years of age and the eldest member of the intellectual property law department.

3.  Bennett reported directly to Feagans, Deputy General Counsel of Saint-Gobain, and ultimately to Mesher, Saint-Gobain's General Counsel.

4.  On June 6, 2001, Bennett and other members of Saint-Gobain's intellectual property law department filed an age discrimination grievance with the company, resulting from various statements by Feagans that he wanted to rid Saint-Gobain of the older members of the company's intellectual property law department.

5.  At all material times, Bennett's written performance evaluations were "5", the highest possible rating.

6.  On September 23, 2002, Mesher had hand delivered to Bennett and all other members of the company's intellectual property law department located in Worcester, a statement that he decided to close that department in Worcester, and

2

to consolidate it with the company's headquarters in Valley Forge, Pennsylvania. The statement further gave the attorneys the choice of relocating to Valley Forge, or accepting an enhanced severance package. The offer of accepting the enhanced severance package expressly stated that it remained opened for 45 days. (Exhibit 1 to Complaint).

7.  In mid October, Bennett told Mesher that he was considering accepting the severance prior to the forty-five (45) day expiration.

8.  At approximately 1 p.m. on October 31, 2002, before the expiration of the severance offer and shortly after another attorney had accepted the offer, Feagans invited Bennett into the conference room where Feagans was accompanied by Robert Wilkes of the company's security section and Joe Jackson, an outside consultant. They accused Bennett of writing poems to a female employee.

9.  They asked Bennett for permission to search his office and desk. Bennett agreed.

10. They told Bennett that the company had retained a handwriting expert who concluded that Bennett had written the poems allegedly delivered to the female employee.

11. At approximately 4:15 p.m. the same day, Mesher entered the conference room and told Bennett that he was not only summarily dismissed, but that Robert Wilkes of the security section wanted to press criminal charges against Bennett for which he would spend at least two years in jail.

12. Bennett never was given the opportunity to review any documentation supporting the purported charge, or to refute the charge.

13. Saint-Gobain gave Bennett no written notice of the reasons for his termination.

14. The reasons Saint-Gobain gave Bennett for his termination were a pretext, and discrimination was the determinative cause of his termination.

15. Shortly after Bennett's termination, Saint-Gobain hired two male attorneys, one in his late twenties and the other in his early forties, either or both of whom assumed most of Bennett's duties.

16. In its opposition to Bennett's application for unemployment benefits, Saint-Gobain stated that the reason for termination was not only harassment of a female employee, but stated for the first time two additional reasons – gross insubordination and a pattern of rude and unprofessional conduct.

17. After Bennett's termination, Saint-Gobain allowed another attorney to accept the very same severance package which was denied Bennett.

18. Feagans and Mesher participated in the discrimination and retaliation, implementing the company's discriminatory practice, and interfered with Bennett's contractual relationship with Saint-Gobain.

**Argument**

Standard on Motion to Dismiss

In considering a motion to dismiss a complaint, the Court must accept as true all the allegations in the complaint and **all reasonable inferences** to plaintiff which may be drawn from it. A complaint should not be dismissed unless it appears to a certainty that the plaintiff is not entitled to relief under any state of facts which could be proven in support of its claims. Harvard Law School Coalition for Civil Rights v. President and Fellows of Harvard College, 413 Mass. 66, 68 (1992), citing

4

Rae v. Air-Speed, Inc., 386 Mass. 187, 191 (1982); see also Reardon v. Commissioner of Correction, 20 Mass.App.Ct. 946 (1985); and Nader v. Citron, 372 Mass. 96 (1977).

"A motion to dismiss for failure to state a claim may be granted only if it appears, beyond doubt, that the plaintiff's can prove no facts in support of their claim that entitled them to relief." "The court must accept all factual averments in the complaint as true and draw all reasonable inferences in the plaintiff's favor." Orell v. UMass Memorial Medical Center, Inc., 203 F.Supp.2d 52, 59, (2002).

Considering the allegations and reasonable inferences most favorable to Bennett, he has stated a cause of action in each and every one of the counts in his complaint.

### Counts I-IV, VIII-XI, and XIII-XVI for Age Discrimination, Retaliation, Aiding and Abetting Under 29 USC 623 and M.G.L. c. 151B

The Defendants move to dismiss the above counts for failure to allege exhaustion of administrative remedies. Massachusetts Federal Courts allow notice pleadings, and there is no known case requiring pleading exhaustion of administrative remedies in a discrimination complaint.

