Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID BENNETT,

    Plaintiff,

v.

SAINT-GOBAIN CORPORATION,
JOHN R. MESHER, AND TIMOTHY L.
FEAGANS,

    Defendants.

CIVIL ACTION

NO. 04-CV-40014-NMG

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
<u>CERTAIN COUNTS OF PLAINTIFF'S COMPLAINT</u>**

Defendants Saint-Gobain Corporation ("Saint-Gobain" or "the Company"), John R. Mesher ("Mesher") and Timothy L. Feagans ("Feagans") (collectively "Defendants"), submit this reply memorandum of law in further support of their Motion to Dismiss Counts II, IV-IX, XI, XIII-XIV and XVI-XVII of the Complaint[1] and to respond to certain arguments raised in the Memorandum by Plaintiff Bennett in Support of His Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp.").

---

[1] Concurrently with the filing of his Opposition Brief, Plaintiff filed a Motion to Amend to add allegations to the Complaint that he exhausted his administrative remedies, as required by the Age Discrimination in Employment Act and Massachusetts General Laws Chapter 151B. Defendants do not oppose the addition of Plaintiff's proposed paragraphs 25, 26 and 28 to the Complaint, which paragraphs specifically address administrative exhaustion. Defendants therefore withdraw their Motion to Dismiss Counts I, III, X and XV of the Complaint. They also withdraw their Motion to Dismiss Counts II, IV, VIII, IX, XI, XIII, XIV and XVI only to the extent that Defendants sought to have those Counts dismissed on the basis of Plaintiff's failure to plead administrative exhaustion. Those Counts suffer from other deficiencies which were not corrected by the proposed amendment and which require the dismissal of those claims.

I.      **INTRODUCTION**

In their Memorandum of Law in Support of Defendants' Motion to Dismiss Counts I-XI and XIII-XVII of Plaintiff's Complaint ("Defs.' Opening Brief"), Defendants requested that the Court dismiss Counts I-XI and XIII-XVII of Plaintiff's Complaint because Plaintiff has failed to state a claim as a matter of law under all Counts except Count XII. In his Opposition Brief, Plaintiff has failed to adequately rebut Defendants' arguments and, in fact, has wholly avoided addressing many of them. Defendants therefore respectfully request that the Court dismiss Counts II, IV-IX, XI, XIII-XIV and XVI-XVII of the Complaint.

II.     **ARGUMENT**

   A.   **Counts II, IV, IX, XI, XIV and XVI Alleging Retaliation Under the Age Discrimination in Employment Act and Chapter 151B Should Be Dismissed For Failure To Plead Facts Necessary To Establish a Prima Facie Case.**

As explained in Defendants' Opening Brief, to establish a prima facie case of retaliation under either the Age Discrimination in Employment Act ("ADEA") or Massachusetts General Laws Chapter 151B ("Chapter 151B"), a plaintiff must show, inter alia, that a causal connection existed between the plaintiff's protected activity and an adverse employment action taken by the employer. Sullivan v. Raytheon Disability Trust, 262 F.3d 41, 48 (1st Cir. 2001). Defs.' Opening Br., at pp. 5-6. In his Opposition Brief, Plaintiff states that the causal connection between Plaintiff's protected activity and the adverse employment he suffered "is clear." See Pl.'s Opp. at p. 6. In making that claim, Plaintiff has failed to cite to any fact or any court decision which supports his argument that he can establish a causal connection between his June 6, 2001 grievance of age discrimination and the termination of his employment almost 17 months later, on October 31, 2002. Instead, Plaintiff merely restates several paragraphs of the

Complaint and cites to two cases which are wholly irrelevant to the arguments raised by Defendants.

The cases cited by Plaintiff in his Opposition Brief – <u>Matthews v. Ocean Spray Cranberries, Inc.</u>, 426 Mass. 122, 686 N.E.2d 1303 (1997) and <u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13 (1st Cir. 1989) – are race discrimination cases, not retaliation cases. Pl.'s Opp. at p. 7. In both, the courts ruled in favor of the defendants. Indeed, in <u>Dartmouth</u>, the Circuit Court affirmed the lower court's dismissal of the action under Rule 12 of the Federal Rule of Civil Procedure. As a result, neither decision supports Plaintiff's opposition to this Motion to Dismiss.

