UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

—————————————————————
)
DAVID BENNETT,                                  )
                                                )
         Plaintiff,                             )
                                                )            Civil Action No.
         v.                                     )            04-40014-FDS
                                                )
SAINT-GOBAIN CORPORATION,                       )
JOHN R. MESHER, and TIMOTHY L.                  )
FEAGANS,                                        )
                                                )
         Defendants.                            )
—————————————————————)

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

SAYLOR, J.

        This is a civil action arising from defendant Saint-Gobain Corporation's termination of plaintiff's

employment.  Plaintiff alleges claims for unlawful age discrimination, retaliation, and breach of an alleged

promise to hold open a severance offer for a specified time.  Pending before the Court is defendants'

motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be

granted.

I.      **Background**

        The following facts are as alleged in the complaint.[1]  Plaintiff David Bennett was  employed as a

senior patent attorney in the intellectual-property law department of Saint-Gobain in Worcester,

Massachusetts.  At the time of his termination, he was 64 years old and the oldest member of the

_____

[1] This recitation of facts is, of course, plaintiff's version of events, as set forth in the complaint.  The issue
here is the sufficiency of the proposed pleading, not whether the evidence actually supports those allegations.

1

department.  Defendant John Mesher is Vice President and General Counsel of Saint-Gobain.

Defendant Timothy Feagans is Deputy General Counsel and head of the intellectual-property law

department in Worcester; through October 2002, Feagans was Bennett's immediate supervisor.

On June 6, 2001, Bennett and other members of Saint-Gobain's intellectual-property law

department filed an age-discrimination grievance with the company.  The grievance stemmed from

various statements allegedly made by Feagans that he wanted to rid Saint-Gobain of the older members

of its intellectual-property law department.  The record does not indicate whether or how the grievance

was resolved.

On September 23, 2002, Bennett received a letter from Mesher stating that he had decided to

close the Worcester office of the law department and to consolidate the department at the company's

headquarters in Valley Forge, Pennsylvania.  All members of the company's intellectual-property law

department received the same letter.  All of the attorneys were given the choice of relocating to Valley

Forge or accepting one of two severance packages.  According to the letter, one of the packages

provided for enhanced severance benefits in exchange for the signing of a release; the other apparently

provided ordinary severance benefits, but did not require a release.

The letter stated in part:

You have forty-five days from the date of your receipt of this Explanatory Letter to
consider the Agreement.  After 5:00 p.m. on the forty-fifth day, the Company's offer
under the Agreement will be withdrawn if you have not submitted a signed copy of the
Agreement to me.  Should you choose to sign the Agreement before the forty-five-day
period expires, you acknowledge that the decision to shorten the review period is yours
alone, and that the Company has not induced you to do so.

In mid-October 2002, Bennett told Mesher "that he was considering accepting the severance prior to

the 45-day expiration." Bennett did not, however, sign the agreement.

Thirty-eight days after the receipt of the letter, at approximately 1:00 p.m. on October 31, 2002, Feagans invited Bennett into a conference room. Feagans was accompanied by Robert Wilkes, from the company's security section, and Joe Jackson, an outside consultant. In the conference room, they accused Bennett of writing harassing poems to a female employee. They asked Bennett for permission to search his office and desk, which Bennett granted. They told Bennett that the company had retained a handwriting expert who concluded that Bennett wrote the poems allegedly delivered to the female employee.

At approximately 4:15 p.m. the same day, Mesher entered the conference room and told Bennett that he was summarily dismissed. He also stated that Wilkes "wanted to press criminal charges against Bennett for which he would spend at least two years in jail." According to Bennett, he was not given the opportunity to review any documentation supporting the purported charge or to refute the charge.

Saint-Gobain gave Bennett no written notice of the reasons for his termination. In its opposition to Bennett's subsequent application for unemployment benefits, Saint-Gobain stated that the reasons for his termination were harassment of a female employee, gross insubordination, and a pattern of rude and unprofessional conduct.

Bennett claims that the reasons Saint-Gobain extended for his termination were pretextual and that he was fired because of his age. In support of that claim, Bennett alleges that he was the oldest member of the department and that at all material times, he received the highest possible rating in his written performance evaluations. He also alleges that shortly after his termination, Saint-Gobain hired

two male attorneys, one in his late twenties and the other in his early forties, either or both of whom

assumed most of his duties, and that after his termination, Saint-Gobain allowed another attorney to

accept the same severance package that the company denied Bennett.

