## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**WORCESTER, SS.**

**CENTRAL SECTION**
**CIVIL ACTION NO.: 04-40014-FDS**

| | |
|---|---|
| **DAVID BENNETT** | ) |
|   - Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| **SAINT-GOBAIN CORPORATION,** | ) |
| **JOHN R. MESHER, and** | ) |
| **TIMOTHY L. FEAGANS** | ) |
|   - Defendants | ) |

## PLAINTIFF BENNETT'S MEMORANDUM IN SUPPORT OF HIS
## MOTION FOR PARTIAL SUMMARY JUDGMENT

### STATEMENT OF THE CASE

The Plaintiff Bennett ("Bennett") brings this action for age discrimination and retaliation (29 U.S.C. 623 and M.G.L. c. 151B) against the Defendant Saint-Gobain ("Saint Gobain"); aiding and abetting discrimination and retaliation (M.G.L. c. 151B) against the Defendants Feagans and Mesher; and interference with contractual relations against the Defendants Feagans and Mesher.

The thrust of Plaintiff's complaint is that Defendants terminating his employment was discriminatory.

In their answer, Defendants deny the termination was discriminatory. (Defendants' answer ¶s 21-24). Defendants further allege that the reason for termination was ". . . as a result of an investigation, Saint Gobain believed that Plaintiff had sent poems to a female employee."; (Defendants' answer ¶12.); ". . . that Saint-Gobain had retained a forensic document expert and that the expert had

concluded that the Plaintiff's handwriting matched the handwriting on the envelopes delivered to the female employee" (Defendants' Answer, ¶14); that at the termination meeting, the ". . . Defendant Mesher emphasized the seriousness of Plaintiff's actions by pointing out that the Commonwealth of Massachusetts provides criminal penalties for the type of activity of which Plaintiff was being accused . . ." (Defendants' Answer, ¶15); and that the Plaintiff was told the reason for his termination at the October 31, 2002 meeting was because he engaged in ". . . a pattern of harassment of a female employee through anonymous, unwanted written communications, using interoffice mail and other means of delivery, which has caused the employee to be alarmed and distressed. . ." (Defendants' Answer, ¶20).

Bennett now files a motion for partial summary judgment requesting a finding that he did not author any poems to a female employee, and that the Defendants are collaterally estopped from raising authorship as a defense to the discrimination claim.

The basis for issue preclusion is that the issue of authorship already has been litigated between the parties at a hearing before the Massachusetts Division of Employment and Training (DET), where Saint-Gobain presented written opinion dated November 11, 2002 of its handwriting expert[1]. (Bennett Affidavit, Exhibit 2, Hearing Exhibit 15). After full hearing and review of all the evidence, including Saint-Gobain's handwriting expert's report, the DET made an express finding that "VI. The Claimant did not send the poems and letters. He was not stalking or

---

[1] It should be noted that the Forensic Expert's report is dated November 11, eleven days after Bennett's termination on October 31.

otherwise harassing the complaining female employee." (Bennett Affidavit, Exhibit 3, II 6.).

This memorandum is in support of Bennett's motion for partial summary judgment on the issue of authorship.

SUMMARY OF PLAINTIFF BENNETT'S ARGUMENT.

The Defendants are collaterally estopped from raising as an affirmative defense, the issue of authorship, as that issue was the same issue involved at the DET hearing; the issue was fully litigated; there was a binding final judgment with no appeal by either party; and the determination of that issue was essential to the awarding of benefits to Bennett. The Defendants had full opportunity to litigate the issue at the DET hearing. Under Massachusetts Law, issue preclusion is appropriate where there is an identity of issue, a finding adverse to the party against whom it is being asserted, and a judgment by a Court or tribunal of competent jurisdiction. 46 Massachusetts Practice, Sadery, Corso and Harrington, Federal Civil Practice Sec. 9.3, pgs. 176-180.

STATEMENT OF UNDISPUTED MATERIAL FACTS.

1.	Plaintiff Bennett was a senior patent attorney (Plaintiff's Complaint, ¶5) in the Defendant Saint-Gobain's intellectual property department.

