IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAVID BENNETT,                          :
                                        :
                Plaintiff,              :
                                        :        CIVIL ACTION
        v.                              :
                                        :        NO.  04-CV-40014-FDS
SAINT-GOBAIN CORPORATION, JOHN R.       :
MESHER, AND TIMOTHY L. FEAGANS,         :
                                        :
                Defendants.             :

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS SAINT-GOBAIN CORPORATION, JOHN MESHER AND TIMOTHY FEAGANS FOR SUMMARY JUDGMENT

Defendants Saint-Gobain Corporation ("Saint-Gobain" or "Company"), John

Mesher ("Mesher") and Timothy Feagans ("Feagans") (collectively "Defendants"), by their

undersigned counsel, submit this memorandum of law in support of their Motion for Summary

Judgment against plaintiff David Bennett ("Bennett" or "Plaintiff") on both his federal and state

law claims.

## I.    INTRODUCTION[1]

David Bennett was an attorney who worked in the intellectual property group of

the Company's Law Department.  On October 31, 2002, Bennett's employment was terminated

for gross misconduct.  The triggering event was the General Counsel's good faith belief that

Bennett had engaged in a pattern of harassment of a female employee through anonymous,

unwanted written communications, using interoffice mail and other means of delivery, which had

---

[1]   The following presents a very brief summary of the factual background to this case.
On this date, Defendants also have filed with the Court a Statement of Undisputed Facts Pursuant
to Local Rule 56.1 ("56.1 Statement").

caused the employee to be alarmed and distressed to the point that she felt she was being stalked. The decision to terminate Bennett was made by the General Counsel of Saint-Gobain, defendant John Mesher, after Mesher was advised of the results of an independent investigation of the harassment complaint by the head of the Company's security department, including the results of an evaluation of the writings by an outside forensic document examiner, and after Mesher conferred with the human resources manager responsible for the Law Department.

The gravaman of Bennett's Complaint is that the stated reasons for his termination are a pretext for age discrimination and retaliation against him for lodging an internal age discrimination grievance against his immediate supervisor, defendant Timothy Feagans, on June 6, 2001 – almost 17 months before Bennett was terminated. The termination is alleged to be a violation of the federal Age Discrimination in Employment Act ("ADEA"), Massachusetts General Laws Chapter 151B ("Chapter 151B") and Massachusetts common law. As explained in more detail below, the undisputed facts establish that age was not a factor in the decision to discharge Bennett. Indeed, just months before his termination, Bennett had received a favorable performance evaluation written by Feagans and approved by Mesher – an evaluation which was better than the evaluation he received before his June 2001 grievance. In addition, just weeks before the investigation of the harassment claim, Mesher recommended Bennett for an exceptional stock option award for his fine performance. These facts, among others, also establish that the termination was not a pretext for discrimination or retaliation.

For the reasons set forth below, Defendants request that the Court enter summary judgment in their favor on all counts of Plaintiff's Complaint.

## II.   **ARGUMENT**

### A.   **Standard of Review.**

Under Federal Rule of Civil Procedure 56(c), summary judgment is required where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To avoid summary judgment, the plaintiff must do more than show "the mere existence of *some* alleged factual dispute between the parties . . . [T]he requirement is that there be no *genuine* issue of *material* fact." Menard v. First Sec. Servs. Corp., 848 F.2d 281, 284-85 (1st Cir. 1988) (citations omitted; emphasis in the original). "Genuine issues of material fact are not stuff of an opposing party's dreams." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). Although all justifiable inferences are to be drawn in the non-moving party's favor, "conclusory allegations, improbable inferences and unsupported speculation" do not create a material factual dispute sufficient to defeat entry of summary judgment. Smith v. Stratus Computer, Inc., 40 F.3d 11, 13 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995).

To overcome a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided [by Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Definite, competent evidence must be presented. Mesnick, 950 F.2d at 822. If the opposing evidence is "merely colorable or is not significantly probative," summary judgment should be granted. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)). Under this standard, summary judgment should be entered in favor of Defendants on all counts of Plaintiff's Complaint.

**B.    Summary Judgment Should be Entered on Counts 1, 3, 10 and 15 of the
Complaint For Age Discrimination Under Federal and State Law.**

Summary judgment should be granted on the four counts alleging that Bennett
was terminated because of his age.  In ADEA cases and in cases involving allegations of age
discrimination under Chapter 151B, courts apply the McDonnell Douglas burden shifting scheme
for the presentation of evidence.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973);[2]
Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003); Gu v. Boston Police Dep't.,
312 F.3d 6, 11 (1st Cir. 2002); Wallace v. O.C. Tanner Recognition Co., 299 F.3d 96, 100 & n.4
(1st Cir. 2002); Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 39-40 & n.11, 825 N.E.2d 522,
530 (2005).  First, the plaintiff must set forth the following elements to establish a *prima facie*
case of age discrimination: (1) he was a member of the protected class, *i.e.,* was 40 years of age
or older; (2) his work was sufficient to meet his employer's legitimate expectations; (3) he
suffered an adverse employment action; and (4) the employer sought a replacement with roughly
equivalent job qualifications, thus revealing a continued need for the same services and skills.
Benoit, 331 F.3d at 173; Mesnick, 950 F.2d at 823.

