IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID BENNETT, | : |
| Plaintiff, | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 04-CV-40014-FDS |
| SAINT-GOBAIN CORPORATION, JOHN R. MESHER, AND TIMOTHY L. FEAGANS, | : |
| Defendants. | : |

**MEMORANDUM OF LAW OF DEFENDANTS SAINT-GOBAIN CORPORATION, JOHN MESHER AND TIMOTHY FEAGANS IN OPPOSITION TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFF DAVID BENNETT**

Defendants Saint-Gobain Corporation ("Saint-Gobain" or "Company"), John Mesher ("Mesher") and Timothy Feagans ("Feagans") (collectively "Defendants"), by their undersigned counsel, submit this memorandum of law in support of their opposition to the Motion of Plaintiff David Bennett ("Bennett" or "Plaintiff") for Partial Summary Judgment.

**I.   INTRODUCTION**

The core claim made by Bennett in this case is that he was terminated from his employment at the Company because of age discrimination and in retaliation for filing a prior age discrimination grievance. Plaintiff at all times shoulders the burden of proving his case. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Through this Motion, however, Plaintiff seeks to remove that burden. He is asking the Court to deprive the Defendants of their defense in this case, based on a ruling by an unemployment compensation referee, after a one hour hearing conducted over the telephone, in a proceeding in which none of the Defendants was a party. As discussed below, binding authority from the Supreme Judicial Court of Massachusetts requires that this Motion be denied.

## II.  FACTUAL BACKGROUND[1]

David Bennett was employed by defendant Saint-Gobain as an in-house attorney in the Company's Law Department. (Response, ¶ 1.) On October 31, 2002, Bennett's employment was terminated. (Response, ¶ 4.) The compelling reason for the termination was the good faith belief of Saint-Gobain's General Counsel, defendant Mesher, that Bennett had engaged in a pattern of harassment of a female employee, Diana Henchey, through anonymous, unwanted written communications, which had caused the employee to be alarmed and distressed to the point that she felt she was being stalked. (Response, ¶ 5.) Mesher made the decision to terminate Bennett after Mesher was advised of the results of an independent investigation of the harassment complaint by the head of the Company's security department, including the results of an evaluation of the writings by an outside forensic document examiner, and after Mesher conferred with the human resources manager responsible for the Law Department. (Response, ¶ 5.)

Following the termination of his employment, Bennett filed a claim for unemployment compensation benefits against his employer, defendant Saint-Gobain, with the Massachusetts Division of Employment and Training ("DET"). (Response, ¶ 6.) His claim was initially denied by the DET. (Response, ¶ 7.) On April 30, 2003, the DET held an approximately one hour telephone hearing to review an appeal by Bennett of this denial. (Response, ¶ 7.) Because of a procedural technicality, Saint-Gobain was permitted to participate

---

[1] This introduction provides a brief factual background to this case. For a more complete recitation of the facts, Defendants refer the Court to their Statement of Undisputed Facts Pursuant to Local Rule 56.1, filed on November 4, 2005. Furthermore, on this date, Defendants have filed with the Court the Response of Defendants Saint-Gobain Corporation, John Mesher and Timothy Feagans to Plaintiff's Statement of Facts Submitted in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Response").

only as a witness.[2] (Response, ¶ 7.) Following that hearing, the DET awarded unemployment compensation benefits to Bennett. (Response, ¶ 7.)

On November 3, 2005, plaintiff Bennett filed a Motion for Partial Summary Judgment in the present case, claiming that Defendants should be collaterally estopped from establishing that Bennett authored the written communications sent to Henchey, because the issue was already litigated by the parties at the DET hearing.

As explained more fully below, there is no basis to collaterally estop Defendants in this case from raising the reasons that Bennett's employment was terminated as part of their defense because: (1) none of the Defendants in the instant litigation were parties to the DET hearing; (2) the issues for determination by the DET were not identical to the issues to be determined in the present case; and (3) it would be fundamentally unfair to give preclusive effect to the DET's determination, given the relative informality of the DET proceeding and the failure to provide a full and fair opportunity to litigate.

