IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAVID BENNETT,

      Plaintiff,

      v.

SAINT-GOBAIN CORPORATION, JOHN R. MESHER, AND TIMOTHY L. FEAGANS,

      Defendants.

CIVIL ACTION

NO. 04-CV-40014-FDS

## RESPONSE OF DEFENDANTS SAINT-GOBAIN CORPORATION, JOHN MESHER AND TIMOTHY FEAGANS TO PLAINTIFF'S STATEMENT OF FACTS SUBMITTED IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Saint-Gobain Corporation ("Saint-Gobain" or "Company"), John Mesher ("Mesher") and Timothy Feagans ("Feagans") (collectively "Defendants"), by their undersigned counsel, submit this response to Plaintiff's Statement of Facts, pursuant to Local Rule 56.1, in opposition to the Motion for Partial Summary Judgment filed by plaintiff David Bennett ("Bennett" or "Plaintiff").[1]

    1.    Denied as stated. It is admitted only that, at all times material to this matter, Saint-Gobain employed Bennett as a Senior Patent Attorney in Saint-Gobain's Law Department. (Answer, at ¶¶ 2, 5.) The remaining allegations of this paragraph are denied.

    2.    Denied as stated. It is admitted only that on October 31, 2002, Robert Wilk ("Wilk"), at the time Saint-Gobain's Director, Business Practices and Compliance

---

[1] All of the documentation from the discovery record supporting the citations in the text was appended to the Statement of Undisputed Facts Pursuant to Local Rule 56.1 in support of Motion of Defendants for Summary Judgment, filed on November 4, 2005, supported by the Declaration of Jill Brenner Meixel, Esq. ("Meixel Declaration").

Programs, Joseph Johnson ("Johnson"), an outside security consultant, and Cathy Ferrante ("Ferrante"), Saint-Gobain's Director of Administrative and Human Resources Services, met privately with Plaintiff. It is further admitted that Wilk and Johnson advised Plaintiff that, as the result of an investigation, Saint-Gobain believed that Plaintiff had sent unwanted, harassing poems to a female employee. (Answer, at ¶ 12; see Deposition of Robert Wilk, at 84, 86-88, 145; Wilk Dep. Ex. 7.)[2] The remaining allegations of this paragraph are denied.

        3.     Denied as stated. It is admitted only that, during their meeting on October 31, 2002, Wilk and Johnson told Plaintiff that Saint-Gobain had retained a forensic document expert and that the expert had concluded that Plaintiff's handwriting matched the handwriting on the envelopes delivered to the female employee. (Answer, at ¶ 14; Wilk Dep. Ex. 7, at 5.) The remaining allegations of this paragraph are denied.

        4.     Admitted in part; denied in part. It is denied that Mesher met privately with Bennett. To the contrary, defendant Mesher and Ferrante met privately with Plaintiff on the afternoon of October 31, 2002, during which meeting Plaintiff's employment with Saint-Gobain was terminated. (Answer, at ¶ 15; Deposition of John Mesher, at 82-85;[3] Wilk Dep. Ex. 7, at 6.) It is admitted that, during that meeting, defendant Mesher emphasized the seriousness of Plaintiff's actions by pointing out that the Commonwealth of Massachusetts provides criminal penalties for the type of activity of which Plaintiff was being accused. (Answer, at ¶ 15; Mesher Dep., at 84-85.)

---

[2] The pertinent portions of the deposition of Robert Wilk and supporting exhibits were attached to the Meixel Declaration as Exhibit H.

[3] The pertinent portions of the deposition of John Mesher and supporting exhibits were attached to the Meixel Declaration as Exhibit A.

5.  Admitted. By way of further response, on October 31, 2002, Saint-Gobain terminated Bennett's employment for: gross misconduct, including (i) a pattern of harassment of a female employee through anonymous, unwanted written communications, using interoffice mail and other means of delivery, which has caused the employee to be alarmed and distressed, (ii) gross insubordination (*e.g.*, a poem highly critical of his immediate and ultimate supervisor(s)), and (iii) a pattern of rude and unprofessional behavior directed at the General Counsel's office and other members of the Delegation staff. (Mesher Dep., at 140-41; Employee Change Notice, effective 10/31/02, approved 11/7/02 (Mesher Dep. Ex. 46).) The circumstances which led to that decision are set forth more fully in the Statement of Undisputed Facts Pursuant to Local Rule 56.1 in Support of Motion of Defendants Saint-Gobain Corporation, John Mesher and Timothy Feagans for Summary Judgment, filed with the Court on November 4, 2005.

