IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAVID BENNETT,                                  :
                                                :
            Plaintiff,                          :
                                                :        CIVIL ACTION
      v.                                        :
                                                :        NO.  04-CV-40014-FDS
SAINT-GOBAIN CORPORATION, JOHN R.               :
MESHER, AND TIMOTHY L. FEAGANS,                 :
                                                :
            Defendants.                         :

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION
OF DEFENDANTS SAINT-GOBAIN CORPORATION, JOHN MESHER
AND TIMOTHY FEAGANS FOR SUMMARY JUDGMENT**

Defendants Saint-Gobain Corporation ("Saint-Gobain" or "Company"), John

Mesher ("Mesher") and Timothy Feagans ("Feagans") (collectively "Defendants"), by their

undersigned counsel, submit this Reply Memorandum of Law to respond to the arguments raised

in Plaintiff David Bennett's ("Bennett" or "Plaintiff") Opposition to Defendants' Motion for

Summary Judgment ("Pl.'s Opp.").

## I.    INTRODUCTION

Before the Court is the Motion by Defendants for Summary Judgment and

supporting Memorandum of Law ("Opening Brief"). As Defendants demonstrated in their

Opening Brief, Plaintiff's claims fail as a matter of law. Despite Plaintiff's attempts to create

issues of material fact through unsupported allegations and outright misstatements of the factual

record, Plaintiff has not established a single specific, material fact in dispute that would preclude

the entry of summary judgment in Defendants' favor. Plaintiff's Opposition papers fail to rebut

Defendants' well-supported submission, and his claims should be summarily dismissed.

## II.    ARGUMENT

### A.    Plaintiff Has Admitted Most of the Facts Set Forth in Defendants' Statement of Uncontested Facts.

In Plaintiff Bennett's Response ("Pl.'s Response") to Defendants' Statement of Uncontested Facts, he admits the statements in the following paragraphs: 1-5, 8-10 (in material part), 11, 13 (in part), 14-15, 17, 26 (in part), 28, 40, 41 (in material part), 42 (in part) and 43 (in part). Plaintiff did not respond at all to paragraph 49, and that paragraph should, therefore, be deemed admitted.

#### 1.    Plaintiff's "Denials" Based on Insufficient Knowledge Are Deemed Admissions.

Plaintiff denies the facts set forth in the following paragraphs, stating that he is "without knowledge" to admit or deny: 6, 7, 18-25, 29, 30, 32-39, 44-47, 53, 55 and 56. Such a denial is invalid, however, because, at this stage of the proceedings, discovery is closed, and "general denials" are "insufficient to avoid summary judgment." Scott v. Sulzer Carbomedics, Inc., 141 F. Supp. 2d 154, 179-80 (D. Mass. 2001) (citations omitted). The denials in this paragraph must be disregarded, and the paragraphs are therefore deemed admitted.

#### 2.    Plaintiff's "Denials" Without Supporting Authority Also Are Deemed Admissions.

Plaintiff similarly denies facts set forth in the following paragraphs without citing any supporting authority: 13 (in part), 26 (in part), 27, 31, 42 (in part), 43 (in part), 48, 50, 51, 52 and 54. Moreover, in his response to paragraph 12, Plaintiff refers to documents which are not included as part of the summary judgment record. These denials are invalid, because, in response to a summary judgment motion, the non-moving party cannot rely upon "conclusory allegations, improbable inferences [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir. 1990) (citations omitted); Scott, 141 F. Supp. 2d at 179-80.

### 3.    Plaintiff Cannot Defeat Summary Judgment by Contradicting His Deposition Testimony.

Paragraph 54 includes a statement that "Feagans had no input into the decision to terminate David Bennett." Plaintiff responded to paragraph 54 by asserting that the "evidence shows that Feagans participated and was involved in the decision to terminate Bennett." As noted above, this response is deficient because Plaintiff does not cite to any evidence in the record.

