**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**WORCESTER, SS.**                    **CENTRAL SECTION**
                                       **CIVIL ACTION NO.:  04-**
**40014-NMG**

**DAVID BENNETT**
 **-** Plaintiff

vs**.**

**SAINT-GOBAIN CORPORATION,**
**JOHN R. MESHER, and**
**TIMOTHY L. FEAGANS**
 **-** Defendants

## MOTION BY PLAINTIFF DAVID BENNETT FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER DATED SEPTEMBER 29, 2006, AND REQUEST FOR ORAL ARGUMENT ON THE MOTION

The Plaintiff David Bennett ("Bennett) moves that the Court reconsider its summary judgment order dated September 29, 2006 dismissing the complaint, and respectfully requests the order be reversed, and summary judgment denied.

In addition to the previously filed summary judgment documents, Bennett's submits with this motion two new affidavits, one from himself and the other from Mary E. Porter.

Bennett's Affidavit in Support of Reconsideration states that he was out of the country with his wife from October 12, 2001 until October 28, 2001, was out of town on September 27 and 28, 2002,

1

and not at work on any of those dates.  Diana Henchey ("Henchey")
alleges she received "a typewritten poem" on her car windshield in
approximately October 2001, and two more via interoffice mail on
May 28, 2002.  (Defendant's statement of undisputed facts, p.10,
para.32).  Since Bennett was not at work on those dates, he could
not have authored or sent those "poems".

It was Bennett's attorney's judgment that this evidence should
be saved for trial and not advanced in opposition to summary
judgment.  His opinion was that the argument opposing summary
judgment was so overwhelmingly persuasive, the court would deny
summary judgment.

Mary Porter's affidavit is submitted to cure the statement on
page 12 of Memorandum and Order that Feagans' discriminatory
statements statements are not admissible.  Those statements are
admissible because not offered for the truth of the matter and
therefore not hearsay, are operative facts and not hearsay, or if
hearsay, are admissible as a party admission or for impeachment.
(Noviello v. City of Boston , 398 F.3d 76, 85 (2005).  Porter's
Affidavit eliminates that discussion and makes the statements
admissible.  Her Affidavit could not have been obtained sooner
without jeopardizing her employment, as she was employed by the
defendant corporation until June 30, 2006.

2

Summary judgment should be reversed for two reasons:

1) overwhelming Federal and Massachusetts case law holding that in discrimination cases where "intent" is the issue, summary judgment seldom lies for the employer; and 2) although the Court was required to consider the evidence in the light most favorable to Bennett, it not only considered the evidence in the light most favorable to defendants, but also made value judgments on the credibility of facts in dispute, resolving them in favor of defendants. Weighing the credibility of evidence can only be made at trial.

1). Legal authority. Two recent cases affirm the long-standing law on summary judgment in discrimination cases. Bray Newspaper Co., Inc. v. Community Newspaper Co., Inc. & Others, 67 Mass.App.Ct. 42 (August 3, 2006), an action alleging age discrimination and intentional interference with contractual relations, reversed the trial court's entry of summary judgment in favor of the employer. "In an appeal from summary judgment, our reading of the summary judgment materials is in a light most favorable to the nonmoving party, here the plaintiff." Citations omitted. "We conclude that the plaintiff raises genuine issues of material fact as to both counts of the complaint. Where, as here, intent is at the core of a controversy, summary judgment seldom lies." Id.,p.43.

Similarly, in September Judge Ponsor held that "the court must view the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor." Citations omitted. "In an employment case, courts must be 'particularly cautious' about granting an employer's motion". Summary Judgment in such cases is a disfavored remedy. Citations omitted. Zades v. Lowe's Home Centers, -- F. Supp.2d  --, 2006 WL 256-3456 (D. Mass. Sept.6, 2006). The obvious theory in viewing summary judgment with disfavor is that "some claims of discrimination involve a series of related events that have to be viewed in their totality in order to assess adequately their discriminatory nature and impact." Noviello, *supra*, p. 86.

Similarly, " where a plaintiff in a discrimination case makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be 'particularly cautious' about granting the employer's motion for summary judgment." Citations omitted. Domingues -- Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000), reverses summary judgment for the employer on the grounds that determinations of motive and intent, particularly in discrimination cases, are questions better suited for trial.

4

The parties in this case have agreed that the plaintiff has made a prima facie case. Accordingly, summary judgment should not have entered. The issue of discriminatory motive must be made by the finder of fact at trial, the only place where credibility of evidence can be assessed.

2) <u>Facts most favorable to Bennett</u>.

1. The parties agree that Bennett has made a P*rima facie* case. Memorandum and Order, p.15. Accordingly, the only issue is discriminatory motive.

2. The defendant Feagans, Bennett's supervisor, on August 9, 2000 and on many occasions before and after, told Mary E. Porter that he wanted to get rid of the older members of the intellectual property law group, specifically naming Bennett. ( Porter Aff., para.5). He further told her that he wanted to get rid of Bennett, wanted him to quit, would do nothing to address his concerns about working conditions, and repeatedly complained to her about Bennett and how much he disliked Bennett. ( Porter Aff., para. 4).

3. June 6, 2001, Bennett, Lies and Porter filed age grievances against Feagans. ( Michaeles' Aff., Exh.2, Mesher Exh. 16).

