IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID BENNETT, | : |
| Plaintiff, | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 04-CV-40014-FDS |
| SAINT-GOBAIN CORPORATION, et al., | : |
| Defendants. | : |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF DAVID BENNETT'S MOTION FOR
RECONSIDERATION OF SUMMARY JUDGMENT ORDER**

Defendants Saint-Gobain Corporation ("Saint-Gobain"), John Mesher ("Mesher") and Timothy Feagans ("Feagans") (collectively "Defendants"), by their undersigned counsel, submit this memorandum of law in support of their opposition to the motion of Plaintiff David Bennett ("Bennett") for reconsideration of the Court's order granting summary judgment to Defendants.

**I.   INTRODUCTION**

On September 29, 2006, after seven months of discovery, full briefing and oral argument, this Court issued a comprehensive, 26-page Memorandum and Order granting Defendants' motion for summary judgment on Bennett's claims for age discrimination, retaliation and interference with contractual relations. In a last-ditch attempt to revive his case, Bennett now has filed a motion for reconsideration asking the Court to reconsider and reverse its dispositive ruling. As discussed in detail below, Bennett has utterly failed to demonstrate that the extraordinary relief he seeks is warranted by newly discovered evidence or a manifest error of law – the only grounds on which such a motion can be granted. Bennett simply ignores this

strict standard, contending instead that reconsideration is appropriate based on: (1) affidavits containing previously available and immaterial evidence; (2) conclusory and unsupported assertions that the Court improperly made factual determinations in Defendants' favor; and (3) a recycled litany of the same arguments that the Court thoroughly considered and properly rejected in its initial ruling. Bennett's motion is without merit and should be denied.

## II.  ARGUMENT

### A.  Standard of Review.

Bennett's motion conspicuously fails to mention the strict standard governing motions for reconsideration under Fed. R. Civ. P. 59(e). To prevail on such a motion in this circuit, the moving party must "'either clearly establish a ***manifest error of law*** or must present ***newly discovered evidence***.'" Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 146 n.2 (1st Cir. 2004) (emphasis added). The First Circuit repeatedly has cautioned that Rule 59(e)

> "does not provide a vehicle for a party to undo its own procedural failures and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment."

Emmanuel v. Int'l Brotherhood of Teamsters, Local Union No. 25, 426 F.3d 416, 422 (1st Cir. 2005) (quoting Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997)) (denying motion to reconsider grant of summary judgment). Further, "[t]he repetition of previous arguments is not sufficient to prevail on a Rule 59(e) motion." United States v. $23,000 in U.S. Currency, 356 F.3d 157, 165 n.9 (1st Cir. 2004) (affirming denial of motion to reconsider entry of default). Thus, the granting of a motion for reconsideration is an "'extraordinary remedy which should be used sparingly.'" Palmer v. Champion Mortgage, ___ F.3d ___, 2006 WL 2789231, at * 5 (1st Cir. Sept. 12, 2006) (citations omitted) (discerning "no hint of error" in district court's denial of motion for reconsideration of dismissal of complaint).

B.  **Bennett's Affidavits Are Not Newly Discovered Evidence and Do Not Create a Material Issue of Fact in Any Event.**

Attached to Bennett's motion are two new affidavits – one by Bennett and one by Mary Porter. Although the affidavits themselves are new, the allegations they contain do not constitute "newly discovered evidence." A motion for reconsideration may not be "grounded on the discovery of evidence that, in the exercise of due diligence, could have been presented earlier." Emmanuel, 426 F.3d at 422; see also Tu v. Mut. Life Ins. Co., 136 F.3d 77, 82 (1st Cir. 1998) (affirming denial of motion for reconsideration where plaintiff could have obtained newly presented affidavits through the use of due diligence before summary judgment motions).

Bennett's new affidavit alleges that he was out of town on certain dates in 2001 and 2002, and is offered to support the argument that he could not have penned the harassing poems that were received by Diana Henchey on those dates. Obviously, the dates that Bennett traveled were within his personal knowledge before this lawsuit was filed, and his counsel could have brought out these purported facts in his deposition or via a timely affidavit. This manifestly is not newly discovered evidence, and Bennett does not even argue that it is. His somewhat astonishing excuse for not offering the evidence earlier is that his attorney, confident that Bennett would survive summary judgment without it, made a conscious decision to withhold it and save it for trial. This is no basis for a motion for reconsideration. As noted above, Rule 59(e) is not a vehicle for the belated presentation of evidence that could have and should have been presented to the Court before judgment was entered. "Unlike the Emperor Nero, litigants cannot fiddle as Rome burns. A party who sits in silence and withholds potentially relevant information does so at his peril." Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997) (citations and internal punctuation omitted).