In support of its argument, the Defendants state that "a plaintiff's failure to plead the exhaustion of his administrative remedies in his federal court complaint requires the dismissal of that complaint. Treadwell v. John Hancock Mut. Life Ins. Co., 666 F.Supp. 278, 282 (D.Mass. 1987)". The Defendants seriously misstate the holding in that case. Treadwell holds on page 282 that failure to timely file a charge of age discrimination with the MCAD within six months of the alleged violation, precludes subsequently bringing suit for discrimination under M.G.L. c. 151B. That clearly is the law.

Neither Treadwell nor any other case found in Massachusetts holds that failure to allege exhaustion of administrative remedies requires dismissal of the complaint.

Moreover, the Defendants' argument relying on failure to exhaust administrative remedies is disingenuous. Bennett timely filed jointly with the MCAD and EEOC within six months of termination, and its law firm defended that administrative charge, being well aware of the private right of action to institute this law suit.

Bennett has filed a motion to amend his complaint adding paragraphs stating that he has exhausted his administrative remedies, to cure any "perceived" defect in the pleadings. That motion is pending before this Court.

### Counts II, IV, IX, XI, XIV, and XVI Alleging Retaliation

The Defendants motion to dismiss the above counts for failing to allege a *prima facie* case of retaliation under the age discrimination statutes also must be denied.

The Denfendants' argument is that Bennett has not shown a causal connection between the protected activity and the retaliation.

Not only the allegations in the complaint, but all reasonable inferences from those allegations must be accepted as true in deciding Defendants' motion. Harvard Law School, *supra*. The casual connection is clear.

1. On June 6, 2001, Bennett and other members of Defendant corporation's intellectual property law department filed an age discrimination grievance. (¶ 8 of Complaint).

2. Bennett was terminated on October 31, 2002. (¶ 5 of Complaint).

6

3. At the time of termination, Bennett was 64 years of age and the eldest member of Defendant corporation's intellectual property law department. (¶ 6 of Complaint).

4. Bennett's supervisor made various statements that he wanted to rid Defendant corporation of the older members of its intellectual property law department. (¶ 8 of Complaint).

5. On September 23, 2002 Defendant corporation offered all members of its Intellectual Property Law Department a severance package to remain open for forty-five (45) days. (¶ 10 of Complaint).

6. In mid October, Bennett told Defendants that he was considering accepting the severance package prior to the forty-five (45) day expiration. (¶ 11 of Complaint).

7. On October 31, 2002, prior to the expiration of the forty-five (45) day offer, Bennett was terminated. (¶ 12 of Complaint). At the termination session, the Defendant Mesher told Bennett that the company's security section wanted to press criminal charges which would result in at least two years in jail. (¶ 15 of Complaint).

8. Another member of the intellectual property law department was allowed to accept the very same severance package denied Bennett. (¶ 22 of Complaint).

The above sequence of events, together with all reasonable inferences from those events, clearly establish a causal connection between the 2001 age grievance and the subsequent failure to treat Bennett the same way it treated its other employees. The most probative evidence of discrimination is when an employee is

7

not treated neutrally. Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 129 (1997), (citing Smith College v. Massachusetts Commission Against Discrimination, 376 Mass. 221, 228 (1978)). See also Dartmouth Review v. Dartmouth College, 889 F.2d. 13, 19 (1st Cir. 1989).

Defendants rely on Bishop v. Bell Atlantic Corp., 299 F.3d. 53, 60 (1st Cir. 2002), claiming that there was no temporal proximity to Bennett's 2001 age grievance and his termination a year later. The facts in Bishop are clearly distinguishable. Bishop was a splice service technician for Bell Atlantic fired in 1999 for alleging retaliation for filing a grievance in 1998 for the company's refusing to provide him with a hard hat liner for warmth, not pairing him up with another employee in an ice storm, and not paying him overtime.

There is no nexus between the facts in Bishop and Bennett, where Bennett and others filed an age discrimination case in the prior year, his supervisor repeatedly made discriminatory statements regarding age, Bennett was the oldest member of his department, and he was precluded from accepting a termination package before the expiration date while a younger member of the department was allowed to accept that package.

### Counts VIII-IX and XIII-XIV for Individual Liability Against Feagans and Mesher

The Defendants cite Orell v. UMass Memorial Medical Center, Inc., 203 F.Supp.2d 52, 64 (D.Mass. 2002) for the proposition that there is no individual liability under the federal age discrimination statute. Orell does not hold that. It holds that the Eleventh Amendment bars suit against a state official. The facts of Orell therefore are distinguishable from this case.