Moreover, Plaintiff's reference to a supervisor allegedly making age-related remarks is not pertinent to the retaliation claim. Paragraph 8 of the Complaint relates to the claims raised in the June 6, 2001 age discrimination grievance. Even if those statements were made, they cannot support a retaliation claim for conduct 17 months later. Finally, Plaintiff's reference to another member of the department being allowed to accept the same severance package also is not probative. It can be inferred from the Complaint that the individual who was permitted to take a severance package was also one of those who lodged the June 6, 2001 grievance. <u>See</u> Complaint at ¶¶ 8, 10, 22. These facts weigh strongly against any motive to retaliate based on that grievance.

Plaintiff further argues that the facts of <u>Bishop v. Bell Atlantic Corp.</u>, 299 F.3d 53 (1st Cir. 2002), cited by Defendants in their Opening Brief, are "clearly distinguishable" from the present case. <u>See</u> Pl.'s Opp. at p. 8. However, Plaintiff does not explain why the reasoning of the First Circuit Court of Appeals in <u>Bishop</u> – that a 12 month gap between the filing of a charge and a suspension cannot establish a causal connection based upon temporal proximity –

should not be applied here. Indeed, Plaintiff has not distinguished any of the cases cited by Defendants in their Opening Brief, each of which shows that, without more, a significant time gap between alleged protected activity and an adverse employment action will not be enough to establish a causal connection for purposes of a retaliation claim. See Defs.' Opening Br. at pp. 6-7. Mesnick v. General Elec. Co., 950 F.2d 816, 828-29 (1st Cir. 1991) (nine month gap too long); Chandamuri v. Georgetown Univ., 274 F. Supp. 2d 71, 85 (D.D.C. 2003) ("lapse of well over a year" made it "impossible to establish any causal link"); Musselman v. Vanguard Sav. Bank, Civ. A. No. 86-0268-F, 1988 U.S. Dist. LEXIS 13351, at * 22 (D. Mass. Nov. 29, 1988) (four month period cannot support a nexus).

Just as in Bishop, Mesnick, Chandamuri and Musselman, the significant lapse of time between Plaintiff's alleged protected activity and the termination of his employment – almost 17 months in the present case – is insufficient to establish a causal connection for purposes of establishing a prima facie claim of retaliation. Counts II, IV, IX, XI, XIV and XVI of the Complaint therefore should be dismissed.

    **B.    Counts VIII-IX and XIII-XIV Under the Age Discrimination in Employment Act Against Defendants Feagans and Mesher Should Be Dismissed Because There is No Individual Liability Under the ADEA.**

Plaintiff argues that his claims for age discrimination under the ADEA against defendants Feagans and Mesher should not be dismissed because the facts of this Court's decision in Orell v. UMass Memorial Medical Center, Inc., 203 F. Supp. 2d 52, 64 (D. Mass 2002) (Gorton, J.) "are distinguishable from this case." See Pl.'s Opp. at p. 8. Plaintiff does not explain how the facts of Orell are distinguishable from the present matter with respect to this issue. He also does not cite to a single case which controverts this Court's statement in Orell and the other cases cited by Defendants that individuals "cannot, as a matter of law, be held

individually liable for discrimination under . . . the ADEA." Id. at 64; see Defs.' Opening Br. at pp. 7-8.

Instead, Plaintiff inexplicably points out that under a wholly independent statute, Chapter 151B, individuals may be liable for aiding and abetting discrimination. See Pl.'s Opp. at p. 9. Defendants' Motion does not contest individual liability under that statute as raised in Counts X and XIV of Plaintiff's Complaint.

Because Plaintiff has failed to rebut Defendants' argument that there is no individual liability under the ADEA, and pursuant to this Court's decision in Orell and other district courts in this Circuit, Counts VIII-IX and XIII-XIV of the Complaint should be dismissed.