Based on those facts, Bennett filed a seventeen-count complaint in this Court on January 28,

2004, alleging claims of: (1) age discrimination and retaliation under the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 623 (against all defendants); (2) age discrimination and

retaliation under Mass. Gen. Laws ch. 151B (against Saint-Gobain); (3) aiding and abetting age

discrimination and retaliation under Mass. Gen. Laws ch. 151B (against Mesher and Feagans); (4)

breach of contract (against Saint-Gobain); (5) breach of implied contract (against Saint-Gobain); (6)

promissory estoppel (against Saint-Gobain); and (7) interference with contractual relations (against

Mesher and Feagans).  On May 14, 2004, defendants filed the pending motion to dismiss for failure to

state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## II.    **Standard of Review**

A court may not dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6)

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In considering the merits

of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached

as exhibits or incorporated by reference in the complaint, and matters of which judicial notice can be

taken.  *Nollet v. Justices of the Trial Court of Mass.*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000)

*aff'd*, 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the court must accept all factual allegations in the

complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Langadinos v. American*

*Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).

**III.    Analysis**

    **A.    Discrimination and Retaliation Claims**

Bennett claims that Saint-Gobain's stated reasons for terminating him in October 2002 were pretextual.  He contends that he was actually terminated either (1) because of his age or (2) in retaliation for lodging an internal age-discrimination complaint against Feagans in June 2001. Defendants have moved to dismiss all counts alleging retaliation and the counts alleging the individual liability of Mesher and Feagans for discrimination and retaliation under the ADEA.[2]

    **1.    The Retaliation Claims**

Defendants move to dismiss Counts 2, 4, 9, 11, 14, and 16 of the complaint, which allege retaliation or aiding and abetting retaliation under the ADEA and Mass. Gen. Laws. ch. 151B. Specifically, defendants argue that plaintiff has failed to establish a causal connection between plaintiff's protected activity, his June 2001 complaint of age discrimination, and the adverse employment action, the October 2002 termination.

The ADEA prohibits retaliation based on an employee's opposition to an employer's illegal age-discrimination practices.  The statute makes it unlawful "for an employer to discriminate against any of his employees . . . because such [employee] . . . has opposed any practice made unlawful by [the

---

[2] Defendants originally moved to dismiss all the counts brought under the ADEA and Chapter 151B (Counts 1-4, 8-11, and 13-16).  One of the asserted grounds for dismissal was that Bennett failed to plead exhaustion of administrative remedies.  Bennett subsequently amended his complaint to add exhaustion-related allegations. Consequently, defendants entirely withdrew their motion to dismiss Counts 1, 3, 10, and 15 of the complaint and also withdrew their motion to dismiss Counts 2, 4, 8, 9, 11, 13, 14, and 16 to the extent that they sought to have those counts dismissed on the basis of plaintiff's failure to plead administrative exhaustion.

ADEA].” 29 U.S.C. § 623(d).  Similarly, Chapter 151B makes it illegal “[f]or any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter,” Mass. Gen. Laws ch. 151B, § 4(4), including unlawful age discrimination in employment, *see id.*, § 4(1B).

To establish a prima facie case of retaliation under either the ADEA or Chapter 151B,  plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action. *Sullivan v. Raytheon Disability Trust*, 262 F.3d 41, 48 (1st Cir. 2001).[3]  Defendants do not dispute that plaintiff satisfies the first two elements of this test, but contend that plaintiff cannot establish the requisite causal connection.  Specifically, defendants argue that plaintiff relies solely on the temporal proximity between the protected activity and the termination, and that the length of time between those two events, at 17 months, is too great to establish causation as a matter of law.

Plaintiffs who rely solely on temporal proximity to satisfy their prima facie burden must demonstrate that the proximity between the protected activity and the adverse employment action is very close.  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  A significant time gap “suggests, by itself, no causality at all.”  *Id.* at 274.  Nevertheless, a lack of temporal proximity does not automatically doom a plaintiff’s case.  *Chungchi Che v. Massachusetts Bay Transp. Auth.*, 342 F.3d 31, 38 (1st Cir. 2003); *accord Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 894 (3d

---

[3] Courts apply the same three-part test to evaluate retaliation claims under the ADEA and Chapter 151B. *Compare Mesnick v. General Elec. Co.*, 950 F.2d 816, 827 (1st Cir. 1991) (ADEA), *with Sullivan*, 262 F.3d at 48 (Chapter 151B).  *See also Mole v. University of Mass.*, 442 Mass. 582, 591-92 (2004) (applying same standard to claims brought under both statutes).