2.	On October 31, 2002 Robert Wilk ("Wilk"), at that time the Defendant Saint-Gobain's Director, Business Practices and Compliance Programs, accused the Plaintiff Bennett of sending poems to a female employee. (Defendants' Answer, ¶12).

3.	Wilk then told the Plaintiff Bennett that the Defendant Saint-Gobain had retained a forensic document expert who concluded that the handwriting on the

3

envelopes delivered to the female employee, matched the Plaintiff's. (Defendants' Answer, ¶14).

4.    The Defendant Mesher then met privately with the Plaintiff, telling him that ". . . . the Commonwealth of Massachusetts provides criminal penalties for the type of activity of which Plaintiff was being accused. . . ." (Defendants' Answer, ¶15).

5.    The Defendant Mesher terminated the Plaintiff Bennett. (Bennett Affidavit, ¶3).

6.    After termination, the Plaintiff Bennett filed an application for unemployment benefits with the Massachusetts Division of Employment and Training (DET). (Bennett Affidavit, ¶ 4).

7.    The Defendant Saint-Gobain failed to provide the DET with the requested reasons for termination, and the hearing officer of the DET ruled that the Defendant Saint-Gobain forfeited its right of cross-examination, would be treated as a non-interested party, but would have to answer questions put to it by the hearing officer for the purpose of elucidating the facts related to termination. (Plaintiff Bennett's Affidavit, Exhibit 1, pgs. 12 & 13).

8.    Notwithstanding the above, the Defendant Mesher was given full opportunity to present the Defendant Saint-Gobain's position for discharge stating that there was an investigation of sexual and general harassment, that the results of the investigation were forwarded to a forensic document examiner on October 22, 2002, and based on the results of that analysis, the Defendant Mesher decided he would meet with the Plaintiff Bennett. (Plaintiff Bennett's Affidavit, Exhibit 1, pg. 24).

4

9.     The Defendant Mesher further stated that the forensic handwriting analysis indicated that the handwriting on the envelopes was that of the Plaintiff Bennett. (Plaintiff Bennett's Affidavit, Exhibit 1, pg. 26).

10.    In addition to the Defendants' having full opportunity to verbally present their case at the hearing, the Defendants also presented report dated November 11, 2002 from the Defendant Saint Gobain's forensic document examiner. (Plaintiff Bennett's Affidavit, Exhibit 2, DET Hearing Exhibit 15).

11.    The hearing examiner noted that the Defendant Mesher was "being somewhat disingenuous or evasive". (Plaintiff Bennett's Affidavit, Exhibit 1, pg. 40).   After the hearing, the hearing examiner made findings of fact (Plaintiff Bennett's Affidavit, Exhibit 3), in part, as follows:

- "The claimant did not quit his job.  He did not resign in lieu of being discharged."

- "The employer discharged the claimant because the employer believed he was responsible for sending a series of anonymous poems to a young female employee who became upset at this unsolicited and unwanted attention.  The employer considered the perpetrator, who it believed to be the claimant, guilty of generalized harassment and stalking, not necessarily sexual harassment."

- "The female employee involved did not accuse the claimant.  She made a report of a series of incidents to the employer.  It was the employer who drew a connection between the claimant and the letters/poems."

- "When the employer confronted the claimant with the results of its deductive reasoning, the claimant denied the allegations.  The employer's evidence was

5

the opinion of a handwriting analyst, the English spelling of some words (the claimant is English), and finding a significant number of poems in the claimants office that were different than the ones sent to the complainant."

- "The claimant did not send the poems and letters. He was not stalking or otherwise harassing the complaining female employee."

- "Prior to this accusation being made, the claimant had not been warned, cautioned or disciplined due to any similar or dissimilar behavior."

- "The claimant had never been told that his job was in danger for any reason."

- "It is unclear whether or not the employer has a policy regarding general non-sexual harassment that is distributed to employees or is posted."

- "The employer does consider it its obligation to protect its employees and provide them with a safe, non-hostile working environment. The employer also considers it the employer's responsibility to prohibit criminal activity in the work place. The employer understands that harassment such as the harassment described above is a violation of the laws of Massachusetts."