Once a *prima facie* case is established, the burden shifts to the defendant to
articulate a legitimate, non-discriminatory business reason for its action.  Benoit, 331 F.3d at
174; Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 16, n.8 (1st Cir. 2001), cert. denied, 534
U.S. 1127 (2002); Mesnick, 950 F.2d at 823; Sullivan, 444 Mass. at 51, 825 N.E.2d at 538.
Although the employer has the burden of stating a legitimate reason for its actions, "the ultimate
burden of persuading the trier of fact that the defendant intentionally discriminated against the

---

[2]  McDonnell Douglas involved a claim of race discrimination under Title VII of the
Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq.  The burden-shifting analysis has since been
applied to all types of discrimination claims, including, as noted above, claims of age
discrimination.

plaintiff remains at all times with the plaintiff." <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450

U.S. 248, 253 (1981); <u>Benoit</u>, 331 F.3d at 174; <u>Baralt</u>, 251 F.3d at 16, n.8; <u>Mesnick</u>, 950 F.2d at

823-24; <u>Sullivan</u>, 444 Mass. at 55, 825 N.E.2d at 540.

   To meet this ultimate burden, the plaintiff must produce evidence "to support two

additional findings: (1) that the employer's articulated reason for the job action is a pretext; and

(2) that the true reason is discriminatory." <u>Smith</u>, 40 F.3d at 16. In making this determination, a

court must focus on the "perception of the decisionmaker." <u>Mesnick</u>, 950 F.2d at 824. As the

First Circuit explained in <u>Mesnick</u>:

> [The focus must be on] whether the employer believed its stated
> reason to be credible. . . It is not enough for a plaintiff merely to
> impugn the veracity of the employer's justification; he must
> "elucidate specific facts which would enable a jury to find that the
> reason given is not only a sham, but a sham intended to cover up
> the employer's real motive: age discrimination."

<u>Mesnick</u>, 950 F.2d at 824 (citations omitted). <u>Accord</u> <u>Dea v. Look</u>, 810 F.2d 12, 15 (1st Cir.

1987) (affirming summary judgment in favor of the employer on plaintiff's age discrimination

claim, the Court stated where, "at best all that [a plaintiff can] present [is] evidence casting doubt

on the correctness of the employer's proffered reason for the discharge," that will be

"insufficient to prove pretext or discriminatory intent").

   **1.**   **Count 10 of the Complaint, Alleging Age Discrimination Against**
      **Feagans Under Chapter 151B, Should Be Dismissed Because Feagans**
      <u>**Was Not Involved in the Decision to Terminate Plaintiff.**</u>

   In the present case, the record is bare of any evidence that Feagans in any way

participated in the decision to terminate Bennett. He therefore cannot be held liable under

Chapter 151B. That statute makes it unlawful for "any person, whether an employer or an

employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden

under th[at] chapter or to attempt to do so." MASS. GEN. LAWS ch. 151B § 4(5).[3] Thus, to be liable as an individual under Chapter 151B, the person must have "undertaken some act wholly individual and distinct from, or in furtherance of, the employer's discriminatory act." Ahanon v. Cerebral Palsy of Mass., No. 03-02575, 2005 Mass. Super. LEXIS 27, at *17-*18 (Mass. Super. Ct. 2005) (citations omitted).  In addition, to establish individual liability under Chapter 151B, the plaintiff must show that the individual defendant "intended to assist in intentional conduct that is in violation of [the] statute" and the individual defendant "must have known of his or her substantial supporting role in an unlawful enterprise, and share the mental state of the principal violator." Id. at *18 (citing Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 481, 631 N.E.2d 985 (1994)).  See Ligenza v. Genesis Health Ventures, 995 F. Supp. 226, 233 (D. Mass. 1998) (granting summary judgment in favor of individual defendants for retaliation and aiding and abetting harassment under Chapter 151B because the plaintiff failed to present any genuine or material evidence that the defendant supervisors were aware of the alleged harassment).  Where the alleged incident of discrimination does not involve the individual defendant, there is no liability.  Ahanon, 2005 Mass. Super. LEXIS, at *18.

That is the very situation here.  Indeed, there is uncontroverted testimony that Feagans was not even aware of the decision to terminate Bennett until after the decision had been made and implemented.  (56.1 Statement, ¶ 54.)  Thus, Bennett cannot establish that Feagans aided or abetted discrimination under Chapter 151B, and Count 10 of Plaintiff's Complaint should be dismissed.

_____

[3]  Under Chapter 151B, a claim must be brought within six months of the alleged discriminatory event.  MASS. GEN. LAWS ch. 151B § 5.  Thus, any adverse employment action aided by Feagans must have occurred within the six-month period prior to February 21, 2003, when Plaintiff filed his complaint with the Massachusetts Commission Against Discrimination. The only action within the August 2002 to February 2003 timeframe challenged by Plaintiff is his termination.  (56.1 Statement, ¶ 31.)

2.    **Even Assuming that Plaintiff Can Establish a *Prima Facie* Case of Discrimination, Counts 1, 3, 10 and 15 of the Complaint Should be Dismissed Because Defendants Terminated Plaintiff for a Legitimate Reason and There is No Evidence of Pretext.**

Assuming for purposes of this Motion only that Plaintiff can establish a *prima facie* case of age discrimination with regard to his termination,[4] Saint-Gobain has articulated a legitimate non-discriminatory reason for the decision to terminate Bennett's employment. As explained in detail in Defendants' 56.1 Statement, Saint-Gobain terminated Bennett for gross misconduct. The triggering event was defendant Mesher's good faith belief that Bennett had engaged in a pattern of harassment of Diana Henchey ("Henchey") through anonymous, unwanted written communications, using interoffice mail and other means of delivery, which had caused Henchey to conclude that she was being stalked. (56.1 Statement, ¶¶ 31-35, 45) Mesher considered the following factors in reaching that good faith belief:

- the complaint initiated by Henchey – without prompting or suggestion by anyone – regarding poems she received on her car windshield and via interoffice mail;

- the documentation by Sonia Simonian ("Simonian") of her interviews with Henchey, in which Henchey told Simonian that receipt of the poems made her uncomfortable, that she felt like she was being stalked and that she wanted the harassment to stop;