### III. ARGUMENT

#### A. Standard of Review.

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial burden of production to demonstrate that this standard has been met. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). At the summary judgment stage, the judge is not to weigh the evidence and

---

[2] Although not material to the Court's determination of Plaintiff's Motion, should this matter proceed to trial, Defendants reserve the right to produce evidence demonstrating that Saint-Gobain's failure to oppose Plaintiff's application for benefits was because the initial application was not received by any employee of the Company in a timely manner.

determine the truth of the matter, but is to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Furthermore, all evidence must be viewed in the light most favorable to the non-moving party and all inferences must be drawn in that party's favor. Celotex, 477 U.S. at 325. Thus, it is the movant's burden to demonstrate in detail that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Id. at 322-23. Failure to meet this burden requires the denial of the motion. Id. In the present case, under this standard, Plaintiff is unable to establish that collateral estoppel applies either as a matter of fact or law. Therefore, Plaintiff's Motion for Partial Summary Judgment should be denied.

> **B.   In Accordance with the Decision of the Supreme Judicial Court of Massachusetts in *Tuper v. North Adams Ambulance Serv., Inc.*, the Application of Collateral Estoppel is Inappropriate in this Case.[3]**

The judicial doctrine of collateral estoppel, also known as issue preclusion, provides that, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."[4] Fireside Motors, Inc. v. Nissan Motor Corp., 395 Mass. 366, 479 N.E.2d 1386, 1390

---

[3] In Brunson v. Wall, 405 Mass. 446, 449, 541 N.E.2d 338, 340 (1989) (cited by Plaintiff), the court suggests that, under federal law, unreviewed state administrative proceedings have no preclusive effect in federal employment discrimination cases. See Astoria Fed. Sav. and Loan Assoc. v. Angelo, 501 U.S. 104, 110 (1991) (no preclusion by state administrative findings with respect to age discrimination claim). See also University of Tenn. v. Elliott, 478 U.S. 788, 790 (1986). However, this Court need not reach that issue because there is no preclusive effect under the state law upon which Plaintiff relies.

[4] Plaintiff correctly states in his opening brief that, in some cases, "[a] final order of an administrative agency in an adjudicatory proceeding . . . precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction." Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 134, 697 N.E.2d 983, 985 (1998). However, as the Supreme Judicial Court noted in Tuper, cases in which collateral estoppel has been applied based upon a prior administrative agency ruling generally have involved the

(continued...)

(1985) (citations omitted). The well recognized purpose of the doctrine is "to conserve judicial resources, to prevent the unnecessary costs associated with multiple litigation, and to ensure the finality of judgments." Treglia v. MacDonald, 430 Mass. 237, 240, 717 N.E.2d 249, 252 (1999) (quoting Martin v. Ring, 401 Mass. 59, 514 N.E.2d 663 (1987)). Even with these laudable goals in mind, however, the Supreme Judicial Court of Massachusetts has stressed that a party will be collaterally estopped from relitigating an issue only where the preclusion otherwise "comports with over-all conditions of fairness." Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 137, 697 N.E.2d 983, 986 (1998).

To collaterally estop a party from relitigating an issue, a court first must determine that these specific elements have been met:

> (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication. Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment.

Tuper, 428 Mass. at 134, 697 N.E.2d at 985 (citations omitted). The "central inquiry" is whether the party against whom collateral estoppel will be applied had a "fair opportunity to litigate the issue fully . . ." Kyricopoulos v. Town of Orleans, 967 F.2d 14, 16 (1st Cir. 1992) (cited by Plaintiff). The burden of demonstrating these circumstances is always on the party seeking to apply the estoppel. Fireside, 395 Mass. at 373, 479 N.E.2d at 1390. As discussed in further detail below, Plaintiff cannot satisfy any of these elements.

---

(continued...)

defensive use of collateral estoppel. Id. By contrast, in the present case, Plaintiff argues that collateral estoppel should be applied offensively to preclude relitigating the DET's determination that Plaintiff did not engage in the deliberate misconduct of which he was accused. Collateral estoppel, whether offensive or defensive, should not be applied in this case because Plaintiff cannot establish all of the necessary elements.