6.  Admitted, upon information and belief.

7.  Admitted. By way of further response, Plaintiff filed a claim for unemployment compensation benefits against his employer, defendant Saint-Gobain. (Affidavit of David Bennett ("Bennett Affidavit"), at ¶¶ 1, 4, Exhibit 1, at 3.) Bennett's initial application for benefits was denied. (Bennett Affidavit, at ¶ 6, Exhibit 2.) Defendant Saint-Gobain was not a party at the DET hearing on Bennett's appeal of this denial. (Bennett Affidavit, at ¶ 5, Exhibit 1, at 13.) Although Saint-Gobain was the named defendant in Bennett's initial unemployment compensation application, on appeal, the hearing examiner did not allow Saint-Gobain to participate in the telephone hearing as "a fully interested party" and instead allowed Saint-Gobain to participate only as a witness, due to the failure of Saint-Gobain to respond to the initial application. (Bennett Affidavit, at ¶ 5, Exhibit 1, at 13-14.) As a result, Saint-Gobain did "not have a right of cross-examination [and did] not have a right to make a closing statement" at the

hearing. (Bennett Affidavit, at ¶ 5, Exhibit 1, at 14.) The hearing examiner stated that "[t]he employer's sole purpose or participation [in the telephone hearing was] to answer such questions as [the hearing examiner] cho[]se to put to the employer for purposes of elucidating the facts." (Bennett Affidavit, at ¶ 5, Exhibit 1, at 14.) The DET hearing was conducted by telephone and lasted approximately one hour. (Bennett Affidavit, at ¶ 5, Exhibit 1, at 3, 48.) Neither Mesher nor Feagans was a party to the unemployment compensation proceeding. (Bennett Affidavit, at ¶ 5, Exhibit 1, at 1.) Following the hearing, the DET awarded unemployment compensation benefits to Bennett. (Bennett Affidavit, at ¶ 7, Exhibit 3, at 4.)

       8.     Denied. Mesher was treated as a third-party witness and only within the parameters described in paragraph 7, above. (Bennett Affidavit, at ¶ 5, Exhibit 1, at 4, 13-14.)

       9.     Denied as stated. It is admitted only that defendant Mesher testified that the "forensic auditor [hired by Saint-Gobain] determined that indeed it was [Bennett's] handwriting in which – on the envelopes in which these poems were sent." (Bennett Affidavit, at ¶ 5, Exhibit 1, at 26.) Any characterization of Mesher's testimony is denied.

      10.    Denied. By way of further response, Saint-Gobain was not permitted to participate in the hearing as a party. Therefore, it has no specific knowledge that any of the exhibits submitted by Saint-Gobain were considered by the hearing examiner in reaching his decision.

      11.    Denied as stated. By way of further response, the hearing examiner noted that he believed that defendant Mesher was "being somewhat disingenuous or evasive" only with regard to Mesher's inability to adequately define a limerick. (Bennett Affidavit, at ¶ 5, Exhibit 1, at 40.) It is admitted that the hearing examiner made findings of fact, as set forth in Exhibit 3 to Bennett's Affidavit. Any characterization of those findings of fact is denied. By way of further

-4-

response, the stated issues for determination in the unemployment compensation proceeding were whether Saint-Gobain could "provide substantial and credible evidence to show that the claimant was discharged due either to (a) a knowing violation of reasonable [sic] and uniformly enforced rule or policy, or (b) deliberate misconduct in willful disregard of the employer's interest." (Bennett Affidavit, at ¶ 7, Exhibit 3, at 3.) The burden of proof in the DET proceeding was on Saint-Gobain as the employer. (Bennett Affidavit, at ¶ 7, Exhibit 3, at 3.)

12.  It is admitted only that the hearing examiner set forth his conclusions and reasoning, as set forth in Exhibit 3 to Bennett's Affidavit. Any characterization of the hearing examiner's conclusions and reasoning is denied.

SAINT-GOBAIN CORPORATION, JOHN R. MESHER, and TIMOTHY L. FEAGANS,
By their attorneys,

Hope A. Comisky
Amy G. McAndrew
Pepper Hamilton LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
*Admitted Pro Hac Vice*

Dated: November 22, 2005

/s/ Jill Brenner Meixel
James B. Conroy (BBO# 096315)
Jill Brenner Meixel (BBO# 652501)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
617-720-2880