In addition, this response must be disregarded by this Court because Plaintiff testified at his deposition that he had no specific facts to support his assumption that Feagans was involved in the decision to terminate his employment. (Bennett Dep., at 168-69.)[1] Plaintiff cannot contradict his own deposition testimony in order to create a disputed issue of fact sufficient to defeat a motion for summary judgment. See Melanson v. Browning-Ferris Industries, Inc., 281 F.3d 272, 277 (1st Cir. 2002) (holding that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that clearly contradicts the affiant's previous deposition testimony").

For these reasons, all of the facts contained in the following paragraphs of Defendants' Statement of Undisputed Facts are deemed admitted by Plaintiff: 1-7, 8-10 (in material part), 11, 13 (in part), 14-15, 17-40, 41 (in material part) and 42-56. The limited additions or explanations Plaintiff raises with respect to the few other paragraphs do not create a genuine issue of material fact.

---

[1] To the extent that the documentation from the discovery record supporting the citations in the text has not yet been filed of record with the Court, on this date, Defendants also have filed with the Court the Supplemental Declaration of Jill Brenner Meixel, Esq. ("Supplemental Meixel Declaration").

**B.**    **Summary Judgment Should be Entered on Plaintiff's Claims of Age Discrimination and Retaliation Against Feagans Under Chapter 151B Because Plaintiff Has Failed to Establish that Feagans Was Involved in the Decision to Terminate Plaintiff or Took Any Adverse Action Against Him.**

Plaintiff argues in his Opposition Brief that there is a genuine issue of material fact as to whether Feagans participated in the decision to terminate Bennett's employment. (Pl.'s Opp. at 13.) In making that argument, Bennett merely cites to instances in which Feagans – who undisputedly was Bennett's direct supervisor – communicated with Bennett and/or with Mesher regarding issues involving Bennett's performance. (Id. at 11-13.) Quite significantly, even that listing ends in November 2001, a year before Bennett's employment was terminated. Bennett also relies upon his own misrepresentations of the record when he states that Feagans had independent authority to take employment actions with regard to the employees under his direct supervision (Id. at 10-11), when the undisputed record shows, among other things, that Feagans consulted with Mesher and Saint-Gobain Director of Human Resources Cathy Ferrante before taking any disciplinary action against Otto Lies regarding the so called "Dilbert writing," that Mesher signed off on all performance evaluations prepared by Feagans, that numerous people including Mesher were involved in hiring the two new attorneys in 2002, and that Feagans has not terminated the employment of any individual during his employment at Saint-Gobain. (Feagans Dep., at 15-17, 22.)

There is uncontroverted testimony by both Feagans and Mesher that Feagans was not involved in the decision to terminate Bennett's employment and that he in fact was not even aware of the termination decision until after the decision had been made and implemented.

(Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("56.1 Statement"), ¶ 54.)[2] Bennett does not offer a scintilla of evidence to refute this testimony.

Instead of fact, Bennett offers argument that the testimony by Mesher and Feagans on this point is "inconceivable," "hard to believe" and "disingenuous." (Pl.'s Opp. at 11, 13.) However, it is well established that to overcome a motion for summary judgment the non-moving party may not rest upon "conclusory allegations, improbable inferences [or] unsupported speculation." Medina-Munoz, 896 F.2d at 10 (citations omitted). To defeat a summary judgment motion, a plaintiff must come forward with "names, dates, incidents, and supporting testimony – giving rise to an inference of discriminatory animus." Williams v. Frank, 757 F. Supp. 112, 115 (D. Mass. 1991), aff'd without opinion, 959 F.2d 230 (1st Cir. 1992) (citation omitted). Plaintiff has no such evidence, and these conclusory allegations and unsupported speculation are insufficient to create an issue as to whether Feagans aided or abetted discrimination or retaliation under Chapter 151B. Therefore, Counts 10 and 11 of Plaintiff's Complaint should be dismissed.

> ### C.  Summary Judgment Should be Entered on Plaintiff's Retaliation Claims Under State and Federal Law Because Plaintiff Has Failed to Establish a *Prima Facie* Case of Retaliation.