4. At the same time as the age grievances, Feagans and Mesher began investigating Bennett's business expenses. (Michaeles' Aff., Exh. 2, Mesher Exh.5, 10, 11, 12, 24).

5

5. August 8, 2001, two months after filing the age grievances, Mesher ordered security to monitor Bennett's monthly statements, copying Feagans. (Michaeles' Aff., Exh. 2, Mesher Exh. 24). Why only Bennett?

6. November 20, 2001, Mesher wrote Bennett, copying Feagans, warning that Bennett's criticism of Mesher would weigh heavy on Bennett's future, and have a negative impact on Bennett. (Michaeles' Aff., Exh 2, Mesher Exh. 27). Is Mesher setting Bennett up for termination?

7. September 23, 2002 Mesher announces the closing of the Worcester legal department, giving the lawyers the choice of moving to Valley Forge, accepting the severance package, or termination. (Defendants' Statement of Undisputed Facts, para. 26).

8. Bennett and others took a trip to Valley Forge and found that there was no office space to accommodate the move. Feagans confirmed that. (Michaeles' Aff., Exh. 2, Mesher Exh. 38)

9. September 26, 2002 Philizon e-mail to Mesher stating the move to Valley Forge is to eliminate unnecessary positions, except Feagans. (Michaeles' Aff., Exh. 2, Mesher Exh. 31). Could this mean that the defendant corporation wanted to eliminate the older members of the department, including Bennett? Was it Bennett who was unnecessary?

6

10. October 2, 2002 Mesher e-mail to Bazin, copying Philizon, stating that Baker's only concern with moving to Valley Forge was Bennett and Feagans. (Michaeles' Aff., Exh. 2, Mesher Exh. 32). Was the concern that Bennett would move to Valley Forge, but Feagans would not?

11. October 4, 2002 Mesher revoked the decision to relocate to Valley Forge, revoking the severance offer. (Defendants' Statement of Undisputed Fact, para. 30). See paragraph 10, concern about Bennett moving to Valley Forge.

12. October 20, 2002 Bazin e-mail to Mesher "start ASAP a transition process for David Bennett, by hiring a new lawyer...." (Michaeles' Aff., Exh. 2, Mesher Exh. 40). Please, the only inference is get rid of Bennett ASAP.

13. October 25, 2002 Bennett tells Mesher he is considering accepting the severance. Mesher says severance offer revoked. (Michaeles' Aff., Exh. 2, Mesher Exh. 42).

14. October 28, 2002 Mesher e-mail to Bazin "I have an issue with one of the IP lawyers that will be resolved on Thursday." (Michaeles' Aff., Exh. 2, Mesher Exh. 43). Thursday was October 31, the day Mesher fired Bennett. It couldn't be any clearer, the issue to be resolved was getting rid of Bennett.

15. October 31, 2002 Bennett terminated.

7

16.  November 2002 Mesher allows Volcker Ulbrich the very same severance package revoked on October 4, and denied Bennett. (Michaeles' Aff., Exh. 2,pgs.  57 -- 60).

I7. Feagans referred to Bennett, Lies and Ulbrich at a February 22, 2001 meeting as "bitchers and whiners", and wanted to get rid of them.  (Michaeles' Aff. 2, Mesher Exh. 16).

18.  Bennett, Porter and Lies all joined in the June 6, 2001 age grievance against Feagans, with Ulbrich supporting them.  They were the four oldest in the IP legal department.

19.  December 11, 2001 Lies was notified his position was eliminated (Meixcel Declaration, Exh. D, Lies Exh. 9); October 31, 2002 Bennett was terminated; two weeks later in November 2002 Ulbrich was allowed to accept the same severance package denied Bennett; and Porter voluntarily left on June 30, 2006. (Porter Aff., para.1).

20.  All four participated in the June 6, 2001 grievance against Feagans.  They're all gone now.

21.  Mesher admitted at deposition the sole reason for termination was suspected authorship of writings to Henchey. (Michaeles' Aff., Exh.  2, p. 85).  No other issues would have triggered termination.  (Michaeles' Aff., Exh. 2, DET Exh. 2).

8

22.  Bennett did not know Henchey's name until termination. (Michaeles' Aff., Exh. p. 135).  Henchey never remember Bennett calling her by name.  (Michaeles' Aff., Exh. 6, p. 62).

Conclusion.

The only issue is motive for termination.  The above facts considered in the light most favorable to Bennett prove that the motive was discriminatory.  The defendants deny discrimination. There is a genuine issue of material fact to be decided at trial, without even considering the fact that Bennett could not have sent three of the four writings to Henchey since he was not at work on those dates.

For the above reasons, Bennett respectfully requests that the Court reconsider its entry of summary judgment dismissing the complaint, deny summary judgment, and allow Bennett his constitutional right to have his claim of discriminatory termination, determined at trial.

DAVID BENNETT
by his attorney

Michael J. Michaeles, Esquire
390 Main Street, Suite 1000
Worcester, MA 01608
Phone:  (508) 791-8181
BBO#: 344880

October 6, 2006

9

## **REQUEST FOR ORAL ARGUMENT**

THE PLAINTIFF BENNETT HEREBY REQUESTS ORAL ARGUMENT ON

HIS MOTION, AT THE COURT'S EARLIEST CONVENIENCE.