Bennett's new affidavit would not help his cause even if it were properly before the Court. As the Court correctly noted in its Memorandum and Order, the pretext inquiry with

-3-

respect to Bennett's termination is not whether his version of events is true, but whether the decision-maker (John Mesher) reasonably believed that Bennett had engaged in misconduct. (Mem. & Order at 16.) Even assuming that Bennett was out of town when the offending poems were written, there is no suggestion that Mesher was aware of Bennett's whereabouts on those dates. Thus, the new affidavit does not call Mesher's reasonable belief into question and is not material for purposes of the Court's summary judgment ruling.

Porter's new affidavit amounts to a sworn affirmation of the unsworn internal grievance that she filed against Tim Feagans on June 6, 2001. Bennett was well aware of Porter's grievance from the time it was submitted, since he cited it in his own written statement that he filed at the same time. When Bennett relied on Porter's grievance in his opposition to Defendants' summary judgment motion, it was properly excluded by the Court for lack of foundation because it contained only Porter's unsworn statement that Feagans had made age-biased comments. (Mem. & Order at 12.) Thus, nothing in Porter's affidavit is newly discovered; Bennett has merely recycled her allegations in what he hopes is an admissible form to cure an evidentiary problem. The question, of course, is why he did not do so sooner. Here he offers another feeble excuse – that Porter was employed by Saint-Gobain until June 30, 2006 and could not have provided an affidavit earlier without jeopardizing her employment. However, Porter's affidavit merely reaffirms the allegations of a grievance that she was not afraid to file in 2001. There has been no evidence presented that the original grievance negatively impacted her employment, and indeed she remained employed for five years after filing it. Bennett's insinuation that Saint-Gobain would retaliate against Porter now is unwarranted and nonsensical. Further, even if it were true that Porter would not voluntarily provide an affidavit while she was still employed, Bennett could have, and in the exercise of due diligence should have, subpoenaed her for a deposition during the discovery period to have her allegations properly admitted into

the discovery record. Bennett's sitting on his hands in this respect does not warrant reconsideration of the Court's judgment under the controlling standard.

Further, as with Bennett's new affidavit, Porter's affidavit contains no information that would create a material issue of fact with respect to Saint-Gobain's articulated reason for Bennett's termination. Her allegations relate to comments supposedly made by Feagans long before, and outside the context of, the harassment investigation and Bennett's resulting termination. The Court correctly found no evidence that Feagans influenced or was involved in Bennett's termination, (Mem. & Order at 22), and there is nothing in Porter's affidavit that could possibly change that conclusion. Assuming the Court accepted Porter's allegations to be true for purposes of considering Plaintiff's Motion, any comments made by Feagans before June 2001 would have been stray remarks and would not be probative of Mesher's intent when he decided, without consulting Feagans, to terminate Bennett's employment in late-October 2002. Porter's affidavit, therefore, would be immaterial even if it were considered by the Court.[1]

### C.  Bennett Has Not Shown That the Court Committed a Manifest Error of Law.

Bennett asserts that summary judgment should be reversed because "overwhelming Federal and Massachusetts case law" holds that "summary judgment seldom lies" in discrimination cases where intent is the issue. (Pl.'s Mot. at 3.) His "overwhelming case

---

[1] Bennett has filed a supplement to his motion for reconsideration, arguing that it is "painfully obvious" that the grievances against Feagans should have been admitted under the hearsay exception for business records. The grievances are not business records under Fed. R. Evid. 803(6), as Porter and the other grievants were not acting in the course of a regularly conducted business activity when they filed complaints against Feagans. See Petrocelli v. Gallison, 679 F.2d 286, 290 (1st Cir. 1982) (excluding purported business record that was not made as part of regularly conducted business activity in which declarant was regular participant). However, the Court need not reach the merits of the evidentiary argument for two reasons. First, if Bennett thinks it is "painfully obvious" that the business records exception applies, then this is another argument he could have and should have raised before judgment. Second, as already discussed, the content of the grievances is immaterial because there remains no evidence that Feagans influenced the termination decision.

law" consists of three employment discrimination cases in which, not surprisingly, summary judgment for the employer was denied. Although two of those cases were decided since completion of oral argument and closing of the briefing in this case, they do not signal any intervening change in the law, as Bennett recognizes when he refers to them as "affirm[ing] the long-standing law on summary judgment in discrimination cases." (Id.) From the cited cases, Bennett quotes various *dicta* to the effect that summary judgment in employment cases is disfavored, should be viewed with caution and seldom is granted.