8

Although the 1st Circuit has not decided the issue of whether an individual may be held liable under the federal statue (Orell, *supra*, p. 64), individuals are liable for aiding and abetting discrimination under M.G.L. c. 151B, § 4.

### Count V for Breach of Contract and Count VI for Breach of Implied Contract

Again, Defendants' argument that there are not sufficient allegations to prove breach of contract or breach of implied contract, are misplaced.

On September 23, 2002 the Defendant corporation offered Bennett a severance package, expressly stating that it would remain open for forty-five (45) days. (¶ 10 of Complaint).

It terminated Bennett on October 31, 2002 prior to the expiration of the forty-five (45) days. (¶ 12 of Complaint). It cannot prevent acceptance by termination.

"If one party has put forth an offer for a certain time period, that same party may not prevent acceptance of the offer by then denying the means of acceptance if it controls those means." Thomas v. Massachusetts Bay Transp. Authority, 39 Mass.App.Ct. 537, 545 (1995), citing Restatement (Second) Statement of Contract, § 224 (1979). Bennett clearly has set forth sufficient allegations of a valid offer which could not be withdrawn prior to the expirations of forty-five (45) days, particularly when Bennett, prior to termination, indicated that he was inclined to accept the offer of the severance package. (¶ 11 of Complaint). Massachusetts Bay Transportation Authority, *supra*.

If the court finds that there is no liability for the corporate Defendant's withdrawal of the severance offer, then it must find that the offer was not a valid, enforceable contract.

9

If there was no express enforceable contract, then the obligation would be a contract implied at law. Contracts implied at law, or quasi contracts, are in the nature of unjust enrichment. 14 Mass.Prac., Alperin & Shubow, § 7.4, p. 662.

The unjust enrichment is the Defendant corporation keeping the value of the severance package, and denying Bennett that value by terminating him, thereby preventing his receiving the benefits of the severance package.

### Count VII for Promissory Estoppel

Promissory Estoppel is where a promissor make a promise reasonably expected to induce action or forbearance, it does so, and injustice can be avoided only by enforcement of the promise. Restatement of Contracts, § 90 (1932); Lord's and Lady's Enterprises, Inc. v. John Paul Mitchell Systems, 46 Mass.App.Ct. 262, 265 (1999); see also Rhode Island Hosp. Trust Nat. Bank v. Varadian, 419 Mass. 841, 848 (1995); Rooney v. Paul D. Osborne Desk Co., Inc., 38 Mass.App.Ct. 82, 83 (1985) and Loranger Const. Corp. v. E.F. Hauserman Co., 6 Mass.App.Ct. 152, 154 (1978) aff. 376 Mass. 757.

In the instant case, the Defendant corporation promised to keep the severance package offer open for forty-five (45) days, Bennett relied on the promise that it would be open for forty-five (45) days, and therefore did not accept the offer sooner as he indicated he would in mid October (¶ 11 of Complaint). He did not accept the severance package in mid October relying on the promise that it would be open for forty-five (45) days. Injustice can only be avoided by enforcement of the promise.

The Defendant corporation is liable for the severance package and all subsequent damages flowing therefrom, on the theory of promissory estoppel.

### Interference with Count XVII, Interference with Contractual Relations Against Mesher

Liability for intentional interference with contractual relations is imposed when the defendants knowingly interfere with a contract. Wright v. Shriner's Hosp. for Crippled Children, 412 Mass. 469, 476 (1992).

The courts particularly impose liability on corporate officials where their motivation to breach the contract arises out of malice. Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 663 (1981).

Feagans and Mesher were involved in the termination of Bennett's contract. (¶'s 10-12, and 15 of Complaint). As a result of their discriminatory animosity towards Bennett, malice can reasonably be inferred from the allegations in the complaint.

Accordingly, they are personally liable for interfering with Bennett's contract, and their motion to dismiss must be denied.

### Conclusion

For the above reasons, the Plaintiff Bennett requests that Defendants' motion to dismiss be denied in its entirety.

DAVID BENNETT, by his attorney,

Michael J. Michaeles, Esquire
390 Main Street, Suite 1000
Worcester, MA 01608
Phone: (508) 791-8181
BBO#: 344880

CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail.

Dated: 5/26/04

DATED: May 26, 2004

11