    **C.    Count V for Breach of Contract and Count VI for Breach of Implied Contract Against Defendant Saint-Gobain Should Be Dismissed Because Plaintiff Has Not Pled the Elements of a Claim for Breach of Express or Implied Contract.**

Although it is not clear from his Complaint, Plaintiff explains in his Opposition Brief that his breach of contract claims are based upon the severance agreement which was offered by Saint-Gobain to Plaintiff, under the terms of the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), but never accepted by him. See Pl.'s Opp. at p. 9; Complaint, Ex. 1. In doing so, Plaintiff appears to acknowledge that, because Plaintiff did not accept the severance agreement, he cannot establish the existence of a valid contract. See Mass Cash Register, Inc. v. Comtrex Sys. Corp., 901 F. Supp. 404, 416 (D. Mass. 1995) (citations omitted) (To prove a claim for breach of either express or implied contract under Massachusetts law, a plaintiff "must prove the existence of a valid binding agreement, the defendant's breach thereof, and damages resulting from the breach.").

Yet, Plaintiff goes on to argue that the Complaint supports a breach of contract claim because the severance agreement specifically stated that Plaintiff would have 45 days to consider the agreement, and Saint-Gobain revoked the agreement prior to the expiration of that 45-day period. Although the First Circuit Court of Appeals has not decided this issue, Plaintiff's argument has been soundly rejected by the Eighth Circuit Court of Appeals and at least one district court. See Ellison v. Premier Salons Int'l, Inc., 164 F.3d 1111 (8th Cir. 1999) and Marks v. New York Univ., 61 F. Supp. 2d 81 (S.D.N.Y. 1999).

The facts of Ellison are very close to those alleged here. In Ellison, the employer offered a separation agreement which specifically stated that the employee would have 21 days to consider the agreement.[2] Ellison, 164 F.3d at 1113-14. The employer then withdrew the offered agreement prior to the expiration of that 21-day period, and before the employee had accepted the agreement. Id. at 1113. The Eighth Circuit Court of Appeals found that, even though the separation agreement allowed the employee 21 days to consider the agreement, basic contract principles still applied, and the employer could effectively withdraw the offered agreement before the employee's acceptance. Id. at 1115. No irrevocable power of acceptance was created.

The Ellison court rejected three arguments raised by the plaintiff to support his position to the contrary. First, the court found that the language of the OWBPA seeks to ensure only that the waiver is knowing and voluntary. If the offer is revoked prior to its acceptance, then the employee has not waived any rights and the statute is not violated. Id. at 1114. Second, the court ruled that the OWBPA is concerned only with the validity of waiver agreements and

---

[2] While this fact is implicit in the decision of the Eighth Circuit Court of Appeals, it is explicitly stated in the district court's opinion. See Ellison v. Premier Salons Int'l, Inc., 981 F. Supp. 1219, 1220 (D. Minn. 1997).

does not preempt contract formation principles such as rejection and revocation. Id. at 1115. Finally, the OWBPA neither encourages nor discourages settlements and does not entitle an employee to the best possible arrangement in exchange for a waiver. Id. To summarize, in rejecting the contention that the offer could not be revoked, the Ellison court explained:

> If Ellison's assertion were correct, an employer could not revoke an offered separation agreement even if the day after the offer was made the employee sold the employer's trade secrets to the company's biggest competitor, or the employee decided to shoot the company's president, or, as here, the employee made defamatory statements about the company or its president. . . .

Id. at 1114.

Similarly, in Marks, supra, the court found that the employer effectively revoked the agreement prior to the expiration of the 21-day consideration period and prior to the plaintiff's acceptance. Marks, 61 F. Supp. 2d at 89. The court ruled that the statute "does not replace the common law right of an employer to revoke an offer prior to acceptance." Id. at 90. It then summarily dismissed plaintiff's breach of contract claim because the plaintiff had "failed to establish the first element of a breach of contract claim, namely the existence of a contract between herself" and the employer. Id. at 89.