Cir. 1993) ("The mere passage of time is not legally conclusive proof against retaliation."). Rather,

"[t]emporal proximity is but one method of proving retaliation" because "[e]vidence of discriminatory or

disparate treatment in the time period between the protected activity and the adverse employment

action can be sufficient to show a causal connection." *Chungchi Che*, 342 F.3d at 38 (citations

omitted).

Defendants cite several cases with time frames close to or less than 17 months where courts

have concluded as a matter of law that temporal proximity, standing alone, failed to indicate causation.

*See Clark County Sch. Dist.*, 532 U.S. at 273 (20 months); *Bishop v. Bell Atl. Corp.*, 299 F.3d 53,

60 (1st Cir. 2002) (12 months); *Mesnick*, 950 F.2d at 828 (18 months); *Chandamuri v. Georgetown

Univ.*, 274 F. Supp. 2d 71, 85 (D.D.C. 2003) ("well over a year"); *Harrison v. New York City

Admin. for Children's Servs.*, Civ. A. No. 02 Civ. 0947, 2003 U.S. Dist. LEXIS, at *15 (S.D.N.Y.

July 7, 2003) (19 months); *Garone v. United Parcel Serv., Inc.*, Civ. A. No. 00-CV-6722 (ILG),

2001 U.S. Dist. LEXIS 12175, at *10 (E.D.N.Y. July 12, 2001) (three months); *Johnson v. Injured

Workers' Ins. Fund*, Civ. No. HAR 92-1702, 1992 U.S. Dist. LEXIS 15508, at *13 (D. Md. Oct. 5,

1992), *aff'd sub nom. Johnson v. Maryland*, Civ. A. No. 92-2289, 1993 U.S. App. LEXIS 24719

(4th Cir. Sept. 24, 1993) (approximately three months); *Musselman v. Vanguard Sav. Bank*, Civ. A.

No. 86-0268-F, 1988 U.S. Dist. LEXIS 13351, at *21 (nearly four months); *Mole*, 442 Mass. at 595

("many years"). In particular, defendants draw the Court's attention to four cases where district courts

granted motions to dismiss for pleading insufficient temporal proximity and thus failing to establish

causation. *See Chandamuri*, 274 F. Supp. 2d at 84-85; *Harrison*, 2003 U.S. Dist. LEXIS, at *14-

15; *Garone*, 2001 U.S. Dist. LEXIS 12175, at *10; *Johnson*, 1992 U.S. Dist. LEXIS 15508, at

*10-11.[4]

Defendants argue that, despite the liberal nature of federal pleading requirements, plaintiff nevertheless must allege specific facts to support his claim of unlawful retaliation. In this case, they assert, any additional facts that might support a retaliation claim, such as an ongoing pattern of retaliation, are within plaintiff's knowledge; if they occurred, Bennett would have alleged them; and Bennett should not be permitted to undertake discovery to seek evidence of claims for which there is no factual support at the inception of the case.

The Court concludes that dismissal of these counts for failure to state a prima facie case is not appropriate. Recently, in *Swierkiewicz v. Sorema N. A.*, the Supreme Court reminded lower courts that employment-discrimination complaints are not to be held to a rigid pleading standard. 534 U.S. 506, 512 (2002). The lower court there had dismissed an age-discrimination complaint because it found that plaintiff "'ha[d] not adequately alleged a prima facie case, in that he ha[d] not adequately alleged circumstances that support an inference of discrimination.'" *Id.* at 509. Reversing the Second Circuit's affirmance of that decision, the Court held that "an employment discrimination complaint need not include [specific facts establishing a prima facie case of discrimination] and instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2)." *Id.* at 508. In sum, the complaint need only give defendant fair notice of plaintiff's claims. *Id.* at 514.

---

[4] It is not quite accurate to say that Bennett relies solely on temporal proximity to establish causation. Bennett also suggests that there is a connection from a discriminatory act (Feagans's statements) to the protected activity (the filing of the grievance) to the adverse employment action (the termination). It is not at all clear, however, that this chain of events supports a claim of causation for Bennett's *retaliation* claims, as opposed to his *discrimination* claims.