    12.    The hearing examiner's conclusions and reasoning, (Plaintiff Bennett's Affidavit, Exhibit 3), were as follows:

- "Both parties participated in the telephone hearing. The employer participated as a witness only. The employer returned Form 1062 without a separation reason. Although the respective testimony diverged in certain particulars, it was consistent with respect to the above facts, and therefore no credibility assessments are required."

- "The claimant did not quit or abandon his job. This was a separation that was initiated by the employer. Whether the claimant is entitled to benefits will therefore be determined in accord with the provisions of Section 25(e)(2) of Chapter 151A, which governs discharges. Section 25 (e)(1) is not applicable in this case."

- "Under Section 25 (e)(2), the employer bears the burden of proof. The employer must provide substantial and credible evidence which supports a conclusion that the claimant was discharged due either to, (a) a knowing violation of reasonable and uniformly enforced rule or policy of the employer, and that the violation was not the result of the claimant's incompetence, or (b) deliberate misconduct in willful disregard of the employer's interest."

- "It is unclear whether or not the claimant was discharged for violation of a rule or policy. The employer suggested that he might have been, but did not provide a copy of the rule. To the extent that such a rule might exist, the evidence as to its precise provisions was too vague to permit an analysis under the rule/policy test of Section 25 (e)(2)."

- "The discharge was not proven by substantial and credible evidence to have been due to a knowing violation of reasonable and uniformly enforced rule or policy of the employer within the meaning of Section 25 (e)(2)."

- "There is also no proof of deliberate misconduct. Indeed, given the facts there is no evidence of misconduct of any kind. The claimant simply did not do anything. The employer may have suspected him of doing what was alleged, but the employer had no proof. Whatever evidence the employer did have was strictly circumstantial."

- "The employer did not meet its burden of proof.  The claimant is not subject to disqualification and he is entitled to benefits."

## ARGUMENT

### STANDARD FOR SUMMARY JUDGMENT.

A party is entitled to summary judgment if there are no genuine issues as to any material fact and that party is entitled to judgment as a matter of law. Summary judgment may be entered on the issue of liability alone.  (Fed. R. Civ. P. 56 (c)).

The moving party bears the burden of demonstrating the absence of material fact.  (Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 SPCT. 2548, 2552) 1986. The burden then shifts to the nonmoving party to ". . . set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56 (e), and Gentile v. John Hancock Mut. Life Ins. Co., 951 F. Supp. 284, 287 (D. Mass. 1997).

### ISSUE PRECLUSION

Federal Courts are required to give preclusive effect to issues determined in prior litigation, to the same extent as would be given in the laws of the state where the prior proceedings were conducted.  (46 Massachusetts Practice Savery, Corso & Harrington, Fed. R. Civ. P. Sec. 9.2, p. 176) "The doctrine of collateral estoppel does not require strict mutuality of parties, rather, the doctrine merely requires that the party against whom it is to apply had a 'full and fair opportunity' to litigate the issue.  Thus both defensive and offensive nonmutual collateral are committed." *Id* p. 179.  Under Massachusetts law, issue preclusion or collateral estoppel is appropriate where there is an identity of issue, a finding adverse to the party

8

against whom it is being asserted, and a judgment by Court or tribunal of competent jurisdiction. *Id*, p. 179.

The rule of issue preclusion under the Restatement (Second) Judgments (1982), Sec. 27, p. 250 is "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or on a different claim."

Keystone Shipping Company v. New England Power Company, 109 F.3d 46 (1stCir. 1997) requires Federal District Courts to give preclusive effect to judgments, whether by state court or administrative agency. Massachusetts Courts apply the doctrine of issue preclusion in a tradition manner, barring relitigation of any factual or legal issue which was actually decided in previous litigation between the parties, whether on the same or a different claim. "When the parties in a subsequent action are the same as those in a prior one, a party seeking to invoke the doctrine of issue preclusion needs to establish four essential elements: '(1.) The issue sought to be precluded must be the same as that involved in the prior litigation; (2.) The issue must have been actually litigated; (3.) The issue must have been determined by a valid and binding final judgment and (4.) The determination of the issue must have been essential to the judgment.'" Citations Omitted. *Id*, p. 51.