- the suggestion by Henchey that the perpetrator was an individual later identified as Bennett;

---

[4] Bennett was over 40, was providing legal services in a more than satisfactory manner and was terminated. Initially, portions of his work were reassigned to each of the three remaining attorneys (ages 34 (Crosby), 48 (Porter) and 61 (Ulbrich)), who assumed responsibility for the work that had been performed by Bennett in addition to the work they had already been performing. (56.1 Statement, ¶ 55.) The oldest remaining attorney, Ulbrich, elected to retire effective February 2003, and, eventually, the work in the patent group was redistributed. (56.1 Statement, ¶ 55.) Crosby and two newly hired attorneys, one under 40 and one over 40, each took responsibility for some of the work that had been performed by Bennett, in addition to the other responsibilities assigned to them. (56.1 Statement, ¶¶ 55-56.)

- the results of a search of Bennett's office, which revealed many writings in rhyme;

- an examination of the writings, themselves, including the British spelling of certain words (Bennett is British);

- the conclusion drawn by an independent forensic document expert, Jean Joan Berrie, BCFDE, CDE, after a thorough examination of the documents, that it was "highly probable" that Bennett had addressed the interoffice envelopes which were sent to Henchey and contained the poems;

- an analysis of the Massachusetts statute on criminal harassment and a conclusion that the complained of conduct would violate Massachusetts law;

- the results of the interview with Bennett conducted by the Company's security manager, Robert Wilk ("Wilk"); and

- Wilk's impressions that Bennett was not credible because Bennett told Wilk that he did not write poetry – and yet, poetry which Bennett later admitted he wrote was found in Bennett's office.

(56.1 Statement, ¶¶ 31-46, 52.)

Two other factors impacted the decision: (1) the content of a poem which Bennett admitted he wrote, found during the search of Bennett's office, which was highly critical of his immediate supervisor, Feagans, and his ultimate supervisor(s), including Mesher and the CEO of Saint-Gobain; and (2) Bennett's pattern of rude and unprofessional behavior directed at the General Counsel's office and other members of the corporate staff, most recently demonstrated just weeks before the termination decision was made.  (56.1 Statement, ¶¶ 47-52.)

Summary judgment should be granted in favor of Defendants because the record contains no evidence that Saint-Gobain's articulated reasons are false and/or that the Company was motivated by discrimination in deciding to terminate Bennett's employment.[5]

   a. Plaintiff's denial that he engaged in the harassment does not establish pretext.

Plaintiff may argue that Saint-Gobain's articulated legitimate reason should be disbelieved because, according to Bennett, he did not send the harassing poetry to Henchey. That argument misses the mark. "[E]vidence contesting the factual underpinnings of the reason for the discharge proffered by the employer is insufficient, without more, to present a jury question." Dea, 810 F.2d at 15. The issue before the Court is not a determination of Bennett's guilt or innocence. Rather, as noted above, the issue to be decided is whether Saint-Gobain believed in good faith that Bennett sent the poems to Henchey. See Mesnick, 950 F.2d at 824 (quoting Gray v. New England Tel. and Tel. Co., 792 F.2d 251, 256 (1st Cir. 1986)).

In similar situations, the First Circuit has held that a plaintiff's attempt to demonstrate a factual inaccuracy in an employer's articulated reason for termination or to challenge the completeness of an employer's investigation into wrongdoing, without more, is insufficient to establish that the reason was pretextual. For example, in Ronda-Perez v. Banco Bilbao Vizcaya Aregentaira, 404 F.3d 42, 43-44 (1st Cir. 2005), a bank employee complained

---

[5] There is some disagreement in the district courts in Massachusetts on whether the standard for pretext utilized by the First Circuit for analyzing claims under federal law also applies to Chapter 151B claims. Some courts have held that Chapter 151B only requires that the plaintiff submit substantial evidence that the proffered reason was false ("pretext only"), but not provide evidence that the actual motive was age discrimination ("pretext plus"). See Ligenza, 995 F. Supp. at 233; Galdauckas v. Interstate Hotels Corp., 901 F. Supp. 454, 464 (D. Mass. 1995). However, the First Circuit cases cited in the text, above, including Benoit, Wallace, Menard and Gu, specifically applied the federal standard to the state claims under Chapter 151B and control here. See discussion in section II.B., above. In any event, as the following discussion shows, Bennett cannot establish pretext under either standard.

that the plaintiff, a branch manager, had violated the bank's policies regarding sexual harassment and confidentiality. Id. Acting on that employee complaint, the employer conducted an investigation which substantiated the employee's accusations. Id. The bank then terminated the plaintiff's employment. Id. In response to the employer's motion for summary judgment on his age discrimination claim, the plaintiff argued that the employer's stated reason for his termination was pretextual based upon evidence that he had not actually violated the company polices of which he was accused. Id. at 45-46. As the First Circuit explained, however, such evidence was not sufficient to overcome the employer's motion because, "the question is not whether plaintiff's or his fellow employees' version [of events] is the true one, but whether [the investigator] and his superiors believed what he had been told by those he interviewed [during his investigation]." Id. at 45. Pretext means more than a business error; it means "deceit used to cover one's tracks." Id. (citations omitted).

In affirming the trial court's entry of summary judgment, the First Circuit in Ronda-Perez specifically rejected plaintiff's attempts to discredit the employer's investigation by offering affidavits of "disinterested witnesses" who contradicted evidence of the plaintiff's alleged breaches of confidentiality. Id. at 46. The First Circuit dismissed the affidavits because they were signed after suit had been brought – a year after the investigator conducted his investigation and recommended that the plaintiff be terminated. Id. The court held that, because the investigator was not aware of the information contained in those affidavits at the time he conducted his investigation, "[t]his evidence, therefore cannot reflect on [the investigator]'s honest belief at the time he made his report." Id.