### 1. The Parties Against Whom Preclusion Is Now Sought Were Not Parties to the DET Unemployment Compensation Hearing.

First, none of the parties against whom preclusion is now sought was a party to the DET unemployment compensation hearing. Plaintiff filed a claim for unemployment compensation benefits solely against his employer, defendant Saint-Gobain. (Response, at ¶ 7.) However, defendant Saint-Gobain was not considered to be a party at the DET hearing, due to an inadvertent failure to file an opposition to Bennett's initial application for unemployment compensation benefits. (Response, at ¶ 7.) Saint-Gobain was allowed to participate only as a witness. (Response, at ¶ 7.) As a result, Saint-Gobain did "not have a right of cross-examination [and did] not have a right to make a closing statement" at the hearing. (Response, at ¶ 7.) Indeed, the hearing examiner severely limited the Company's role in the hearing, stating that "[t]he employer's sole purpose or participation [in the telephone hearing was] to answer such questions as [the hearing examiner] cho[]se to put to the employer for purposes of elucidating the facts." (Response, at ¶ 7.)

In addition, neither Mesher nor Feagans was a named party to the unemployment compensation proceeding. (Response, at ¶ 7.) Defendant Mesher participated only as a witness, and Feagans did not participate in the DET hearing in any way. (Response, at ¶ 7.)

Thus, none of the Defendants against whom preclusion is now sought was a party to the DET hearing. Therefore, Plaintiff cannot establish one of the elements necessary for the application of collateral estoppel. See Tuper, 428 Mass. at 134, 697 N.E.2d at 985.

### 2. The Issues Which Were Decided in the Unemployment Compensation Proceeding Are Not Identical to the Issues to be Decided in the Current Matter.

Second, the issues which were decided in the DET unemployment compensation proceeding are not identical to the issues to be decided in Plaintiff's discrimination and

retaliation claims. The Massachusetts Supreme Judicial Court's decision in Tuper is on point and compels the denial of Plaintiff's Motion.

In Tuper, the plaintiff entered into an employment contract with the defendant under which the plaintiff's employment could be terminated only for just cause. Tuper, 428 Mass. at 133, 697 N.E.2d at 984. The defendant employer subsequently terminated the plaintiff's employment for "grossly insubordinate behavior" which consisted of "refusing to obey a direct order" and "disparaging [the defendant] in the presence of a non-employee." Id. In a hearing following the plaintiff's application for unemployment compensation benefits, the DET determined that the plaintiff was entitled to benefits and that, "because the defendant had never set forth an expectation pertaining to the following of orders and the subsequent consequence of contesting orders, his actions [did] not rise to the level of insubordination." Id. (internal quotations and citations omitted).

At the trial on his breach of contract claim, the plaintiff asked the court to "instruct the jury that they must assume that the plaintiff had not been insubordinate," based upon the decision of the DET. Id. at 134, 697 N.E.2d at 985. The court refused to do so, and the jury found in favor of the employer on plaintiff's breach of contract claim, concluding that the termination was for just cause. Id. On appeal, the Supreme Judicial Court of Massachusetts agreed with the trial court that collateral estoppel based upon the DET decision was not warranted because "[t]he issues in the two adjudications" – the unemployment compensation proceeding and the subsequent breach of contract action – "were not identical." Id. at 135, 697 N.E.2d at 986. In particular, the Tuper court stated:

> [T]he [DET]'s determinations were based on the subjective knowledge and state of mind of the plaintiff. By contrast, the judge in [the breach of contract] action instructed the jury that the determination of just cause had to be decided in part on the basis of the objective reasonableness of the *defendant's state of mind.* The issues surrounding these determinations thus were not identical. It

> was entirely possible, and even plausible, that the plaintiff could
> have subjectively believed that his actions did not constitute
> insubordination or disobedience, while the defendant reasonably
> believed the opposite. The judge was, therefore, correct in ruling
> that the [DET]'s determinations that the plaintiff was not
> insubordinate and had not disobeyed a direct order had no
> preclusive effect in this action.

Id. at 135-36, 697 N.E.2d at 986 (emphasis added).

Just as in Tuper, the issue in this case is not identical to that before the unemployment compensation referee. The stated issues for determination in the unemployment compensation proceeding were whether Saint-Gobain could "provide substantial and credible evidence to show that the claimant was discharged due either to (a) a knowing violation of reasonable [sic] and uniformly enforced rule or policy, or (b) deliberate misconduct in willful disregard of the employer's interest." (Response, at ¶ 11.) The basic issue in the unemployment compensation proceeding therefore was whether Saint-Gobain could prove that Bennett knowingly and deliberately violated a Saint-Gobain policy. (Response, at ¶ 11.) In addition, under the DET standard, the burden of proof was on Saint-Gobain. (Response, at ¶ 11.)