In his Opposition Brief, Plaintiff does not address Defendants' argument that summary judgment should be granted on his retaliation claims because he is unable to establish the third prong of his *prima facie* case – that there is no causal connection between his June 6, 2001, age discrimination grievance and his discharge almost 17 months later on October 31, 2002. For that reason, alone, this claim should be dismissed. Fed. R. Civ. P. 56(e) (failure to

---

[2] This paragraph of the 56.1 Statement, and most of the other paragraphs in that Statement, were either admitted by Plaintiff or are deemed admitted by his insufficient response. See Section II.A., above.

respond to a motion for summary judgment "with affidavits or as otherwise provided" in Rule 56 shall result in summary dismissal of the claim).

The closest Plaintiff comes to making such an argument is listing three emails from Mesher – dated August 8, 2001, November 19, 2001 and November 20, 2001 – from which Plaintiff could argue that there was an ongoing pattern of retaliation between the time of the protected activity and the adverse employment action.[3]  (Pl.'s Opp. at 12-13.)  This argument is insufficient for three reasons.

First, the emails are offered to establish that Feagans was involved in the termination decision.  As discussed in detail in section B., above, however, there is no factual support for this claim.

Second, Plaintiff seeks to tie the emails to the termination by incorrectly stating, "at or about the same time" that he made an internal grievance regarding defendant Feagans, Feagans and Mesher began investigating Bennett regarding a $65 dinner charge on a business trip.  However, as the emails clearly show, the $65 dinner charge had been made in March 2001 and was the subject of discussion among Bennett, Feagans and Mesher in April 2001 – several months before the internal grievance was made.  (Contrast Pl.'s Opp. at 3 with Michaeles Aff., Ex. 2, Mesher Dep. Ex. 10 (dated 4/20/01), Mesher Dep. Ex. 11 (dated 4/27/01), Mesher Dep. Ex. 12 (4/30/01) and 56.1 Statement, ¶ 50.)[4]

_____

[3]  Plaintiff also lists in his Opposition Brief numerous emails sent from August 1999 through April 2001. As all of those emails were sent prior to the June 6, 2001 grievance, they are irrelevant for purposes of establishing Plaintiff's *prima facie* case. Sullivan v. Raytheon Disability Trust, 262 F.3d 41, 49 (1st Cir. 2001) (employment events which took place before the alleged protected activity are irrelevant for purposes of establishing a *prima facie* case of retaliation).

[4]  Reference to the August 2001 email relating to AMEX charges is a "red herring." From the face of the email, it is clear that this concern related to the fact that the Company had to guarantee Bennett's American Express card obligations, and had nothing to do with his expense

(continued...)

Third, such an argument ignores the undisputed fact – discussed more fully in Defendants' Opening Brief – that both Feagans and Mesher recognized and rewarded Bennett for his performance on a consistent basis between June 2001 and October 2002, breaking the causal connection necessary to prove a *prima facie* case of retaliation.  See Manatt v. Bank of Am., 339 F.3d 792, 802 (8th Cir. 2003) (Opening Brief at 20).  Moreover, the last email cited by Plaintiff was sent in November 2001 – more than 11 months before the termination of Plaintiff's employment, far too long to suggest a causal connection.

There is no substantial evidence, direct or circumstantial, from which a jury could infer causation between Bennett's internal age discrimination grievance and his termination 17 months later.  Consequently, Counts 2, 4, 11 and 16 of the Complaint should be summarily dismissed for failure to state a *prima facie* case of retaliation under federal and state law.

**D.    Even if Plaintiff Can Establish a *Prima Facie* Case of Age Discrimination, Summary Judgment Should be Entered on Counts 1, 3, 10 and 15 Because Plaintiff's Employment was Terminated  for a Legitimate Reason, and Plaintiff Has Failed to Establish Any Evidence of Pretext.**

Assuming, *arguendo*, that Plaintiff can establish a *prima facie* case of discrimination,[5] Defendants have stated a legitimate non-discriminatory reason for the termination of Bennett's employment.  As explained in detail in Defendants' 56.1 Statement and Defendants' Opening Brief, the compelling reason for the termination of Bennett's employment

---

(continued...)

reports.  There is no evidence that anyone spent "countless hours" communicating about this issue or that it required "extraordinary effort." (Pl.'s Opp. at 14.)