Bennett's quotations are accurate but inapposite, as none of these cases holds that summary judgment should never be granted or is somehow improper when intent is at issue. Indeed, one of the same cases recognizes that "courts do regularly grant summary judgment in employment cases." Zades v. Lowe's Home Ctrs., Inc., Civil Action No. 03-30269-MAP, 2006 WL 2563456, at * 7 (D. Mass. Sept. 6, 2006). The fact that summary judgment is disfavored or "seldom lies" does not mean that it should not lie where, as in Bennett's case, a plaintiff has no cognizable evidence of pretext or discriminatory intent. Indeed, Defendants cited a host of cases in its summary judgment briefing in which the First Circuit had affirmed the grant of summary judgment in employment cases. (See, Memo. of Law in Support of Motion of Defendants for Summary Judgment at 2-5, 9-11.) The *dicta* quoted by Bennett are meaningless in the absence of demonstrable similarity between the evidence in this case and the facts in the cases from which he quotes. Bennett attempts no such analogy because those cases are plainly distinguishable.[2] And there simply is no legal authority for Bennett's patently untenable

---

[2] In Bray v. Community Newspaper Co., 851 N.E.2d 1087 (Mass. App. Ct. 2006), one of the plaintiff's supervisors attested in an affidavit that the employer had engaged in age-biased practices, and there was evidence that similarly situated, younger employees had been treated more favorably than the plaintiff. Id. at 1091. In Zades, the plaintiff's age discrimination claims "barely survived" summary judgment because there was evidence supporting an inference that a supervisor who had made age-biased comments played a role in the plaintiff's termination, and the primary decision-maker had not conducted
(continued...)

conclusion – that summary judgment should have been denied just because he made out a *prima facie* case. (Pl.'s Mot. at 5.) If merely establishing a *prima facie* case were enough to overcome summary judgment, there would be no need for the McDonnell Douglas pretext analysis at all.

The other component of Bennett's legal argument is his contention that the Court "not only considered the evidence in the light most favorable to defendants, but also made value judgments on the credibility of facts in dispute, resolving them in favor of defendants." (Id. at 3.) Having made this conclusory assertion that the Court ignored the fundamental standards governing summary judgment, Bennett absolutely fails to back it up with any specific example of an instance where the Court actually resolved a factual issue or a credibility dispute in favor of Defendants. Instead, he simply regurgitates, in condensed form, all of the very same arguments that he offered in his original opposition brief and at oral argument. (Compare Pl.'s Mot. at 5-9 to Pl.'s Opposition to Defs.' Motion for Summary Judgment, including Concise Statement of Material Facts to which There Are No Genuine Issues, at 2-5, 9, 14-16.) Again, the repetition of arguments previously made does not warrant reconsideration of a judgment under Rule 59(e). The Court carefully considered (expressly in the light most favorable to Bennett (Mem. & Order at 1)) and properly rejected all of these recycled arguments in its thorough and well-reasoned opinion. Bennett's disagreement and dissatisfaction with the ruling does not amount to a manifest error of law by the Court.

---

(continued...)

an independent investigation. Zades, 2006 WL 2563456, at * 9-* 11. In Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 427 (1st Cir. 2000), the employer had articulated inconsistent reasons for the plaintiff's termination at different times, the key decision-maker had referred to the plaintiff as an "old fart," and there were notes of a conversation involving the decision-maker that included the phrases "age descrim. [sic]" and "cover up." None of the facts that prevented summary judgment in these cases is comparable to the evidence (or lack thereof) in the present case.

### III.  CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny Bennett's Motion for Reconsideration of its Order granting summary judgment to Defendants.

SAINT-GOBAIN CORPORATION, JOHN R. MESHER, and TIMOTHY L. FEAGANS,
By their attorneys,

/s/ Jill Brenner Meixel
James B. Conroy (BBO# 096315)
Jill Brenner Meixel (BBO# 652501)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
617-720-2880

Hope A. Comisky
Amy G. McAndrew
Pepper Hamilton LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103
*Admitted Pro Hac Vice*

Dated: October 19, 2006

### Certificate of Service

I hereby certify that Defendants' Memorandum of Law in Opposition to Plaintiff David Bennett's Motion for Reconsideration of Summary Judgment Order filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 19, 2006.

/s/ Jill Brenner Meixel
Jill Brenner Meixel (BBO# 652501)