The decisions in Ellison and Marks make clear that the facts alleged in Plaintiff's Complaint cannot support a claim for breach of contract. Despite that, Plaintiff attempts to salvage his claims by citing to the decision of the Massachusetts Appeals Court in Thomas v. Massachusetts Bay Transportation Authority, 39 Mass. App. Ct. 537, 660 N.E.2d 665 (1995). However, Plaintiff's reliance upon the Thomas decision is misplaced. In Thomas, the plaintiff had verbally communicated his unconditional acceptance of the defendant's offer to settle a personal injury action, after which the defendant impeded the plaintiff's ability to sign the settlement agreement. Id. at 544, 660 N.E.2d at 669. Those facts stand in direct contrast to the

facts of the present case, in which even Plaintiff does not claim that he accepted the severance agreement – either orally or in writing – but merely "indicated that he was considering accepting" the offer. See Pl.'s Opp. at p. 9; Complaint at ¶ 11.

Apparently recognizing that his breach of contract claims fail as a matter of law, Plaintiff argues that the Court should convert his claims for breach of contract to a claim for unjust enrichment. See Pl.'s Opp. at p. 9. However, to sustain a claim of unjust enrichment, a plaintiff must show that "a benefit or enrichment was conferred upon the defendant," that "the retention of that benefit or enrichment resulted in detriment to" the plaintiff and that "there are circumstances which make the retention of that benefit . . . unjust." Brandt v. Wand Partners, 242 F.3d 6, 16 (1st Cir. 2001) (affirming summary dismissal of unjust enrichment claims against two defendants and judgment in favor of third defendant on unjust enrichment claim). Just as Plaintiff has not pled the essential elements of a breach of contract claim, Plaintiff has not alleged any facts to support a claim for unjust enrichment. Plaintiff's assertion in his brief that Defendant corporation was unjustly enriched by keeping the value of the severance package but terminating Bennett anyway misinterprets the purpose of the severance agreement. Pl.'s Opp., at p. 10. The enhanced severance was being paid in return for a release of claims. Complaint, Ex. 1. Obviously, Bennett did not provide the release, so the corporation has not been unjustly enriched.

For all of these reasons, and those set forth in Defendants' Opening Brief, Counts V and VI of the Complaint should be dismissed.

### D. Count VII for Promissory Estoppel Against Defendant Saint-Gobain Should Be Dismissed Because Plaintiff Has Not Set Forth the Elements of a Claim for Promissory Estoppel.

Plaintiff argues in his Opposition Brief that his claim for promissory estoppel is premised upon Saint-Gobain's "promise" to keep the offered separation agreement open for 45

days. However, as explained more fully above, courts considering the question have stated uniformly that an employer may effectively revoke an offered separation agreement even where the agreement specifically states that the employee has a certain number of days to consider the agreement. See Ellison, 164 F.3d at 1115 and Marks, 61 F. Supp. 2d at 89. As a result, the Complaint fails to establish a claim for promissory estoppel under Massachusetts law because Plaintiff has not alleged that Saint-Gobain made "a promise which [Saint-Gobain] should reasonably [have] expect[ed] to induce action or forbearance of a definite and substantial character on the part of the [Plaintiff]." Carroll v. Xerox Corp., 294 F.3d 231, 242 (1st Cir. 2002) (citations omitted).

In addition to not sufficiently pleading the existence of a promise by Saint-Gobain, Plaintiff has not alleged the remaining essential elements of a promissory estoppel claim. The Complaint does not include allegations that Plaintiff reasonably relied upon any promise by Saint-Gobain. It also does not include allegations that injustice can be avoided only by enforcement of the promise. See Id. (setting forth the elements of a promissory estoppel claim). Because Plaintiff has failed to plead the essential elements of his cause of action, his promissory estoppel claim fails as a matter of law and Saint-Gobain's motion to dismiss Count VII should be granted.[3]

E. **Count XVII Alleging Interference with Contractual Relations Against Defendant Mesher Should Be Dismissed.**

Plaintiff correctly points out in his Opposition Brief that an at-will employee may be able to establish a claim for intentional interference with contractual relations against a supervisor who terminates his employment if the supervisor acts due to personal feelings of

---

[3] Plaintiff has not attempted to amend this portion of his Complaint.

malice. See McMillan v. Massachusetts Soc'y for the Prevention of Cruelty to Animals, 880 F. Supp. 900, 910 (D. Mass. 1995). In so doing, however, Plaintiff ignores the fact that he has failed to plead any facts in the Complaint to support even an inference that Mesher acted out of feelings of personal malice.[4] Moreover, Plaintiff relies on Gram v. Liberty Mutual Insurance Co., 384 Mass. 659, 429 N.E.2d 21 (Mass. 1981) and Wright v. Shriners Hospital, 412 Mass. 469, 589 N.E.2d 1241 (1992), both of which actually support Defendants' position.