The Court expresses no opinion on whether plaintiff ultimately will succeed in eliciting other evidence of retaliation, or even whether the retaliation claim is likely to survive summary judgment.[5] But, at this stage of the litigation, the Court cannot say that it appears beyond doubt that Bennett can prove no set of facts in support of his retaliation claims that would entitle him to relief. *See Conley*, 355 U.S. at 45-46. As the Court in *Swierkiewicz* observed:

> Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."

534 U.S. at 515 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Accordingly, defendants' motion to dismiss the retaliation claims on these grounds will be denied.

### 2.     Individual Liability Under ADEA

Counts 8, 9, 13, and 14 of the complaint allege violations of the ADEA by Feagans and Mesher. Defendants have moved to dismiss those counts on the grounds that there is no individual liability under the ADEA.

Although the First Circuit has not decided the issue, almost all circuits that have addressed the issue have determined that there is no individual liability under federal anti-discrimination statutes. *See Orell v. UMass Mem'l Med. Ctr., Inc.*, 203 F. Supp. 2d 52, 64 (D. Mass. 2002) (collecting cases). The *Orell* court, citing "pervasive legal precedent" from the circuit courts and from the district courts within the First Circuit, held that a defendant "cannot, as a matter of law, be held individually liable for

---

[5] Many of the cases cited by defendants were decided at a more advanced stage of the proceedings than a motion to dismiss. *See Clark County Sch. Dist.*, 532 U.S. at 269 (summary judgment); *Bishop*, 299 F.3d at 57 (motion for judgment as a matter of law); *Mesnick*, 950 F.2d at 820 (summary judgment); *Musselman*, 1988 U.S. Dist. LEXIS 13351, at *1 (bench trial); *Mole*, 442 Mass. at 582 (directed verdict).

discrimination under . . . the ADEA." *Id.*[6]

Plaintiff has provided no contrary authority. In light of the overwhelming weight of authority that the federal anti-discrimination statutes do not provide for individual liability, this Court concludes that Counts 8, 9, 13, and 14 of plaintiff's complaint should be dismissed.

## B.    Contract Claims

Bennett also asserts a variety of contract-related claims based on Saint-Gobain's offer of enhanced severance. As noted previously, the letter delivered to Bennett stated that he had 45 days to accept the enhanced severance package. Bennett claims that the statement represents a promise to keep the offer open for 45 days and that, by terminating him before the expiration of the 45 days, Saint-Gobain breached that promise. He cloaks his claims in theories of contract, implied contract, promissory estoppel, and, as to the conduct of Mesher and Feagans, intentional interference with contract.

### 1.    Breach of Contract

Count 5 alleges breach of contract. Bennett does not claim that he had an employment contract with Saint-Gobain; rather, he contends that the severance letter constituted an enforceable promise, and that Saint-Gobain could not prevent his acceptance of the enhanced severance package by terminating him. Saint-Gobain has moved to dismiss Count 5 on the grounds that plaintiff fails to allege the formation of a valid contract.

---

[6] According to a leading employment-discrimination treatise, "[a]lthough not definitively settled as to whether an individual employee, such as a supervisor or manager, may be held individually liable under the ADEA, the overwhelming majority of recent cases hold that they cannot." Barbara Lindemann & Paul Grossman, ABA Section of Labor & Employment Law, *Employment Discrimination Law*, at 401 (3d ed. 2002 Supp.) (collecting cases).

To prove a claim for breach of contract under Massachusetts law, Bennett must prove the existence of a valid binding contract, defendants' breach, and damages resulting from the breach. *Mass Cash Register v. Comtrex Sys. Corp.*, 901 F. Supp. 404, 415 (D. Mass. 1995). Generally, a contract is created when there is an offer and an acceptance. *Greany v. McCormick*, 273 Mass. 250, 252-53 (1930). The offeror is free to revoke the offer at any time prior to acceptance. *Cruver Mfg. Co. v. Rousseau*, 240 Mass. 168, 169 (1921). "Even if the offeror states that the offeree should have a specific time to accept, or states that the offer will remain open for a definite time, the offer is still revocable at the will of the offeror." *Allendale Farm, Inc. v. Koch*, 8 Mass. L. Rep. 196, 1997 Mass. Super. LEXIS 12, at *18 (Mass. Super. 1997); *accord* 1 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 5:8 (4th ed. 1990) ("[E]ven though the offeror specifies in his offer a definite time within which acceptance may be made, the offeror may, nevertheless, revoke his offer within that time period.").