An issue may be actually litigated and resolved even if it is not explicitly decided as long as it is logically necessary to the prior decision, which must be final. *Id*, 52. Under Massachusetts law, issue preclusion or collateral estoppel is appropriate where there is an identity of issues, and a finding adverse to the party

9

against whom it is asserted, even though that prior judgment is by a tribunal. Kyricopoulos v. Town of Orleans, 967 F. 2d 14, 16 (1st Cir. 1992). Accordingly, a determination before by Mass Commission of Discrimination precludes relitigating that same issue in a civil suit even though only the employer, not the individual employees were a party to that MCAD proceeding. *Id*, p. 17; see Brunson v. Wall, 405 Mass 446, 450-451 (1989).

Although the Defendant Saint-Gobain was rendered a non-party at the DET hearing as a result of its refusal to provide the required reasons for termination, it had full opportunity to present its case, including the report of its forensic document examiner on the issue of authorship of writings to a female employee. Although not technically a party, Saint-Gobain had a fair opportunity to litigate the issue of authorship fully, and therefore is bound by the DET decision which it chose not to appeal. Kyricopoulos, *supra*, p. 16.

Massachusetts holds that the doctrine of collateral estoppel may be applied to administrative agency decisions so long as the tribunal rendering the judgment has the authority to adjudicate the dispute. Alba v. Raytheon Company, 441 Mass. 836, 841 (2004), holding that collateral estoppel barred a discrimination suit for failure to accommodate, where that issue previously had been determined in an earlier workman's compensation case.

A party at a DET hearing is collaterally estopped from relitigating a willful misconduct issue previously litigated between the parties in a prior hearing to remove a clerk magistrate. Commission of the Department of Employment and Training v. Duggan, 428 Mass 138 (1998). "It is well established that is certain circumstances, collateral estoppel may be used defensively, even if the parties in

10

the two adjudications are not identical. *Id*, p. 141. See Fay v. Federal Nat'l Mtge. Ass'n, 419 Mass 782, 789-790 (1995); and Restatement (Second) Judgments, Sec. 29 (1982).

Issue preclusion also precludes relitigating before the Department of Industrial Accidents an issue previously determined by an officer for the Civil Service Commission. Green v. Town of Brookline, 53 Mass. App. Ct. 120 (2001). "If the conditions for preclusion are otherwise met, 'a final order of an administrative agency in an adjudicatory proceeding. . . precludes relitigation of the same issues between the same parties, just as would a final judgment of a Court of competent jurisdiction' " Tuper v. North Adams Ambulance Serv., Inc., 428 Mass, 132, 135 (1998).

Tuper involved an employee attempting to use collateral estoppel against a former employer in a wrongful termination case, claiming the issue had previously been litigated before the DET. Although the Court held that collateral estoppel was not appropriate because the issues before the DET were not identical, the Court went on to state: "Before a party will be precluded from relitigating an issue, a Court must determine that (1) There was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privy with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication. *Id.*, p. 134. In Tupper, the plaintiff attempted to advance a defamation action against the employer. In holding that the issues were not identical and therefore not subject to issue preclusion, the Court noted General Laws Chapter 151A, Section 46,

expressly precludes using DET information in a defamation action against an employer.  *Id.*, p. 137.

In the instant case, Bennett makes no claim for defamation.  His claim is for discrimination.  The Defendants raise the affirmative defense that the reason for his termination was not discrimination, alleging authorship of certain writings to a female employee.  The authorship of those writings was expressly determined at the DET hearing between the parties where the Defendants had a full opportunity to litigate the authorship issue, presenting as an exhibit the full report of its forensic document examiner.    After a full hearing, including consideration of Defendant's forensic document examiner's report, the hearing officer found that the Bennett did not author the subject documents.

Accordingly, issue preclusion requires a find by this Court that Bennett did not author the writings to a female employee, precluding Defendants from raising authorship as an affirmative defense.

## CONCLUSION.

For the above reasons, the Plaintiff Bennett respectfully requests that his Motion for Partial Summary Judgment be allowed.

Respectfully submitted,
DAVID BENNETT,
By his attorney,

Michael J. Michaeles, Esquire
390 Main Street, Suite 1000
Worcester, MA 01608
Phone: (508) 791-8181
BBO#: 344880