Similarly, in Morgan v. Massachusetts Gen. Hosp., 901 F.2d 186, 190 (1st Cir. 1990), the plaintiff was terminated because, "in a work related dispute, he struck and seriously injured a co-worker." The plaintiff alleged race discrimination, claiming that the hospital's

-10-

articulated reason was pretextual because he was provoked by his co-worker, and his actions

therefore were justified. Id. at 191. In affirming summary judgment in favor of the employer,

the First Circuit stated that it is not:

> enough for [plaintiff] to present evidence suggesting that the
> employer wrongly concluded that [plaintiff] struck the co-worker
> without provocation or justification. As the district court so
> dexterously explained, "evidence contesting factual underpinnings
> of the reasons for the [employment decision] proffered by the
> employer is insufficient, without more, to present a jury question."
> See Dea v. Look, 810 F.2d 12, 15 (1st Cir. 1987).

Id. Accord Wallace, 299 F.3d at 101-02 (affirming summary judgment because plaintiff failed to

generate a genuine dispute about the honesty of the defendant company's belief that he was

neglecting his duties); Menard, 848 F.2d at 287 (affirming summary judgment in favor of the

defendant employer and holding that "even assuming it could be shown that [the employer] was

wrong to blame" plaintiff and terminate his employment as the result of two customer

complaints, "this would be insufficient to prove pretext or discriminatory intent"). See also

Baralt, 251 F.3d at 18 (evidence insufficient to establish pretext where, for example, the

investigation leading to the termination was triggered by co-workers, not the managers who

carried out the terminations).

        When faced with similar factual scenarios, Massachusetts state courts also have

found that a plaintiff cannot overcome a motion for summary judgment brought on a claim for

discrimination under Chapter 151B merely by questioning the accuracy of the employer's

business decision because the court's "task is not to evaluate the soundness of [the employer]'s

decision making, but to ensure it does not mask discriminatory animus." Sullivan, 444 Mass. at

56, 825 N.E.2d at 541. The Supreme Judicial Court's decision in Sullivan provides a most recent

example. There, the employer discharged the plaintiff, an in-house attorney, as part of a

reduction in force. Plaintiff claimed that the discharge constituted age and gender discrimination

in violation of Chapter 151B.  The employer stated that the reasons it selected the plaintiff for

termination included her mishandling of an environmental litigation matter and her inadequate

"human relations skills" when dealing with the office clerical staff.  Id. at 56-57, 825 N.E.2d at

542.

In affirming summary judgment in favor of the employer, the Sullivan court

rejected two arguments Bennett is likely to make here.  First, the Court ruled that the employer's

reliance on allegedly subjective and unreliable assessments in the selection process did not

constitute evidence of pretext because "[c]ourts may not sit as super personnel departments,

assessing the merits – or even the rationality – of employers' nondiscriminatory business

decisions."  Id. at 56, 825 N.E.2d at 541 (quoting Mesnick, 950 F.2d at 825).  Second, the Court

rejected plaintiff's arguments that the employer's opinions were incorrect, explaining, "even

were we to conclude that Sullivan neither mishandled the environmental case nor was

responsible for the difficulties that arose with her support staff, these facts do not establish that

Liberty's stated reasons for terminating her were pretextual."  Id.  See also Lopez v. Target

Corp., No. 03-02945, 2005 Mass. Super. LEXIS 321, at *6-*7 (June 9, 2005) ("Chapter 151B

'does not grant relief to a plaintiff who has been discharged unfairly'"; while a plaintiff's denial

of wrongdoing "can create an issue of fact as to whether [that incident] occurred, it is

insignificant for purposes of showing pretext").

Thus, even if Bennett disagrees with Mesher's decision, questions the correctness

of his conclusions, disputes the results of the forensic document examiner or challenges the

investigation performed by Saint-Gobain, that is not sufficient to present a jury question.  There

is no evidence in the record to raise a jury question about the good faith of Mesher's belief that

Bennett sent the harassing poems to Diana Henchey.  Likewise, there is no evidence to dispute

that Bennett's misconduct in writing the offensive poem directed toward Mesher and other high-

-12-

ranking Company managers, and Bennett's continued improper and disrespectful communications to others at the Company, were of great concern to Mesher and factored into the termination decision. As a result, there is no evidence that the stated reasons for the decision to terminate Bennett are pretextual.

> b.    Stray remarks allegedly made by Feagans do not establish pretext.

Plaintiff also may attempt to show pretext by arguing that an age-related remark allegedly made by Feagans on two occasions is evidence of age-related animus. Bennett testified at his deposition that a co-worker, Mary Porter ("Porter"), told Bennett that, on two occasions, Feagans had expressed to Porter a desire to terminate older workers in the Intellectual Property Law Department. Assuming for purposes of this Motion only that these comments actually were made, they are not evidence of discriminatory animus, and they do not constitute sufficient evidence for Plaintiff to defeat summary judgment.[6]

First, because Bennett testified regarding a statement made to him by Porter about comments allegedly made by Feagans, Bennett's testimony constitutes multiple hearsay. Such evidence is inadmissible and "cannot be taken into account for purposes of the summary judgment calculus." Weston-Smith v. Cooley Dickinson Hosp., 153 F. Supp. 2d 62, 69 (D. Mass. 2001), aff'd, 282 F.3d 60 (1st Cir. 2002) (quoting Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 615 (1st Cir. 2000)). Second, even if the comments did constitute admissible evidence, Feagans played no role in the decision to terminate Bennett. Indeed, Feagans learned about Bennett's termination only after the termination decision had been made and implemented. Moreover, the comments are alleged to have been made sometime prior to June 6, 2001, at least 17 months before Bennett's termination. As a result, the comments

---

[6] Feagans denies that he made these comments. (56.1 Statement, ¶ 10.) However, for purposes of this Motion only, Defendants will not contest that they were made.