There are two key differences in the present case. First, there is no burden of proof which the Defendants must meet. Here, Defendants must only articulate a legitimate, non-discriminatory reason for the decision to terminate Bennett's employment. Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995). It is Bennett, not Saint-Gobain, who has the burden to prove "(1) that [Saint-Gobain]'s articulated reason for the [termination of his employment] is a pretext; and (2) that the true reason is discriminatory." Id. at 16. This difference in the burdens of proof in the two adjudications alone would justify denial of Plaintiff's Motion. See Krochta v. Commonwealth, 429 Mass. 711, 717-18, 711 N.E.2d 142, 147 (1999) (denying defendant's motions to dismiss and determining that collateral estoppel does not bar criminal prosecution of a defendant for offenses following a finding in his

favor at a probation revocation hearing triggered by the alleged commission of the same offenses because, in part, the burdens of proof in the two proceedings were different).

Second, the issue in this case is not whether Bennett actually violated a Saint-Gobain policy. The issue is whether the individual who made that decision had a good faith belief that Bennett had engaged in conduct which would support the termination decision. See Mesnick v. General Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). In making this determination, the focus must be not on the actions taken by Bennett but on the "perception of the decisionmaker," in this case defendant Mesher. Mesnick, 950 F.2d at 824. As the First Circuit Court of Appeals explained in Mesnick:

> [The focus must be on] whether the employer believed its stated reason to be credible. . . It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination."

Id. (citations omitted).

It therefore is clear that the issue actually determined by the DET – whether Saint-Gobain could prove that Bennett violated a Saint-Gobain policy – is entirely different than the issue before the Court in the present case – whether Bennett can prove that Mesher did not believe in good faith that Bennett had engaged in misconduct. Just as in Tuper, therefore, collateral estoppel based upon the DET's decision cannot be applied, and Plaintiff's Motion for Partial Summary Judgment should be denied. See Tuper, 428 Mass. at 135-36, 697 N.E.2d at 986. See also Hunter v. Cayer, 61 Mass. App. Ct. 725, 729, 813 N.E.2d 1287, 1291 (2004) (refusing to apply collateral estoppel in a case involving disputed claims to a number of lots of land because "the judgment in [the prior adjudication] made no determination of ownership, [and] there [therefore] was no issue successfully litigated that precludes litigation of the ownership of the lots in issue in the present case"); Callender v. Suffolk County, 57 Mass. App.

Ct. 361, 365-66, 783 N.E.2d 470, 474, review denied, 439 Mass. 1101, 786 N.E.2d 394 (2003) (refusing to give collateral estoppel effect to workers' compensation determination in subsequent litigation involving entitlement to assault pay benefits because the issue for determination in the subsequent litigation, whether the plaintiff, a corrections officer, "was injured by an inmate, was not a live and litigated issue" in the workers' compensation proceeding).[5]

> 3.  **Especially Because There Was No Full and Fair Opportunity to Litigate Before the DET, It Would Be Fundamentally Unfair to Give Preclusive Effect to the DET's Determination.**

Third, it would be fundamentally unfair to give preclusive effect in this case to the DET's determination, particularly because there was no full and fair opportunity to litigate. As the Supreme Judicial Court in Tuper generally recognized, "[a]pplying a preclusive effect to the [DET]'s determinations [in a case such as this one] would be plainly unfair" because "[t]he proceedings before the [DET] were relatively informal and the defendant's stake in the adjudication was relatively small," as the result of which the employer had little incentive to vigorously defend its position. Id. at 136, 697 N.E.2d at 986. As the Tuper court noted, the Massachusetts unemployment compensation statute was enacted to provide for

> the prompt adjudication of claims for unemployment benefits, in response to the need to alleviate quickly the harsh financial consequences of unemployment. If successful claimants before the

---

[5] By contrast, in all of the cases cited by Plaintiff, the identical issue had been previously litigated. Indeed, in two cases, unlike in the present action, the issue of good faith actually had been litigated. Commissioner of the Dept. of Employment and Training v. Dugan, 428 Mass. 138, 143, 697 N.E.2d 533, 537 (1998) (findings concerning the defendant's state of mind were made) and Green v. Town of Brookline, 53 Mass. App. Ct. 120, 126, 757 N.E.2d 731, 735-36 (2001) (issue of bad faith was previously litigated). See also Keystone Shipping Co. v New England Power Co., 109 F.3d 49, 51-52 (1st Cir. 1997) (identical question of arbitrability was actually litigated); Kyricopoulos, 967 F.2d at 16 (issue of probable cause was actually litigated); Alba v. Raytheon Co., 441 Mass. 836, 843, 809 N.E.2d 516, 522 (2004) (reasonable accommodation issue was litigated); Fay v. Federal Nat'l Mortgage Ass'n, 419 Mass. 782, 791, 647 N.E.2d 422, 428 (1995) (issue of forgery was decided); Brunson, 405 Mass. at 451, 541 N.E.2d at 341 (issue of discrimination was decided).