[5]  To establish his *prima facie* case of age discrimination, Bennett incorrectly asserts that Joe Sullivan and Tom Field, two of the attorneys hired after the termination of Bennett's employment, were both under age 40.  The record clearly shows that Sullivan (date of birth 12/20/57) was 45 years old at the time he was hired by Saint-Gobain in 2003.  (Contrast Pl.'s Opp. at 8 with Michaeles Aff., Ex. 3, Mesher Dep., at 14 and 56.1 Statement, ¶¶ 55-56.)

was defendant Mesher's good faith belief that Bennett had engaged in a pattern of harassment of Diana Henchey ("Henchey") through anonymous, unwanted written communications, using interoffice mail and other means of delivery, which had caused Henchey to feel that she was being stalked. (56.1 Statement, ¶¶ 31-35, 45; Opening Brief at §§ II.B.2. and II.C.3.)

Plaintiff concedes that, because Defendants have stated a legitimate non-discriminatory reason, Bennett must establish pretext to prevail on his claims. (Pl.'s Opp. at 14.) To establish pretext at the summary judgment stage, Bennett must show that there is evidence from which a fact-finder could reasonably disbelieve Defendants' articulated reason and believe that an invidious discriminatory reason was more likely than not a motivating cause for his termination. Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994). Bennett advances five theories in an effort to show that the decision to discharge him was a pretext for discrimination and retaliation. As is demonstrated below, none of these theories is sufficient, as a matter of fact or law, to defeat Defendants' Motion for Summary Judgment.

### 1. Plaintiff's Denial That He Engaged in the Harassment Does Not Establish Pretext.

Bennett's threshold argument is that Defendants' articulated reason must be pretextual because Bennett claims that he did not engage in the harassment of which he was accused. (Pl.'s Opp. at 9.) However, the true issue in this case is whether Saint-Gobain believed in good faith that Bennett sent the poems to Henchey, not whether Bennett actually did so. See Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991); Dea v. Look, 810 F.2d 12, 15 (1st Cir. 1987). In their Opening Brief at 5, 9-13, Defendants anticipated this argument by Plaintiff and discussed numerous court opinions strongly supporting their legal position. That discussion will not be repeated here. Tellingly, Plaintiff has failed to cite to a single case to the contrary or to in any way distinguish Defendants' substantial and controlling authority.

Instead, in support of his argument, Plaintiff relies upon the report of his own forensic document expert, Nancy McCann ("McCann").[6]  However, McCann's report is irrelevant because Mesher did not have the information contained in the report at the time he made his decision to terminate Bennett's employment.  The report "therefore cannot reflect on [Mesher]'s honest belief at the time" he made his decision.  See Ronda-Perez v. Banco Bilbao Vizcaya Argentaria, 404 F.3d 42, 46 (1st Cir. 2005) (affirming the trial court's entry of summary judgment in favor of the employer and specifically rejecting plaintiff's attempts to discredit the employer's investigation by offering affidavits of "disinterested witnesses," created after-the-fact, to contradict evidence of the plaintiff's alleged breaches of confidentiality).

Even assuming it is relevant, a careful reading of McCann's report does not raise a material issue about the good faith belief held by Mesher at the time he made the decision to terminate Bennett's employment.  Indeed, although one would expect McCann to definitively state that Bennett could not possibly have addressed the interoffice envelopes which were sent to Henchey and contained the poems, she does not do so.  Instead, McCann merely states that Bennett was one of three individuals who could have addressed the envelopes.  (Michaeles Aff., Ex. 1, at 4.)  Thus, even McCann's after-the-fact analysis does not call into question the good faith of Mesher's belief at the time, which was based on the results of an independent investigation by the Company's experienced security personnel; an investigation instigated by a complaint from an employee who suggested that Bennett was the perpetrator; the poems found in Bennett's office during the investigation; the report of the Company's forensic document examiner; and the numerous other factors discussed in detail in Defendants' Opening Brief at 7-8.  McCann's report does not in any way present an issue of fact relating to pretext.