In Wright, the plaintiff brought suit against her hospital employer for wrongful termination and against an individual hospital administrator for intentional interference with contractual relations. Wright, 412 Mass. at 470, 589 N.E.2d at 1242. The Massachusetts Supreme Court reversed an entry of judgment for plaintiff, finding that, "as [plaintiff's] supervisor, [the defendant administrator] had a right to fire [plaintiff] unless he did so 'malevolently, i.e. for a spiteful, malignant purpose, unrelated to the legitimate corporate interest.'" Id. at 476, 589 N.E.2d at 1246 (quoting Sereni v. Star Sportswear Mfg. Corp., 24 Mass. App. Ct. 428, 432-33 (1987)). In reaching its decision, the Court noted that "[t]he record [was] devoid of evidence that [the supervisor's] purpose in discharging [plaintiff] was unrelated to a legitimate corporate purpose." Id. at 476, 589 N.E.2d at 1246.

In Gram, supra, the Massachusetts Supreme Court noted that a plaintiff must meet a high burden to establish an inference of malice in support of a claim for intentional interference with contractual relations against a supervisor. Id. at 665, 429 N.E.2d at 25. In reversing a judgment entered in favor of the plaintiff on a claim for intentional interference, the Court in Gram employed the following reasoning:

---

[4] Plaintiff also ignores the distinction in the law recognized by Defendants, under which defendant Feagans has not moved to dismiss the similar claim alleged against him in Count XII.

> Even if we assume, as seems reasonably warranted, that [the individual supervisors] wish [the plaintiff] did not work under them, that they did not conduct an adequate investigation of the alleged rule violation and that, in fact, there was no new or good reason to justify [plaintiff's] discharge, an inference of an intent to obtain Gram's discharge out of ill will toward him is no more probable than is the inference that [the supervisors] acted in response to a sincerely held but erroneous view that the [action by the plaintiff] was contrary to company policy. An inference of the probability of malice, action motivated by spite, does not reasonably follow from a showing, in these circumstances, only of negligence or of sloppy and unfair business practices.

Id. at 665, 429 N.E.2d at 25.

In the present case, Plaintiff has not alleged any facts in the Complaint to support an improper motive or purpose by Mesher in terminating Plaintiff. Moreover, Plaintiff has not distinguished the court's decision in McMillan, cited above, and discussed at length in Defendants' Opening Brief, at p. 14. Finally, Plaintiff has not even addressed the argument raised in Defendants' Opening Brief that, due to Mesher's position as an officer (Vice President) and chief legal counsel (General Counsel) for Saint-Gobain, Mesher cannot be considered a third party to any contract Bennett may have had with Saint-Gobain. Defs.' Opening Br., at p. 13. For all of these reasons, Plaintiff cannot establish the essential elements of a claim for intentional interference with contractual relations against Mesher. As a result, Count XVII of the Complaint should be dismissed.

III. <u>**CONCLUSION**</u>

       For all the reasons set forth above, and those contained in Defendants' Opening Brief in support of their Motion to Dismiss, Defendants respectfully request that this Court dismiss Counts II, IV-IX, XI, XIII-XIV and XVI-XVII of Plaintiff's Complaint with prejudice.

                                SAINT-GOBAIN CORPORATION, John R. MESHER, and TIMOTHY L. FEAGANS,
By their attorneys,

Of Counsel:

| | |
|---|---|
| Hope A. Comisky<br>Amy G. McAndrew<br>PEPPER HAMILTON, LLP<br>3000 Two Logan Square<br>18th and Arch Streets<br>Philadelphia, PA  19103 | /s/ Jill L. Brenner<br>James B. Conroy (BBO# 096315)<br>Jill L. Brenner (BBO# 652501)<br>Donnelly, Conroy & Gelhaar, LLP<br>One Beacon Street<br>33rd Floor Boston<br>Massachusetts 02108<br>617-720-2880 |

Dated: June 11, 2004