There are, however, certain situations where the offeror's power to terminate the offer is limited. An *option* is a separate contract in which the offeree gives consideration for a promise by the offeror not to revoke an outstanding offer. 1 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 5:15 (4th ed. 1990). An offer by a merchant to buy or sell goods in a signed writing that expressly states that it will be held open is an irrevocable *firm offer* under § 2-205 of the Uniform Commercial Code, Mass. Gen. Laws ch. 106. 25 Herbert Lemelman, *Massachusetts Practice* § 2:11 (3d ed.). Additionally, *part performance* of certain contracts can make an offer irrevocable. Restatement (Second) of Contracts §§ 45, 62 (1981). Finally, *detrimental reliance* on the promise to keep the offer open for a certain time can substitute for consideration to make an offer

irrevocable.  Restatement (Second) of Contracts

§ 87(2) (1981).

Leaving aside the question of detrimental reliance, which the Court will discuss below, none of

the exceptions listed above applies to the facts alleged in Bennett's complaint. Assuming for the sake of

argument that the statement that Bennett had 45 days to accept the offer was a promise, there was no

bargained-for consideration for that offer.  Furthermore, neither the doctrine of part performance nor

the UCC applies to this case.  Therefore, in the absence of detrimental reliance, the statement is not

enforceable as a contract.

The Court's conclusion is buttressed by two decisions cited by defendants, *Ellison v. Premier*

*Salons International, Inc.*, 164 F.3d 1111 (8th Cir. 1999), and *Marks v. New York University*, 61

F. Supp. 2d 81 (S.D.N.Y. 1999).  Both cases involved offers of separation agreements subject to 21-

day consideration periods under the Older Workers Benefit Protection Act, 29 U.S.C. §

626(f)(1)(F)(i) ("OWBPA").[7]  In *Ellison*, the employer offered a separation agreement that specifically

stated that the employee would have 21 days to consider it.  164 F.3d at 1113-14.  The employer then

withdrew the offered agreement before the expiration of the 21-day period and before the employee

accepted it.  *Id.* at 1113.  The court found that, even though the separation agreement allowed the

employee 21 days to consider the agreement, basic contract principles still applied, and the employer

_____

[7] In both *Ellison* and *Marks*, plaintiffs argued that the OWBPA, 29 U.S.C. § 626(f)(1)(F)(i), provided an
irrevocable power of acceptance for the time stated in the offer.  In each case, the court concluded that the OWBPA
creates no such irrevocable power of acceptance and that common-law contract principles of offer, acceptance, and
revocation apply.  *Ellison*, 164 F.3d at 1114; *Marks*, 61 F. Supp. 2d at 89-90.  At the hearing on the motion to dismiss,
counsel for defendants represented that the 45-day time frame for acceptance of the enhanced severance package
here was required by the OWBPA.  Plaintiff does not argue that the OWBPA requires the enhanced severance offer
to remain open for 45 days.  That argument, in any event, appears to be foreclosed by the reasoning of the courts in
*Ellison* and *Marks*, with which this Court concurs.

could withdraw the offered agreement before the employee's acceptance. *Id.* at 1115.

Likewise, in *Marks*, the court found that the employer effectively revoked the separation offer before the expiration of the 21-day consideration period and before plaintiff accepted it. 61 F. Supp. 2d at 89. The court ruled that the statute "does not replace the common law right of an employer to revoke an offer prior to acceptance." *Id.* at 90. It then dismissed plaintiff's breach-of-contract claim because the plaintiff had "failed to establish the first element of a breach of contract claim, namely the existence of a contract between herself" and the employer.

Bennett claims, however, that there is an additional reason why the statement is an enforceable promise. He relies on a statement in *Thomas v. Massachusetts Bay Transportation Authority* that, "if one party has put forth an offer for a certain time period, that same party may not prevent acceptance of the offer by then denying the means (e.g., the documents) of acceptance if it controls those means." 39 Mass. App. Ct. 537, 545 (1995) (citing *W & G Seaford Assocs. v. Eastern Shore Mkts., Inc.*, 714 F. Supp. 1336, 1340-41 (D. Del. 1989); Restatement (Second) of Contracts § 224 (1979)). Because Bennett indicated to Mesher "that he was considering accepting the severance prior to the 45 day expiration," he reasons, Saint-Gobain was precluded under *Thomas* from terminating him before the 45 days passed.