Plaintiff attributes to Feagans are no more than stray remarks that are not probative of discriminatory intent.

The First Circuit has held that "'statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself' normally are insufficient to prove [an] employer's discriminatory animus." Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 13 (1st Cir. 1998) (quoting Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 6 n.8 (1st Cir. 1998)); see also Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir. 1990) ("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment case."). Because Feagans was not in any way involved in the decision to terminate Bennett's employment, there is nothing about the alleged comments by Feagans from which a reasonable factfinder could infer that Saint-Gobain discriminated against Bennett because of his age and that the "articulated reason for the job action is a pretext." See Smith, 40 F.3d at 16. Moreover, there is absolutely no evidence that Mesher made any comments which reflect age-related animus on Mesher's part. (56.1 Statement, ¶ 11.) Indeed, Mesher himself was one month shy of 50 years of age when he made the decision to terminate Bennett.

> c.     Events such as the outsourcing of Saint-Gobain's trademark function and the proposed relocation of the Law Department to Valley Forge similarly do not establish pretext.

Bennett suggested at his deposition that events such as the outsourcing of Saint-Gobain's trademark function – which resulted in the termination from employment of Otto Lies and Donna Neylon (both over 40) – and the proposed relocation of Worcester personnel to Valley Forge also were evidence of age discrimination. These arguments are simply red herrings which in no way establish pretext.[7]

---

[7] The outsourcing decision is not ripe for consideration in this case. It was made in December 2001, well before the 300-day limitations period applicable to Bennett's federal claim,

(continued...)

The decision to outsource the trademark function was made by Mesher. (56.1 Statement, ¶ 24.) Mesher determined that having the work done by an outside law firm was more efficient and cost-effective than having the work done in-house by a paralegal. (56.1 Statement, ¶ 21.) He decided that an outside law firm also would be better able to provide a broader range of trademark legal services at lower fixed costs. (56.1 Statement, ¶ 21.) At the same time, Mesher decided that he could reduce the Law Department's headcount. (56.1 Statement, ¶ 21.) To this day, the trademark work continues to be outsourced to a Philadelphia law firm. (56.1 Statement, ¶ 25.) There is no evidence that these reasons for Mesher's decision were untrue or otherwise a pretext for age discrimination. Likewise, there is no evidence that this decision had anything to do with Bennett. Once again, it is abundantly clear from the evidence that Feagans played no role in making this decision.

The decision to relocate the Worcester-based members of the Law Department to Valley Forge also was made by Mesher alone. (56.1 Statement, ¶ 26.) Bennett has suggested that the relocation was proposed by Mesher because Mesher thought that the older members of the Department would resign their employment rather than move. However, there is no basis for that suggestion. First, older members of the Law Department, including Bennett and Ulbrich, seriously considered the proposal and went on a trip to Valley Forge to examine the office and available housing. (56.1 Statement, ¶ 28.) Yet, Feagans – who is substantially younger than Bennett – had determined, at the time he learned about the move, that he would not relocate to Pennsylvania. (56.1 Statement, ¶ 27.) Mesher knew of Feagans' position regarding the

---

(continued...)

(April 2002) (29 U.S.C. § 626(d) (2004)), and even earlier in comparison to the six-month period applicable to Bennett's claims under Chapter 151B (August 2002) (MASS. GEN. LAWS ch. 151B § 5). (56.1 Statement, ¶ 21.) However, for purposes of this Motion only, Defendants assume the facts relating to this decision would constitute admissible background evidence.

relocation before he made the general announcement to the rest of the Law Department, thereby negating any suggestion that Mesher's motivation in making the move was to retain younger attorneys or to encourage the resignation of older attorneys. (56.1 Statement, ¶ 27.) Second, Mesher revoked that decision, and the proposed move never took place, because the business clients disagreed with Mesher's judgment that having all of the lawyers in the headquarters office in Valley Forge would improve the legal services the attorneys provided. (56.1 Statement, ¶¶ 29-30.)

Thus, Plaintiff is left with two decisions made by Mesher with which he disagrees. However, there is no evidence that either of those decisions was made for age-based reasons. To the contrary, they were made based on Mesher's good faith belief that they would result in improved services provided by the Law Department at a lower cost.[8] As was the case with respect to his termination, Bennett's disagreement with these decisions is not sufficient to create evidence of pretext for age discrimination.

For all of these reasons, there is no evidence of pretext to contest the legitimate reason established for Bennett's termination. Therefore, summary judgment should be granted in favor of Defendants on Bennett's age discrimination claims in Counts 1, 3, 10 and 15 of the Complaint, under the ADEA and Chapter 151B.

### C.    Summary Judgment Should Be Entered on Counts 2, 4, 11 and 16 for Retaliation under State and Federal Law.

Just as Plaintiff is unable to establish his claims for age discrimination under the ADEA and Chapter 151B, Plaintiff is similarly unable to establish his claims of retaliation under those same statutes. To establish a claim of retaliation under either the ADEA or Chapter 151B,

---

[8]  Indeed, Mesher's record of hiring and promoting older workers dispels any assertion that age was a consideration in any employment-related decisions Mesher made. (56.1 Statement, ¶6.)

a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse

employment action; and (3) a causal connection existed between the protected activity and the

adverse employment action. <u>Sullivan v. Raytheon Disability Trust</u>, 262 F.3d 41, 48 (1st Cir.