> [DET] are allowed to use collateral estoppel offensively in a subsequent civil action, employers will be forced to litigate unemployment compensation claims to the hilt, with full appeals, because of the substantially greater variety and extent of civil claims which might then follow. Such a result would be directly contrary to the objective, and even the Federal mandate, of promptly resolving such claims.

Id. at 136-37, 697 N.E.2d at 986 (citations omitted).

The Supreme Judicial Court reached a similar conclusion and applied similar reasoning in Krochta, supra. In that case, the criminal defendant sought to collaterally estop the government from prosecuting him on certain charges following a finding in his favor at a probation revocation hearing involving the same alleged offenses. Krochta, 429 Mass. at 712, 711 N.E.2d at 144. The Court refused to apply collateral estoppel, finding that the relative informality and different burden of proof involved in a probation revocation hearing "militate[d] against giving the conclusions in a probation revocation hearing preclusive effect in a subsequent criminal proceeding." Id. at 717-18, 711 N.E.2d at 147. See also LePage v. Bumila, 407 Mass. 163, 165-66, 552 N.E.2d 80, 82-83 (1990) (where, in an analogous context, the Supreme Judicial Court determined that it would be unfair to hold that a defendant who paid a fine for a traffic violation had made an admission of liability for purposes of a subsequent civil negligence action).

In this case, the general policy concerns are amplified by the procedures utilized in the DET hearing, which procedures deprived the Company of a full and fair opportunity to litigate. None of the Defendants in this case were parties to that proceeding. Defendant Feagans did not participate at all, and defendant Mesher participated as a witness only. As noted above, as a non-party, Saint-Gobain did not have the fundamental right of cross-examination. It did not have a right to make a closing statement. Indeed, the hearing examiner severely limited the Company's role to answering any questions that the hearing examiner chose to ask. Certainly,

under these very limited parameters, none of the Defendants had a "full and fair opportunity" to litigate the issue.[6]

For these reasons, considerations of fundamental fairness dictate that collateral estoppel cannot be applied in this case.

## IV.     CONCLUSION

For all of the reasons stated above, the Plaintiff has not established the elements necessary for the application of collateral estoppel in this case. Defendants therefore request that this Court deny Plaintiff's Motion for Partial Summary Judgment.

                                                              SAINT-GOBAIN CORPORATION, JOHN R.
                                                              MESHER, and TIMOTHY L. FEAGANS,
                                                              By their attorneys,

Hope A. Comisky
Amy G. McAndrew                                               /s/ Jill Brenner Meixel
Pepper Hamilton LLP                                           James B. Conroy (BBO# 096315)
3000 Two Logan Square                                         Jill Brenner Meixel (BBO# 652501)
18th and Arch Streets                                         Donnelly, Conroy & Gelhaar, LLP
Philadelphia, PA  19103                                       One Beacon Street, 33rd Floor
*Admitted Pro Hac Vice*                                       Boston, Massachusetts 02108
                                                              617-720-2880

Dated: November 22, 2005

---

[6] Plaintiff's cases likewise are distinguishable because in each one there was a full and fair opportunity to litigate. See Keystone Shipping Co., 109 F.3d at 52 (describing full opportunity for hearing); Kyricopoulos, 967 F.2d at 16 (full trial in court, including cross-examination); Alba, 441 Mass. at 838, 809 N.E.2d at 519 (six day hearing with 15 witnesses); Dugan, 428 Mass. at 145, 697 N.E.2d at 538 (first proceeding was "most elaborate"); Fay, 419 Mass. at 789, 647 N.E.2d at 427 (full jury trial); Brunson, 405 Mass. at 447, 451, 541 N.E.2d at 339 (full adjudicatory hearing); Green, 53 Mass. App. Ct. at 127, 757 N.E.2d at 736 (prior findings were the product of full litigation and careful decision).