---

[6]  Plaintiff bestows upon his expert witness, Nancy McCann, the title of "arguably the premier forensic document examiner in the Northeast" with no record support.  (Pl.'s Opp. at 6.)

Thus, Bennett has not cited to any evidence in the record which would raise a disputed issue of material fact about the good faith of Mesher's belief that Bennett sent the harassing poems to Diana Henchey. Likewise, there is no evidence to dispute that Bennett's misconduct in writing the offensive poem directed toward Mesher and other high-ranking Company managers, and Bennett's continued improper and disrespectful communications to others at the Company, were of great concern to Mesher and factored into the termination decision. Bennett's disagreement with the correctness of Mesher's conclusion and his dispute with the results of Defendants' forensic document examiner are not sufficient to present a jury question. As a result, there is no material issue of fact as to pretext.

> **2.    Bennett Does Not Point to Any Valid Comparator Employee Outside His Protected Class Who Engaged in the Same Conduct.**

Bennett also argues that Defendants' articulated reason for the termination of his employment is pretextual because similarly situated individuals outside of his protected class were treated differently.[7] (Pl.'s Opp. at 16-17.) In citing to evidence of purported comparators, it is the plaintiff's burden to show that similarly situated individuals outside of plaintiff's protected class were treated more favorably than he was. Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21 (1st Cir. 1999). The standard is a narrow one. To be "similarly situated," a comparator must "have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish

---

[7] The cases cited by Plaintiff in this section of his Opposition Brief – Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 686 N.E.2d 1303 (1997), Dartmouth Review v. Dartmouth Coll., 889 F.2d 13 (1st Cir. 1989) and Smith v. Massachusetts Comm'n Against Discrimination, 376 Mass. 221, 380 N.E.2d 121 (1978) – actually provide further support for Defendants' position. (Pl. Opp. at 16.) In Matthews and Dartmouth Review, the courts ruled in favor of the defendant employers in granting dispositive motions. Likewise, in Smith College, the court remanded the case (decided in favor of the plaintiffs) to the Massachusetts Commission Against Discrimination for more detailed examination as to whether the employer's stated reason for its employment action was pretextual.

their conduct or the employer's treatment of them for it." Id. (citations omitted). The suggested comparators also must be similarly situated in all material respects. Williams, 757 F. Supp. at 118. Here, the two individuals to whom Bennett seeks to compare himself – Keoni Denison and Volker Ulbrich – are not similarly situated and cannot create an issue of fact as to pretext.

Keoni Denison is not a proper comparator for several reasons. First, there is no evidence in the record of Denison's age. Second, there is no record evidence as to whether Denison ever engaged in protected activity. Third, while Bennett describes Denison as "another company employee accused of making unwelcomed [sic] phone calls to a female employee" (Pl.'s Opp. at 17), this description completely misrepresents the factual record. Bennett was not accused of making unwelcome phone calls, but of stalking a co-worker. Finally, and perhaps most significantly, Denison was not an employee of the Law Department or even of defendant Saint-Gobain Corporation, but was instead an employee of Saint-Gobain Abrasives, an entirely separate entity. (Simonian Dep., at 26.)[8] Thus, Denison and Bennett had different jobs, worked for different companies, reported to different supervisors and therefore were subject to different expectations and standards. (Id. at 26.) Indeed, defendant Mesher, who made the decision to terminate Bennett's employment, was not "involved in any way" in the allegations relating to Denison. (Id. at 42.)

Under similar circumstances, courts in this Circuit have determined that such comparators are not similarly situated and cannot provide support for a claim of pretext. For example, in Rodriguez-Cuervos, supra, the First Circuit Court of Appeals affirmed the award of summary judgment in favor of the defendant employer and rejected the plaintiff's pretext argument because the employee to whom the plaintiff attempted to compare himself reported to a

---

[8] The pertinent portions of the deposition of Sonia Simonian are attached to the Supplemental Meixel Declaration as Exhibit 7.