Bennett's reliance on *Thomas* is misplaced. *Thomas* involved a claim by a plaintiff that the defendant had breached an agreement to settle certain litigation. On a defense motion for summary judgment, plaintiff's version of events was that he "had accepted the [settlement] offer save for a detail that should not have mattered to [d]efendant" before the deadline announced by defendant for accepting the settlement offer. *Id.* at 542. Also before the deadline, plaintiff communicated to

defendant that he wanted to sign the settlement papers, which were to be prepared by defendant. *Id.* at 542-43. Nevertheless, defendant withdrew its settlement offer before the deadline. *Id.* at 540. The trial court granted summary judgment on the ground that signing the papers before the deadline was a condition precedent to an enforceable agreement. *Id.* at 542.

The Appeals Court disagreed that signing the papers was a condition precedent to an enforceable agreement, concluding instead that "an unconditional 'yes' was what was required to bind the settlement," in part because defense counsel "controlled the paper work."[8] *Id.* at 543. It was in that context that the court stated: "if one party has put forth an offer for a certain time period, that same party may not prevent acceptance of the offer by then denying the means (e.g., the documents) of acceptance if it controls those means." *Id.* at 545.

The court in *Thomas* did not intend to revise entirely the law of offer and acceptance, as plaintiff suggests. Rather, when the court spoke of "denying the means (e.g., the documents) of acceptance if it controls those means," the court referred to the *technical means* of acceptance, not the opportunity to accept. The *Thomas* case thus involved an application of the prevention doctrine, which provides that "a party who wrongfully prevents a thing from being done cannot avail itself of the nonperformance it has occasioned." *W & G Seaford*, 714 F. Supp. at 1341.[9]

---

[8] The court framed the issue thus: "In the context of an agreement to settle litigation, the parties bring before us a variant of the old and recurring question: have they by speech and acts agreed on all material points so that the signing of a document would merely memorialize their agreement, or did their understanding require that documents be signed before they would be bound to their settlement?" *Thomas*, 39 Mass. App. Ct. at 537.

[9] Neither *W & G Seaford* nor Restatement (Second) of Contracts § 224, which were cited by the court in *Thomas*, supports plaintiff's position. The cited passage of *W & G Seaford* deals with the prevention doctrine. Restatement (Second) of Contracts § 224 defines the term "condition": "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract is due." Neither authority deals with the issue of contract formation.

14

The facts in *Thomas* are also plainly distinguishable from the case at bar. Bennett does not allege that he communicated an unconditional acceptance of the severance agreement; rather, he states merely that he told Mesher "that he was considering accepting the severance prior to the 45 day expiration." Further, unlike in *Thomas*, Bennett does not allege that Saint-Gobain controlled the means of acceptance, i.e., the enhanced severance agreement documents. Indeed, the September 23 letter attached to Bennett's complaint indicates that those documents were to be attached to that letter and delivered with it. In sum, *Thomas* does not advance Bennett's case.

Because Saint-Gobain effectively revoked the offer of enhanced severance before acceptance, Count 5 does not state a claim for breach of contract, and accordingly will be dismissed.

## 2. **Promissory Estoppel**

Count 7 seeks recovery under the principles of promissory estoppel. In an effort to create an enforceable promise, Bennett essentially argues that he relied to his detriment on the statement in the letter providing that he would have 45 days to accept the enhanced severance package. The claimed detrimental reliance is that Bennett did not accept the enhanced severance package during the first 38 days of the offer, before he was terminated. Saint-Gobain moves to dismiss this count for failure to state the necessary elements of promissory estoppel.[10]

In order to establish a claim of promissory estoppel under Massachusetts law, a plaintiff must allege that (1) defendant made a promise which he should reasonably expect to induce action or

---

[10] As explained above, the general rule is that an offer not supported by consideration can be revoked at will by the offeror, even if he has promised not to revoke for a certain period. But where an offeror should reasonably expect that an offeree would rely to his detriment on an offer, principles of promissory estoppel apply, and the offer will be held irrevocable as an option contract. Restatement (Second) Contracts § 87(2) (1981).

forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise. *Neuhoff v. Marvin Lumber & Cedar Co.*, 370 F.3d 197, 203 (1st Cir. 2004). As the Massachusetts Supreme Judicial Court has observed, "an action based on reliance is equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration." *Rhode Island Hosp. Tr. Nat'l Bank v. Varadian*, 419 Mass. 841, 850 (1995).