2001), <u>cert. denied</u>, 534 U.S. 1118 (2002).[9] If the plaintiff succeeds in establishing a *prima facie*

case, the <u>McDonnell-Douglas</u> burden-shifting analysis applies. <u>Mesnick</u>, 950 F.2d at 827. Once

the employer articulates a legitimate non-retaliatory justification for the adverse action, then the

employee must prove, by a preponderance of the evidence, "that the employer's proffered reason

is a pretext masking retaliation" for the employee's protected conduct. <u>Id.</u>

> **1.      Count 11 of the Complaint, Alleging Retaliation Against Feagans under Chapter 151B Should Be Dismissed Because Feagans Was Not Involved in the Decision to Terminate Plaintiff's Employment.**

As discussed in greater detail in Section B.1., above, Chapter 151B provides that

only individuals who actively participate in conduct prohibited by that statute can be held

individually liable as aiders and abettors of retaliation. MASS. GEN. LAWS ch. 151B § 4(5).

Here, there is no evidence in the record that Feagans was in any way involved in the decision to

terminate Bennett's employment. In fact, as noted above, Feagans did not even know about that

decision until after the discharge had taken place. Plaintiff, therefore, cannot establish a *prima*

*facie* claim of retaliation under Chapter 151B against Feagans because Feagans did not aid or

abet the alleged retaliatory conduct. <u>See</u> <u>Sullivan</u>, 262 F.3d at 48. Thus, Count 11 of the

Complaint alleging retaliation against Feagans under Chapter 151B should be dismissed.

---

[9] Courts apply the same test when evaluating whether a *prima facie* claim of retaliation has been asserted under both the ADEA or Chapter 151B. <u>Compare</u> <u>Mesnick</u>, 950 F.2d at 827 (applying same test to ADEA retaliation claim), <u>with</u> <u>Sullivan</u>, 262 F.3d at 48 (applying same three-prong test to Chapter 151B retaliation claim). With respect to pretext, as with the age claim, under either standard utilized by the courts, Bennett cannot meet the test. <u>See</u> footnote 5, above.

2.     **Counts 2, 4, 11 and 16 of the Complaint, Alleging Retaliation under the ADEA and Chapter 151B Should Be Dismissed Because Plaintiff Cannot Establish Even a _Prima Facie_ Case of Discrimination.**

Plaintiff's claims for retaliation under the ADEA and Chapter 151B against all Defendants should be dismissed because Plaintiff cannot establish the third prong of his _prima facie_ case – that there is a causal connection between his June 6, 2001 age discrimination grievance and his discharge almost 17 months later on October 31, 2002.

Defendants anticipate that Plaintiff may attempt to establish a causal connection through temporal proximity. Plaintiffs who rely solely on temporal proximity to satisfy their _prima facie_ burden must demonstrate that the proximity between the protected activity and the adverse employment action is "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). A significant time gap "suggests, by itself, no causality at all," and will preclude a plaintiff from prevailing on his retaliation claim. Id. at 274 (citing Richmond v. ONEON, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three month period insufficient) and Hughes v. Derwinski, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (four month period insufficient)); Mesnick, 950 F.2d at 828-29 (summary judgment affirmed in favor of the employer because nine month lapse between protected activity and termination too long to establish a causal connection); Gilbert v. Amerifee, 345 F. Supp. 2d 70, 73 (D. Mass. 2004) (summary judgment granted in favor of employer on plaintiff's retaliation claim because "a four month delay [between the protected activity and the termination] is too long to sustain an inference of causality").

Here, Plaintiff contends that he made an internal age discrimination grievance on June 6, 2001, and that his employment was terminated on October 31, 2002 – almost 17 months later. As a matter of law, this lapse of time is too long to support the "very close" temporal proximity needed to establish a causal connection.

Benoit v. Technical Mfg. Corp, 331 F.3d 166, 175 (1st Cir. 2003), is directly on

point and compels the conclusion that Plaintiff's retaliation claims should be summarily

dismissed.  In Benoit, the plaintiff complained about discrimination in February and early March

of 1997.  Id.  His employment was terminated more than one year later.  Id.  The First Circuit

affirmed the trial court's summary dismissal of plaintiff's retaliation claim, holding that this one

year gap in time between the protected activity and the adverse employment action was too long

to support the necessary causal connection.  Therefore, the evidence was "insufficient to forestall

summary judgment."  Id.  Likewise, a much longer lapse of almost 17 months in the present case

breaks the necessary causal connection to support a retaliation claim.

There similarly is insufficient evidence to establish the requisite causal connection

by demonstrating an ongoing pattern of retaliation between the time of the protected activity and

the adverse employment action.[10]  To the contrary, it is undisputed that both Feagans and Mesher

recognized and rewarded Bennett for his performance on a consistent basis between June 2001

and October 2002.  The performance evaluation given to Plaintiff in February 2002 – which was

prepared by Feagans as Bennett's immediate supervisor and approved by Mesher as Feagans'

supervisor – was *higher* than the performance evaluation given to Bennett in 2001 before the

June 2001 grievance.  (56.1 Statement, ¶ 14.)  Bennett received a larger salary increase in 2002

than he had for 2001.  (56.1 Statement, ¶ 14.)  It is similarly undisputed that Feagans made

positive comments regarding Bennett's performance after the June 2001 grievance, stating on

Bennett's 2002 performance evaluation that Bennett was "one of the most respected and valued

members of the Department."  (56.1 Statement, ¶ 15.)  Positive comments relating to various

_____

[10] It must be emphasized that Bennett can pursue claims under state law dating back only
to August 21, 2002, and under federal law, dating back to April 27, 2002.  See footnotes 3 and 7,
above.

aspects of Bennett's work continued up to the time of Bennett's termination. (56.1 Statement,

¶ 16.) Mesher also recognized and rewarded Bennett's performance after June 2001. Indeed, on

August 28, 2002, Mesher made recommendations for November 2002 stock option grants for

members of his Department. Included among the few who were recommended was Bennett,

whom Mesher recommended for an exceptional stock option grant. (56.1 Statement, ¶¶ 17, 19.)