"different supervisor" and worked at a "different store" than the plaintiff. <u>Rodriguez-Cuervos</u>, 181 F.3d at 21; <u>see also</u> <u>Williams</u>, 757 F. Supp. at 118 (granting summary judgment in favor of the defendant employer, finding "there can be no comparison drawn between plaintiff, a window distribution clerk at the JFK facility, and Karavestos who is not only a manager, but the manager of a branch at an entirely different location").

Ulbrich similarly is not an appropriate comparator. First, Ulbrich is only three years younger than Bennett. (56.1 Statement, ¶ 7.) Second, Bennett alleges that he was treated differently than Ulbrich because Ulbrich was permitted to accept a severance package while Bennett was not. The focus here is much narrower: whether Ulbrich was treated more favorably than Bennett when he engaged in similar conduct. Yet, there is no evidence in the record that Ulbrich was disciplined for any reason, or was ever accused of engaging in a pattern of harassment, as was Bennett. Ulbrich and Bennett therefore are not "similarly situated."[9] <u>Rodriguez-Cuervos</u>, 181 F.3d at 21.

Thus, Bennett does not point to <u>any</u> valid comparator employee who engaged in the same conduct as he did. Because Bennett points to no appropriate comparators, he cannot support his argument that he was treated differently than other similarly situated, younger employees, and has no evidence to support his claim of pretext.

---

[9] Bennett makes repeated references in his Opposition Brief to the fact that Bennett, Lies and Ulbrich were the oldest employees in the Law Department in Worcester and that all are no longer employed by Saint-Gobain. However, Defendants explained in detail in their 56.1 Statement, ¶¶ 21-25, 55, the circumstances of the elimination of Lies' position due to outsourcing of the trademark function and Ulbrich's decision to voluntarily retire. Moreover, even after these personnel changes, five of the 10 members of the group in 2003 were age 56 or older. (56.1 Statement, ¶ 56.)

### 3.    <u>Stray Remarks Allegedly Made by Feagans Do Not Establish Pretext.</u>

Bennett relies on the stray remarks allegedly made by Feagans expressing a desire to terminate older workers in the Intellectual Property Law Department as further support for his attempt to establish pretext.  In particular, Plaintiff emphasizes that, "on several occasions" Feagans purportedly "announced that he wanted to rid the patent department of its oldest members, specifically naming Bennett, Lies and Ulbrich." (Pl.'s Opp. at 3, 14.)  Yet, that statement is supported only by a citation to the grievance submitted by Bennett.  (Michaeles Aff., Ex. 2, Mesher Dep. Ex. 16.)  That grievance specifically reveals that Bennett did not hear that comment himself, but was memorializing something that "has been reported to [him] . . ." by someone unnamed.  (<u>Id.</u>)  Clearly, inadmissible hearsay cannot support a motion for summary judgment.  <u>Weston-Smith v. Cooley Dickinson Hosp.</u>, 153 F. Supp. 2d 62, 69 (D. Mass. 2001), <u>aff'd</u>, 282 F.3d 60 (1st Cir. 2002) (Opening Brief at 13).  Further, when Mesher met with Bennett and others in connection with the grievance, Mesher specifically asked if anyone had heard Feagans make age-based statements.  No one responded that they had.  (Mesher Dep., at 48-49.)[10]  Likewise, Bennett and his two witnesses (Ulbrich and Lies) testified in this proceeding that they never heard Feagans make any such remarks.  (Bennett Dep., at 73; Ulbrich Dep., at 107-08; Lies Dep., at 62, 67-68.)  Finally, when Feagans was asked about the statement under oath in his deposition, he denied making it.  (56.1 Statement, ¶ 10.)

Moreover, the irrelevance of those alleged comments to establish pretext was discussed in detail in Defendants' Opening Brief at 13-14.  In summary, because the undisputed

---

[10]    Another example of Bennett's mischaracterization of the record is Plaintiff's statement that Volker Ulbrich "supported" the internal grievance made by Bennett, Mary Porter and Otto Lies against Feagans.  To the contrary, Ulbrich testified at his deposition that he could not recall ever making a complaint that Feagans treated him differently because of Ulbrich's age. (<u>Contrast</u> Pl. Opp. at 3 (no supporting citation) <u>with</u> Ulbrich Dep., at 56.)

factual record establishes that Feagans played no role in the decision to terminate Bennett's

employment, and the comments were alleged to have been made over a year before that decision

was made by Mesher, the comments are stray remarks which are not probative of intent.