A comment to § 87 of the Restatement (Second) of Contracts explains the character of the reliance necessary to invoke promissory-estoppel principles in this context:

> [C]ircumstances may be such that the offeree must undergo substantial expense, or undertake substantial commitments, or forego alternatives, in order to put himself in a position to accept by either promise or performance. The offer may be made expressly irrevocable in contemplation of reliance by the offeree. If reliance follows in such cases, justice may require a remedy. . . . But the reliance must be substantial as well as foreseeable.

Restatement (Second) Contracts § 87(2) cmt. e (1981).

Here, Bennett has not pleaded facts that would establish reliance in the sense explained above. Bennett contends that he did not accept the offer earlier because he relied on the statement that he would have 45 days to accept the enhanced severance. But he does not allege that he in any way changed his position in reliance on that statement. He does not claim, for example, that he passed up a job offer because of the anticipated severance benefits, or that he purchased retirement property for which he planned to pay with the severance funds. Instead, all Bennett alleges is that he did not accept the enhanced-severance offer. That he did at his own risk. To hold that Bennett's omission here

constitutes reliance would be to vitiate the rule that an offer—even one that purports to be open for a specific period of time—can be withdrawn at any time before acceptance. Accordingly, Count 7 of the complaint will be dismissed.

### 3.    Breach of Implied Contract

In Count 6, Bennett seeks to recover under a theory of implied contract. According to Bennett, Saint-Gobain has been unjustly enriched by retaining the value of the severance package by terminating him, thereby preventing him from receiving those benefits. Saint-Gobain moves to dismiss Count 6 on the grounds that it has not been enriched by keeping the value of the enhanced severance package.

An implied-in-law contract is an obligation created for reasons of justice, without any expression of assent. *See Salamon v. Terra*, 394 Mass. 857, 859 (1985). Such an obligation is based on concepts of unjust enrichment.[11] To state a claim for unjust enrichment, a plaintiff must show that a benefit or enrichment was conferred upon the defendant, that the retention of that benefit or enrichment resulted in detriment to the plaintiff, and that there are circumstances that make the retention of that benefit unjust. *See Brandt v. Wand Partners*, 242 F.3d 6, 16 (1st Cir. 2001).

Here, Bennett does not allege any facts to suggest that he conferred a benefit upon Saint-Gobain. The September 23 letter attached to his complaint shows that the enhanced severance was being paid in return for a release of claims. Bennett did not provide the release, so Saint-Gobain has

---

[11] Although he does not distinguish between the two, the Court does not understand Bennett to allege that he had an implied-in-fact contract with Saint-Gobain. "An implied-in-fact contract results from the nonverbal conduct of the parties." 14 Howard J. Alperin et al., Massachusetts Practice § 7.3 (3d ed.). When one party renders services to another under circumstances where the recipient reasonably ought to have expected to pay for them, an implied-in fact contract may exist. *See id.* None of the facts alleged in the complaint would support such a contract here.

not been unjustly enriched. Count 6 does not state a claim and accordingly will be dismissed.

### 4.    <u>Intentional Interference With Contractual Relations</u>

In Count 17, Bennett alleges intentional interference with contractual relations against Mesher.[12] "To succeed on a claim for unlawful interference with contractual relations, a plaintiff must prove that (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to breach that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means, and (4) the plaintiff was harmed by the defendant's actions." 14C Howard J. Alperin et al., Massachusetts Practice § 20.161 (3d ed.); *accord Wright v. Shriner's Hosp.*, 412 Mass. 469, 476 (1992).

As discussed above, Bennett does not have a contract with Saint-Gobain regarding the severance package; it follows that he cannot state a claim for interference with contractual relations respecting the severance agreement.

Bennett may be able, however, to assert a claim for interference with his at-will employment. Despite the absence of an employment agreement, "even a contract at will vests a valuable contract right which requires protection against unlawful interference." *Scott v. Sulzer Carbomedics, Inc.*, 141 F. Supp. 2d 154, 177 n.78 (D. Mass. 2001) (citing Restatement (Second) of Torts § 766 cmt. 127 g (1977)).

When a plaintiff claims that a supervisor has interfered with the plaintiff's employment relationship, the plaintiff must also prove, in addition to the four elements listed above, actual malice on the part of the supervisor. As the First Circuit has explained:

---

[12] Defendants have not moved to dismiss Count 12, which alleges interference with contractual relations against Feagans.