When Mesher had to reduce the number of stock options he could award, he still included

Bennett, while eliminating certain younger members of the Department from participation. (56.1

Statement, ¶ 20.)

Courts have held that positive job circumstances such as these break the causal

connection necessary to prove a *prima facie* case of retaliation. For example, in Manatt v. Bank

of America, 339 F.3d 792, 802 (8th Cir. 2003), the Eighth Circuit affirmed summary judgment in

favor of the employer on plaintiff's retaliation claim. In doing so, the Manatt Court found that

there was "no evidence, direct or circumstantial, from which a jury might infer causation"

because, in the nine-month period between the time of the plaintiff's internal age discrimination

grievance and the failure to select her for transfer, "the Bank gave [plaintiff] a pay raise and

selected her for a prestigious assignment." Id.; see also Thacker v. Brady Services, Inc., 367 F.

Supp. 2d 882, 888 (M.D.N.C.), aff'd, 2005 U.S. App. LEXIS 21158 (4th Cir. 2005) (summarily

dismissing plaintiff's claim for retaliation where there was no causal link between the plaintiff's

complaint and his termination 14 months later, particularly because "plaintiff continued to

receive increasing benefits such as regular pay raises for many months after the protected

activity").

Although neither the First Circuit nor this Court appear to have addressed this

exact issue in the context of a retaliation claim, the First Circuit has recognized and adopted a

similar line of reasoning in discrimination cases. For example, in Rosado v. Radio Shack, Inc.,

312 F.2d 532, 534 (1st Cir. 2002), the First Circuit held that there was no basis for inferring discrimination where the plaintiff was "regularly promoted and rewarded by Radio Shack before the irregularities [which formed the basis of her termination] were discovered." Similarly, in Ronda-Perez, supra, the Circuit Court held that age discrimination could not be inferred because, for the six years preceding the events which resulted in the termination of the plaintiff's employment, "he had been awarded annual raises in salary, hardly evidence of preexisting age-related animus." Ronda-Perez, 404 F.3d at 45.[11]

There is no substantial evidence, direct or circumstantial, from which a jury could infer causation between Bennett's internal age discrimination grievance and his termination 17 months later. Consequently, Counts 2, 4, 11 and 16 of the Complaint should be summarily dismissed for failure to state a *prima facie* case of retaliation under federal and state law.

> **3.    Even if Plaintiff Could Establish a *Prima Facie* Case of Retaliation, There Is No Evidence that the Stated Reason for the Decision to Terminate Bennett's Employment Was Pretextual.**

Even assuming that Plaintiff could establish a *prima facie* case of retaliation, Defendants have articulated legitimate, nondiscriminatory, nonretaliatory reasons for the decision to terminate Bennett's employment. This Court is directed to the detailed discussion of those reasons set forth in section B.2., above. As also discussed at length in Section B.2., there is

---

[11] The issuance of the written warning in November 2001 does not change this analysis. Mesher issued the written reprimand to Bennett because Bennett had written an email to a high level Company executive which was highly critical of Mesher. (56.1 Statement, ¶ 49.) Bennett admitted that his communication was inappropriate and apologized. (56.1 Statement, ¶ 49.) Moreover, the written warning did not constitute an adverse employment action because it did not "materially change the conditions of [Bennett]'s employ." See Gu, 312 F.3d at 14. Indeed, the positive performance review, the pay raise, the supportive comments by Feagans and the recommendation for stock options, beginning early in 2002 and continuing until Bennett's termination, all followed the November 2001 warning. (56.1 Statement, ¶¶ 14-20.)

no evidence that this articulated reason is pretextual. Plaintiff's claims of retaliation under state and federal law therefore should be dismissed.

**D.    Summary Judgment Should be Granted on Plaintiff's Claims for Intentional Interference with Contractual Relations in Counts 12 and 17 of the Complaint.**

To establish a claim for intentional interference with contractual relations, a plaintiff must establish that:

> (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by defendant's actions.

Wright v. Shriner's Hosp., 412 Mass. 469, 476, 589 N.E.2d 1241, 1245 (1992) (citations omitted). Accord Luciano v. Coca-Cola Enterprises, Inc., 307 F. Supp. 2d 308, 323 (D. Mass 2004) (quoting Weber v. Community Teamwork, Inc., 434 Mass. 761, 781, 752 N.E.2d 700 (2001)). A corporation and its corporate officers have the right to discharge any employee if the discharge is related to a legitimate corporate interest. Wright, 412 Mass. at 476, 589 N.E.2d at 1246. Corporations and their officers thus have both a qualified privilege and a corresponding "duty" to shareholders to discharge employees when they "d[o] not measure up to the job." Sereni v. Star Sportswear Mfg., 24 Mass. App. Ct. 428, 432, 509 N.E.2d 1203, 1206, review denied, 400 Mass. 1107, 513 N.E.2d 1289 (1987).[12]

As a threshold matter, Plaintiff's claim against Feagans for intentional interference with contractual relations should be dismissed because there is no evidence that

---

[12] Moreover, the Massachusetts Supreme Judicial court has held that "[a] client has a right to discharge a lawyer at any time, with or without cause." Malonis v. Harrington, 442 Mass. 692, 701, n.12, 816 N.E.2d 115, 123 n.12 (2004) (citation omitted). "It [also] has been reasoned that this precept should apply with full force to an attorney employed as in-house counsel." GTE Products Corp. v. Stewart, 421 Mass. 22, 27, 653 N.E.2d 161, 165 (1995).