Tellingly, there is no suggestion by Bennett that the decisionmaker Mesher ever made any age-

based remarks. In fact, Bennett as well as both of his witnesses (Ulbrich and Lies) affirmatively

testified that Mesher was never heard making any such remarks. (56.1 Statement, ¶ 11.)

### 4.     The Proposed Relocation of the Law Department to Valley Forge – Which Relocation Never Took Place – Does Not Establish Pretext.

Plaintiff next argues that the decision to relocate the Worcester-based members of

the Law Department to Valley Forge is evidence of pretext because the relocation was a "ruse"

designed to have the older members of the Department resign their employment rather than move

to Valley Forge. (Pl.'s Opp. at 15.) Yet, the record is bare of any factual basis for that

suggestion. Bennett argues that, because the Company had not designated office space in Valley

Forge for attorneys from Worcester, the proposed move must have been a sham. (Pl. Opp. at

15.) In so stating, Bennett relies on an email message that "no office has been set aside for the

group in Valley Forge . . . ." (Pl.'s Opp. at 4, citing to Michaeles Aff., Ex. 2, Mesher Dep. Ex.

38.) However, Bennett not only conveniently misquotes the email by omitting the word "yet,"

he also fails to mention that the very same email goes on to state, "Once [Mesher] has a final

count on the number of people relocating, he will look at the space issues and secure whatever

space is necessary." (Michaeles Aff., Ex. 2, Mesher Dep. Ex. 38.) Indeed, the Company had

begun plans for the provision of office space for the attorneys who would relocate from

Worcester to Valley Forge. (Mesher Dep., at 102-03.) The only reason that office space had not

been configured as of September 2002 was because the Company did not know at that time how

many individuals would be relocating. (Id.) Because the move was not expected to take place

until at least February 2003 (Id. at 101), the Company had plenty of time to make specific

-14-

accommodations.  The fact that office space had not been specifically set aside in September

2003 – five months before any expected move and before the Company even knew how many

individuals would need to be accommodated – is not evidence of pretext.

Bennett also refers in his Opposition Brief to two sentences in a lengthy email

sent by defendant Mesher regarding the proposed move.  (Pl.'s Opp. at 15.)  In the email, Mesher

stated that Dennis Baker "did not oppose the move" to Valley Forge but that he had "concerns

with Dave Bennett and Tim Feagans."  (Id.)  In the context of the communications taking place

at that time, the clear implication was that Baker and others were concerned that Bennett and

Feagans – two attorneys considered very valuable to the business clients – might resign rather

than make the move to Valley Forge.  (56.1 Statement, ¶¶ 29-30)  Defendants are at a loss to

understand how an expression of Bennett's perceived value to the Company is evidence of

pretext.

Finally, the proposed relocation is irrelevant because Mesher revoked that

decision, and the proposed move never took place, based upon the desire of the business clients

to have the attorneys remain in Worcester.  (56.1 Statement, ¶¶ 29-30.)  Moreover, Plaintiff has

failed to cite to any evidence which would suggest that Mesher's original decision regarding the

relocation was made for age-based reasons.  To the contrary, the decision was based on Mesher's

good faith belief that the relocation would result in improved services provided by the Law

Department at a lower cost.  (Id., ¶¶ 26-30.)  Bennett's disagreement with this decision does not

create evidence of a pretext for age discrimination.

**5.    Emails from Benoit Bazin to Mesher Referencing a "transition process" for Bennett Do Not Establish Pretext.**

Finally, Bennett argues that emails sent by Benoit Bazin, the head of Saint-

Gobain Abrasives in the United States at the time, to Mesher on October 8, 2002, and October

20, 2002, which emails referenced a "transition process" for Bennett, establish pretext.  (Pl.'s

Opp. at 15.)  First, this need for a "transition process" was expressed not by the decisionmaker Mesher, but by Bazin, who worked at a completely different company and had no reporting relationship with Mesher.  (Mesher Dep., at 14-15.)  There is uncontroverted record evidence that Mesher made the decision to terminate Bennett's employment, that Bazin was not involved in the decision to terminate Bennett's employment and that Bazin did not know about the investigation of Bennett or about the possible termination of Bennett's employment until after Bennett had been terminated.  (Mesher Dep., at 139.)  Thus, any such remark is insufficient to prove pretext.  (See Opening Brief at 14.)