> [A] defendant-supervisor is entitled to a qualified privilege in an employment-based tortious interference case (and, thus, will not be liable for employment decisions that are within the scope of his supervisory duties). . . .  Massachusetts treats proof of actual malice as a proxy for proof that a supervisor was not acting on the employer's behalf, and deems such proof sufficient to overcome the qualified privilege.  Proof of actual malice requires more than a showing of mere hostility.  For one thing, the plaintiff must prove that malice was the controlling factor in the supervisor's interference.  For another thing, any reasonable inference of malice must be based on probabilities rather than possibilities.  Finally, such an inference requires an affirmative showing that the actions taken by the supervisor were not derived from a desire to advance the employer's legitimate business interests.

*Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 76 -77 (1st Cir. 2001) (internal quotation and citations omitted).  The elements underlying a claim for discrimination or retaliation may support a finding of malice in the context of supervisor liability.  *Id.*

Other than the allegations of discrimination and retaliation, there are no facts pleaded in the complaint to support an inference that Mesher acted out of feelings of personal malice, rather than in the legitimate business interests of Saint-Gobain, in terminating Bennett.  Nevertheless, under *Zimmerman*, a valid claim for unlawful discrimination or unlawful retaliation lends itself to proof of malice in the context of an interference claim.  *Bennett v. City of Holyoke*, 230 F. Supp. 2d 207, 229 -230 (D. Mass. 2002) (citing *Zimmerman*, 262 F.3d at 77).  Because Bennett's claims of aiding and abetting age discrimination and retaliation under Chapter 151B against Mesher still stand, the tortious interference claims against him stand as well.  *See id.*

Mesher suggests nonetheless that Bennett cannot raise a claim for interference with contractual relations against him in particular because, as an officer (Vice President) of Saint-Gobain, Mesher cannot be considered a third party to any contract Bennett may have had with Saint-Gobain.  In

19

support of his position, Mesher relies on the following dictum from the Massachusetts Appeals Court:

> Conceivably, one in the position of chief executive officer . . . might be so closely identified with the corporation itself, and with its policies, that he should not be treated as a third person in relation to corporate contracts, susceptible to charges of tortious interference when he causes the corporation to breach its contractual obligations.

*Schinkel v. Maxi-Holding, Inc.*, 30 Mass. App. Ct. 41, 50 (1991).  The First Circuit has also

recognized the appeal of this principle, writing in *Zimmerman* that "a more nuanced set of rules applies

in a suit against a supervisor who is so closely connected to a corporate employer as to be considered

its alter ego."  262 F.3d at 76 n.4 (citing *Harrison v. Netcentric Corp.*, 433 Mass. 465, 633);

*Schinkel*, 30 Mass. App. Ct. at 50).

Regardless of the abstract validity of the principle asserted, the Court cannot decide on the

basis of the allegations in the complaint alone whether Mesher is so closely associated with Saint-

Gobain that he cannot interfere with its contractual relationships.  In *Schinkel* itself, the court

recognized that "[t]he point . . . should not be considered in any event on the bare allegations of the

complaint."  30 Mass. App. Ct. at 50.  Moreover, the Court notes that the cases it has found where

trial courts cited *Schinkel* on this issue have resolved the matter against the corporate-officer

defendant.  *See Boyle v. Boston Found.*, 788 F. Supp. 627, 630 (D. Mass. 1992) (denying motion to

dismiss interference claim against foundation president/CEO); *McBirney v. Paine Furniture Co.*, 11

Mass. L. Rptr. 123, 1999 WL 1411359, at *10 (Mass. Super. 1999) (denying JNOV on interference

claim against CEO who was also a 65% shareholder).  Under the circumstances, the Court will deny

the motion to dismiss Count 17.

**ORDER**

20

For the reasons stated in the foregoing memorandum, plaintiff has failed to state a claim for which relief can be granted with respect to his claims of individual liability under the ADEA against defendants Feagans and Mesher, breach of contract, breach of implied contract, and promissory estoppel.  Accordingly, defendants' motion to dismiss (Docket No. 6) is GRANTED IN PART, and Counts 5-9, 13, and 14 of plaintiff's complaint are DISMISSED.

**So Ordered.**

/s/ F. Dennis Saylor

F. Dennis Saylor IV
United States District Judge

Dated:  February 1, 2005