Feagans in any way participated in the decision to terminate Bennett's employment. Thus,

Bennett cannot establish the key element, that Feagans "knowingly induced [Saint-Gobain] to

break [its at-will employment] contract" with Bennett. See Wright, 412 Mass. at 476, 589

N.E.2d at 1245. Therefore, Plaintiff is unable to establish a claim for intentional interference

against Feagans, and Count 12 of the Complaint should be dismissed. See Id.; Galdauckas v.

Interstate Hotels Corp., 901 F. Supp. 454, 466 (D. Mass. 1995) (granting summary judgment in

favor of supervisor on intentional interference claim where the supervisor "was not the final

decisionmaker with respect to plaintiff's employment").

The claim against Mesher also should be dismissed because there is no evidence

to support an improper motive or purpose by Mesher in terminating Plaintiff. As explained

above, when a supervisor with authority to terminate an at-will employee acts for a legitimate

business reason, he is privileged to do so. The privilege is lost only if he acts because of

personal feelings of malice. Luciano, 307 F. Supp. 2d at 323-24 (quoting Clement v. Rev-Lyn

Contracting Co., 40 Mass. App. Ct. 322, 325, 663 N.E.2d 1235 (1996)).

In Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 665, 429 N.E.2d 21, 25 (Mass.

1981), the Massachusetts Supreme Court noted that a plaintiff must meet a high burden to

establish an inference of malice in support of a claim for intentional interference with contractual

relations against a supervisor. In reversing a judgment entered in favor of the plaintiff on a claim

for intentional interference, the Court in Gram employed the following reasoning:

> Even if we assume, as seems reasonably warranted, that [the
> individual supervisors] wish [the plaintiff] did not work under
> them, that they did not conduct an adequate investigation of the
> alleged rule violation and that, in fact, there was no new or good
> reason to justify [plaintiff's] discharge, an inference of an intent to
> obtain Gram's discharge out of ill will toward him is no more
> probable than is the inference that [the supervisors] acted in
> response to a sincerely held but erroneous view that the [action by
> the plaintiff] was contrary to company policy. An inference of the
> probability of malice, action motivated by spite, does not

reasonably follow from a showing, in these circumstances, only of negligence or of sloppy and unfair business practices.

Id. at 665, 429 N.E.2d at 25.

In accordance with Gram, the court in Galdauckas, 901 F. Supp. at 466, held that where a defendant "has offered a rational reason for discharging the plaintiff and she has presented insufficient evidence to allow a jury to find that it was more probable than not that her discharge was the result of [the supervisor's] malice," summary judgment should be granted in favor of the defendant. In Galdauckas, the plaintiff, a waitress, was terminated because she allowed one of her customers to leave without paying his bill and failed to make a cash register check for that customer. Id. at 462. The evidence of some age-based remarks made by the supervisor, who had input but was not the final decision-maker, was considered insufficient by the court to support a finding that the discharge was motivated by malice. Id. at 465-66. The intentional interference claim against her supervisor was summarily dismissed. Id. at 466.

That same lack of evidence exists here and requires the same result. The triggering event for Mesher's decision to terminate Bennett was Mesher's good faith belief that Bennett had harassed a female employee and that Bennett's conduct may have violated Massachusetts criminal law. (56.1 Statement, ¶¶ 45, 52.) As Bennett's supervisor, Mesher had a right to terminate Bennett's employment unless he did so for a malicious reason unrelated to a proper business purpose. See Wright, 412 Mass. at 476, 589 N.E.2d at 1246. The record is devoid of evidence that Mesher's purpose in discharging Bennett was based upon personal malice. Indeed, Bennett cannot even point back to the June 2001 internal grievance as a reason for which Mesher would harbor malicious feelings against him because Mesher was not the subject of that grievance. (56.1 Statement, ¶ 8.) After the grievance, as noted above, Mesher approved a positive evaluation for Bennett, approved his salary increase and recommended Bennett as one of the few members of the Law Department who was to receive exceptional stock

-24-

options. (56.1 Statement, ¶¶ 14-15, 17-20.) None of these actions supports Bennett's position that Mesher (or Feagans) acted with malice. Indeed, they support the opposite conclusion. The record therefore provides no basis for the intentional interference claim.

Finally, to the extent that Plaintiff seeks to base his allegations of intentional interference upon the claims of age discrimination and retaliation in the Complaint, if this Court grants summary judgment in favor of Feagans and Mesher on those claims, this Court must grant summary judgment in favor of these Defendants on Counts 12 and 17 for intentional interference. See Brunner v. Stone & Webster Eng'g Corp., 413 Mass. 698, 705-06, 603 N.E.2d 206, 211 (1992) (granting summary judgment on intentional interference claim because plaintiff had no reasonable expectation of proving unlawful discrimination claim).

For these reasons, summary judgment should be granted in favor of Feagans and Mesher on Counts 12 and 17 of the Complaint.

## III.    CONCLUSION

For the reasons stated above, Defendants request that this Court grant their Motion for Summary Judgment, enter judgment in Defendants' favor and award such other relief as this Court deems appropriate.

SAINT-GOBAIN CORPORATION, JOHN R. MESHER, and TIMOTHY L. FEAGANS,
By their attorneys,

/s/ Jill Brenner Meixel
James B. Conroy (BBO# 096315)
Jill Brenner Meixel (BBO# 652501)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
617-720-2880

Hope A. Comisky
Amy G. McAndrew
Pepper Hamilton LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
*Admitted Pro Hac Vice*

Dated: November 4, 2005

### CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by ~~mail/by hand~~ electronic filing
Date: 11/4/05 _[signature]_

-25-