Second, these emails had nothing to do with the investigation of Bennett but reflected concerns from the business clients about Bennett's eventual voluntary departure from the Company.  (Mesher Dep., at 172-73.)  As the result of the proposed move from Worcester to Valley Forge, some of the business clients had expressed a concern about Bennett's eventual departure from the Company, because they "recognized the importance of Dave Bennett's expertise and knowledge."  (Id. at 172.)  As a result, the business clients "wanted to start to think about hiring a lawyer to work with David, whether that was going to be for one year, five years, we didn't know what David's plans were, so that we could educate another lawyer to take over for David whenever he did leave."  (Id. at 172-73.)  Such expressions by Bazin of Bennett's value to the Company do not constitute evidence of pretext.

For all of these reasons, Plaintiff has not established a material issue of fact questioning the legitimate, non-discriminatory reason for the termination of Bennett's

employment as a pretext for discrimination. Therefore, this Court should enter summary judgment against Bennett on Counts 1, 3, 10 and 15.[11]

### E.    Summary Judgment Should be Granted on Plaintiff's Claims for Intentional Interference with Contractual Relations.

Bennett fails even to mention Defendants' argument regarding the dismissal of his claims for intentional interference with contractual relations in Counts 12 and 17. On that basis alone, Plaintiff's intentional interference claims should be dismissed. Fed. R. Civ. P. 56(e) (failure to respond to a motion for summary judgment "with affidavits or as otherwise provided" in Rule 56 shall result in summary dismissal of the claim); see also Scott, 141 F. Supp. 2d at 177.

The merits of this argument were addressed in Defendants' Opening Brief at 15-16. To summarize, because Plaintiff has failed to establish that Feagans in any way participated in the decision to terminate Bennett's employment, Plaintiff cannot establish an essential element of his claim against Feagans – that Feagans knowingly induced a third party to break a contract with Bennett. Similarly, because Plaintiff has failed to produce evidence to support an improper motive or purpose by Mesher in terminating Plaintiff, Plaintiff cannot establish an essential element of his claim against Mesher, and the claim against Mesher also should be dismissed. Accord, Scott, 141 F. Supp. 2d at 177 (granting summary judgment on plaintiff's claim for intentional interference with contractual relations because plaintiff "relied entirely on her insufficient claim as to the defendants' gender animus to demonstrate malice" and she "produced no other evidence to demonstrate a spiteful or malignant purpose on the part of [her supervisors], independent of their concern for [the employer's] legitimate business interests, to interfere with her employment contract").

---

[11]  As noted in section C., above, Bennett has not established a *prima facie* case of retaliation. Even if he had, however, this same analysis would require the entry of summary judgment against him on the merits of those claims under state and federal law.

## III.    CONCLUSION

For all the reasons set forth above and in Defendants' Opening Memorandum of Law in Support of its Motion for Summary Judgment, Defendants respectfully request that this Court grant their Motion for Summary Judgment, enter judgment in Defendants' favor and award such other relief as this Court deems appropriate.

SAINT-GOBAIN CORPORATION, JOHN R.
MESHER, and TIMOTHY L. FEAGANS,
By their attorneys,

Hope A. Comisky
Amy G. McAndrew
Pepper Hamilton LLP              /s/   Jill Brenner Meixel
3000 Two Logan Square            James B. Conroy (BBO# 096315)
18th and Arch Streets            Jill Brenner Meixel (BBO# 652501)
Philadelphia, PA  19103          Donnelly, Conroy & Gelhaar, LLP
*Admitted Pro Hac Vice*          One Beacon Street, 33rd Floor
                                 Boston, Massachusetts 02108
Dated: December 13, 2005         617-720-2880